| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
|---|---|
| In re:<br><br>DEWEY & LEBOEUF LLP,<br><br>Debtor. | Case No. 12-12321 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING DEBTOR'S APPLICATION TO (A) RETAIN ADAM A. WESCHLER & SON, INC. AS AUCTIONEER AND (B) SELL ARTWORK PURSUANT TO PRIVATE AUCTIONS FREE AND CLEAR OF LIENS CLAIMS OR ENCUMBRANCES**

Pending before the Court is the *Debtor's Application to (A) Retain Adam A. Weschler & Son, Inc. as Auctioneer and (B) Sell Artwork pursuant to Private Auctions Free and Clear of Liens Claims or Encumbrances*. (ECF Doc. # 534.) The application (the "*Application*") seeks approval, pursuant to section 327 and 328, Rule 2014, and Local Rule 2014-1, to retain Adam A. Weschler ("*Weschler*") as auctioneer and, pursuant to section 105 and 363 and Rule 6004, to grant the Debtor the authority to sell, via private auction, its artwork free and clear of liens, claims or encumbrances. In support of the Application, Debtor submits the Declaration of Jonathan A. Mitchell (the "*Mitchel Declaration*") and the Declaration of Thomas M. Weschler (the "*Weschler Declaration*"). (ECF Doc. # 534, Ex. 4 and 5, respectively.) There are no objections to either aspect of the Application. For the reasons discussed below, the Application is **GRANTED**.

### I. BACKGROUND

On August 28, 2012, the Debtor filed a motion seeking approval of procedures to sell certain *de minimis* assets, which the Court granted by an order dated September 21, 2012 ("*De

*Minimis Asset Order,*" ECF Doc. #499).  The Debtor now seeks to retain an experienced auctioneer to assist the Debtor in selling its art collection.

The Debtor's collection consists of artwork both owned and leased by the Firm (the "*Artwork*").  The lessors of the artwork are various lease financing companies ("Lessors").  The Artwork is currently stored in one of two locations, either (i) the Firm's office on the tenth floor of 1301 Avenue of the Americas, New York, New York where approximately 470 pieces are held, or (ii) a storage facility in Washington, D.C. where approximately 400 pieces are held.[1]  Debtor listed the Artwork as having a book value of approximately $2.3 million, however the Debtor believes the book value will differ from the sale value.[2]

**A.  Auctioneer Retention**

The Debtor, in consultation with the Lessors, Creditors Committee and its Secured Lenders, believes retaining an experienced auctioneer to market and sell the Artwork is in the best interest of the estate, especially being that it has no experience selling art.  After soliciting and evaluating the proposals from several auction houses and analyzing offers from third party purchasers, the Debtor has concluded that Weschler provided the most advantageous terms and has the experience and expertise to maximize the value of the art.  Debtor further asserts that the Artwork is currently generating no revenue and is burdening the estate with storage costs.

*1.  Services and Compensation*

Weschler, which is located in Washington, D.C., is allegedly one of the country's leading auctioneers and appraisers with over 120 years of experience.  Weschler typically holds at least six capital collection estate auctions each season, featuring European and American furniture and

---

[1]   The Debtor expressed some uncertainty about the accuracy of its records regarding the Artwork.  One of the responsibilities of the auctioneer will be to inventory and catalog all of the Debtor's Artwork.

[2]   While the Debtor does not say whether they believe the sale value will be higher or lower than the book value, the implication seems to be lower.

decorations, paintings, prints, drawings and sculptures, jeweler, and decorative arts.  Weschler also holds weekly metro auctions with offerings including lesser-valued items such as reproduction furniture, period pieces, rugs, artwork, silver, collectibles, books and general household goods.

Debtor proposes that Weschler be entitled to sell the Artwork in one of three different auction types: (i) a capital collection auction for high-end Artwork with auction values of at least $2,000, which is anticipated to be held during the first quarter of 2013; (ii) a single-owner auction for middle-range Artwork with auction values of $500 to $2,000, which is anticipated to be held during the fourth quarter of 2012; and (iii) metro auctions for Artwork with price points less than $500, to be held on a weekly basis.  However, ultimately, the type of sale used will be in Wechsler's sole discretion.  Debtor's Application ¶ 14.  The Debtor will enter into two separate agreements with Weschler—one for "Capital Collection" and "Single-Owner" auctions and another for "Metro Auctions."

In conjunction with the sales, Weschler has agreed to:

    a. removing, inventorying and cataloguing the Artwork;

    b. supervising the inspection of the Artwork and conducting the sales at open auctions;

    c. engaging in advertising (including brochures and websites) to sell the Artwork;

    d. providing the Debtor with reporting and reconciliation of all accounting information regarding the sales in a form reasonably acceptable to the Debtor; and

    e. providing such other related services deemed necessary or prudent by the Debtor and Weschler under the circumstances.

    f. obtain, with the assistance of the Debtor, any necessary permits or licenses necessary to conduct the sales

Under the compensation arrangement, the Debtor will not be required to pay Weschler any compensation, other than nominal fees for insurance, advertising, and shipping, until after the Artwork is sold. For Capital Collections and Single Owner Auctions, Weschler will receive a (i) 10% commission for sales up to $99,999; (ii) 8% commission for sales between $100,000 - $299,999; (iii) 6% commission for sales between $300,000 – $499,999; and 4% commission for sales over $500,000. For Metro Auctions, Weschler will charge a flat 15% commission based on the final bid price. Weschler will maintain possession, and continue to liquidate, unsold Artwork at no expense. Under the terms, Weschler is also be permitted to charge purchasers a "Buyer Premium" of 15% for the Metro Auction and between 18% - 20% for the other auctions (depending on whether the customer pays in cash or credit), as well as fees charged to the buyer, such as shipping and handling costs. The Buyer Premium, also referred to in the contract as the "additional commission," WILL NOT be considered proceeds for the purpose of calculating the commissions. Weschler Dec. ¶ 9.

Within thirty-five calendar days following the completion of an auction, Weschler will provide the Debtor with a written accounting ("*Auction Report*") of the proceeds and include a statement of the balance owed to Weschler in connection with the sale.

The Debtor also requests that Weschler be exempt from filing formal applications to the Court for compensation approval. Instead, Debtor proposes that Weschler file, within 30 calendar days post receiving an Auction Report, a summary (the "*Summary*") of proceeds realized from the sale of the Artwork (including the Artwork sold, the gross sale price, commissions owed to Weschler and miscellaneous expenses owed to Weschler) and serve a notice of the summary on all parties that received notice of the retention application. Furthermore, parties in interest shall have the right to object to Weschler's compensation as long

4

as they do so within seven calendar days of the Debtor filing the Summary. If an objection to the Summary is filed and not resolved by the parties, then the Debtor will schedule a hearing before the Court to request approval of the commissions that are subject to the objection.

Debtor asserts that the retention and terms stated above are in the best interest of the estate. Debtor cites several other bankruptcy cases in this courthouse for the proposition that auctioneers have been retained as exclusive liquidators of designated assets, but only cites to the cases generally, instead of pointing to specific orders or language to show similar relief has been granted. *See* Debtor's Application ¶ 27.

### d. *Disinterestedness of Professionals*

Debtor asserts, to the best of its knowledge, Weschler and its employees are disinterested persons, as that term is defined in section 101(14), as modified by section 1107(b), and as required under section 327(a). Weschler asserts that it holds no adverse interest to the Debtor, its creditors or any other party in interest, or its respective attorneys and other professionals, except as set forth in the Weschler Declaration. The Weschler Declaration states that Weschler and its affiliates have provided services, may currently provide services, and likely will continue to provide services to parties in interest of this case merely due to the Debtor's size and the scope of its dealings. Weschler Decl. ¶ 4. However, the Weschler Declaration asserts that Weschler researched its client databases and performed reasonable due diligence to determine whether it had any relationships with the Debtor's secured creditors, top 100 unsecured creditors, and known pending litigation parties, and determined no relationships required disclosure.

### B. Selling Art by Private Sale Free and Clear of All Liens, Claims, and Encumbrances

Debtor seeks approval to sell the Artwork, pursuant to section 363(b) and (f) and Rule 6004, free and clear of all liens, claims, encumbrances, and other interests.

*1. Private Sale*

The Debtor argues that its decision to sell Artwork through private sales is within its reasonable business judgment because (i) the art is no longer needed; (ii) it has become unnecessary and burdensome to store; and (iii) the Debtor anticipates vacating its New York office. The Lessors have agreed to permit the Debtor to sell leased Artwork, which the Debtor asserts will save the estate costs associated with separating, storing, and shipping the Artwork.[3] Moreover, the Debtor believes a private sale is preferable over a public auction because it would avoid the expense of filing a motion to approve bidding procedures and further appear in court. Debtors also note that even though the art will be sold privately, there will still be an auction conducted by Weschler, which will help to maximize the sale prices. Weschler will also bear the costs of preparing and inspecting the Artwork, advertising and conducting the auctions, and storing and further liquidating unsold art.

*2. Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests*

The leased Artwork is owned by the Lessors. The Secured Lenders hold a first priority priming lien in the artwork owned by the Debtor. The Lessors have consented to the sale free and clear of encumbrances because the Lessors will receive the net proceeds. The Secured Lenders have consented to the sale free and clear of encumbrances as long as their security interest attaches to the net proceeds of the sales. Debtors assert that all of the 363(f) requirements are satisfied because of the Lessors' and Secured Lenders' treatment, and because any other entity with a lien on the Artwork received notice of the Application, did not object, and will also be able to claim a security interest in the net proceeds. Moreover, the Debtor maintains that it has satisfied the notice requirements of Rule 6004(c) by serving notice of the application on all parties.

---

[3] The proceeds of the leased art will go to the Lessor after Weschler's commission is taken.

## II. DISCUSSION

### A. Auctioneer Retention

Section 327(a) of the Bankruptcy Code provides that

> "[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

Bankruptcy Rule 2014 regulates the application that must be filed to receive an order approving employment under sections 327, 1103, or 1114 of the Bankruptcy Code. Local Rule 2014-1 adds information that should be included as well. The application must include

- Specific grounds for employment;
- Specific facts giving rise to the need for employment;
- Name of the party to be employed;
- Reasons for the selection of that professional;
- Professional services will be rendered;
- Compensation arrangements which have been made with the professional;
- Qualifications of person to be employed;
- Connections between the professional to be employed and the parties in interest attorneys and accountants in the case, and the UST and its personnel;
- Specific facts detailing why the terms and conditions of employment are reasonable including retainer, hourly fee, or contingent fee arrangement.

Section 328 of the Bankruptcy Code provides that, upon court approval, professionals may be employed on "any reasonable terms and conditions," including compensation arrangements. Absent approval of compensation under section 328, the court awards a professional employed under section 327 "reasonable compensation for actual, necessary services rendered by [the professional] . . . , based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case

7

under this title," as well as "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a); *see also In re Airspect Air, Inc*., 385 F.3d 915 (6th Cir. 2004).

Bankruptcy Local Rules 2014-1 requires that the retention of a professional, pursuant to section 327 or 328, "shall state the specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee, or contingent fee arrangement."

### B. Selling Assets by Private Sale Free and Clear of All Liens, Claims, and Encumbrances

The United States Bankruptcy Court for the Southern District of New York has established amended guidelines for the conduct of asset sales under 11 U.S.C. § 363(b).  The Guidelines establish the necessary components of a trustee's application to conduct asset sales, stating that the Debtor's application must include a Sales Procedures Order, a Sale Order, Bidding Procedures, and a Sale Motion, along with additional detailed certain information suggested or required within each of the sections.  A debtor applying for this Court's approval of asset sales must comply with General Order M-383.

General Order M-383 (the "*Guidelines*") adopts a number of guidelines for the conduct of Asset Sales under Bankruptcy Code section 363.  Importantly, the Guidelines require disclosure of certain "Extraordinary Provisions," and dictate that those provisions "ordinarily will not be approved without good cause shown for such . . . Provisions, or compelling circumstances, and reasonable notice."  Provisions that the Guidelines consider to be "Extraordinary" include provisions that contemplate a private sale, as opposed to an auction.  The Guidelines require that these provisions be disclosed conspicuously in a separate section of the sale motion, and that the motion must provide substantial justification in order for the Court to approve them.

8

Section 363(b)(1) of the Bankruptcy Code provides that debtors "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In approving a sale conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 144–45 (2d Cir. 1992) (finding that section 363(b) was applicable because sound business judgment supported the sale of assets); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1072 (2d Cir. 1983) (holding that the application of section 363(b) must be supported by "some articulated business justification, other than appeasement of major creditors" and that "a judge determining a § 363(b) application [must] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application"); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (citing *Lionel Corp.*, 722 F.3d at 1071) (emphasizing the business judgment standard).

Although the determination of what constitutes a sufficient business reason depends on the facts and circumstances of each case, a debtor often satisfies the business judgment standard if "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985). Courts should not generally interfere with business decisions absent a showing of "bad faith, self-interest, or gross-negligence." *Integrated Res.*, 147 B.R. at 656.

Section 363(f) of the Bankruptcy Code permits a debtor to sell property, under section 363(b) or (c), free and clear of any interest in such property of an entity other than the estate. *See* 11 U.S.C. § 363(f). However, a sale free and clear of liens may be approved only if at least one of the following five conditions are met: (1) applicable non-bankruptcy law permits sale of such

9

property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled to accept a monetary satisfaction of such interest. *Id.*; *see also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that § 363(f) is written in the disjunctive, authorizing a trustee or debtor-in-possession to sell property of the estate free and clear of all liens "if any of the five conditions of § 363(f) are met"). Under 363(f)(2), at least with regards to *de minimis* assets, "a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens." *In re Borders Group, Inc.*, 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011).

### C. The Debtor Established a Good Business Reason to Sell the Artwork in the Manner Proposed

The Debtor has persuasively argued that the Artwork should be sold to curb administrative costs related to storage, especially being that the Art provides no benefit to the estate. It is also clear that the Debtor needs professional help with the sale process. The evidence establishes that Weschler is an experienced disinterested auctioneer. Sliding scale commissions payable from the proceeds to the Debtor will compensate Wechsler. But, in addition, a "Buyer's Premium" a/k/a the "Additional Commission" of 15% for the Metro Auction and between 18% - 20%, will also be payable by the buyers; this additional compensation is substantial and will reduce the net recovery by the Debtor, but a Buyer's Premium is consistent with business practice for sales of artwork.

With regards to the private sale, General Order M-383 states that a moving party must show good cause for the Court to approve "Extraordinary Provisions. The General Order lists "Private Sale/No Competitive Bidding" as an extraordinary provision requiring the movant to

10

show why the proposed form sale will maximize the sale price.  Here, Debtor asserts that the private auction will maximize the sale price because of the costs and delay associated with seeking court approval for bidding procedures relating to the sizeable art collection.  Moreover, the Debtor believes that a public sale would be more costly because it would have to hire a professional to clean, organize, inspect, advertise, and auction the Artwork, which Weschler is agreeing to do for no extra charge.  The Court finds that the Debtor has established a good business reason to proceed with the sales of the Artwork in the manner proposed.  Additionally, the Debtor has satisfied this Court's Guidelines for the Extraordinary provisions permitting the asset sales through private sales.

Section 363(f) is satisfied here because the Secured Lenders and the Lessors have consented to the sales free and clear of all liens, claims, and encumbrances; additionally, pursuant to 363(f)(5), all liens will attach to the sales proceeds.

## CONCLUSION

For the foregoing reasons, the Debtor's Application to retain Adam A. Wechsler & Son, Inc. as Auctioneer, and to sell artwork in the manner described above free and clear of liens, claims or encumbrances is **GRANTED.**

**IT IS SO ORDERED.**

Dated:    November 1, 2012
          New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge