UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK          NOT FOR PUBLICATION

In re:

DEWEY & LEBOEUF LLP,                    Chapter 11
                                        Case No. 12-12321 (MG)
                              Debtor.

**MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S APPLICATION FOR AN ORDER DIRECTING THE UNITED STATES TRUSTEE TO DISBAND THE <u>OFFICIAL COMMITTEE OF FORMER PARTNERS</u>**

Pending before this Court is the Debtor's Motion (the "Motion") for an order directing the United States Trustee to disband the Official Committee of Former Partners, primarily because the committee has been counterproductive, is too expensive and is no longer necessary. (ECF Doc. # 539.)  In support of the Motion, Debtor submitted the declaration of Steven S. Flores (the "Flores Declaration," ECF Doc. # 541).  The United States Trustee (the "UST") filed an objection (the "UST Objection") to the Motion, primarily arguing that there is no statutory basis under section 1102(a) that empowers the Court to disband a committee once it has been appointed by the UST.  (ECF Doc. # 568.)  The Official Former Partners Committee (the "FPC") also filed an objection to the Motion (the "FPC Objection," ECF Doc. # 572), arguing that disbandment would be an unwarranted extraordinary relief granted as a punishment merely because the FPC objected to the partner contribution plan (the "PCP").  Debtor filed a response to the objections ("Debtor's Reply, ECF Doc. # 589), arguing that the Court has the authority to disband the FPC, even though such power is not enumerated in the Bankruptcy Code, because the power to disband is implicit in the power to appoint.  In support of its response, the Debtor submitted a reply declaration by Steven S. Flores (the "Flores Reply Declaration," ECF Doc. #

1

590). The Official Committee of Unsecured Creditors (the "Unsecured Committee") also filed a statement in support of the Debtor's Motion. (ECF Doc. # 591.)

For the reasons explained below, the Court denies the Debtor's Motion. During the argument of the Motion on November 21, 2012, the Court asked the UST to provide a supplemental memorandum addressing one question only, based on an assumption that the Court concludes that it has the authority to order that the FPC be disbanded—"what the position of the U.S. Trustee is with respect to whether the former partners' committee should remain in place." November 21, 2012 Hr'g. Tr. at 44 (ECF Doc. # 661). In response to the Court's directive, on November 27, 2012, the UST filed the Supplement to Objection of the United States Trustee to the Motion to Disband the Official Committee of Former Partners. (ECF Doc. # 661.)[1]

## I. BACKGROUND

Shortly after the Chapter 11 filing, the UST appointed the FPC as a second official committee to represent former partner's interests. The FPC's counsel has taken an active role in this case.

The Debtor argues that the Court should order that the FPC be disbanded because the FPC is no longer "necessary" or "in the money." The Debtor also argues that the FPC has been counterproductive to progress in the case. Specifically, the Debtor complains that the FPC's

---

[1] The UST disregarded the Court's directive. When asked to aid the Court by providing the UST's position on whether the FPC should be kept in place *assuming* the Court has the power to order that a committee be disbanded, the UST simply parroted the UST's earlier argument that the Court does not have the authority to order a committee appointed by the UST to be disbanded under any circumstance. The question asked by the Court was simply ignored. Essentially, the UST argues that she has complete and unreviewable (by any court) discretion to decide whether to disband an additional committee appointed by the UST, meaning that no court can decide based on changed circumstances that the committee should be disbanded, for example if continued functioning of the committee (with retained counsel paid by the estate) would result in administrative insolvency. As explained below, because the Court concludes that the FPC should not be disbanded at the present time, it is unnecessary to reach the issue of the Court's authority to order that the FPC be disbanded. The UST is simply not free to ignore the Court's directive, particularly when it did not raise an issue about it when the directive was given.

2

opposition to the partner contribution plan ("PCP") and support of the Examiner Motion has been costly and unproductive. From the Debtor's perspective, the FPC's members—consisting currently of only four former partners (two of which have signed on to the PCP)—are solely motivated by a desire to reduce their own "claw back" liability, which it maintains is an insufficient reason to be endowed with official committee status. The Debtor points out that both the secured lenders and Unsecured Committee oppose the existence of the FPC. Lastly, the Debtor argues that the FPC may continue to appear and be heard even if they no longer hold "official" committee status.

      The UST objected primarily on the basis that the Debtor failed to identify a statutory basis for the Court to disband an official committee post-appointment. The UST argues that the Debtor misinterprets section 1102, incorrectly asserting that the standard for disbandment is the same as the standard a court would apply to compel the UST to appoint an additional committee—namely, whether (1) the committee is necessary, (2) its constituents are "in the money," and (3) its constituents are not already adequately represented by an existing official committee. The UST argues that section 1102 is silent with respect to the Court's authority to disband an already appointed committee, and finally that the UST's decision to appoint an official committee should not be reviewable after the fact based on the Debtor's perception of the appropriateness of the FPC's subsequent actions.

      The FPC argues that it should not be disbanded merely because it zealously represented the interests of its constituency, and disbandment would force "scores" of retired lawyers to appear separately so they could be heard in the case. The FPC also aligns with the position of the UST that the Court does not have the authority to eliminate a committee appointed by the UST. Assuming that the Court could disband the FPC, the FPC argues that disbandment is not

3

warranted here because the FPC is necessary to adequately represent former partner interests. The FPC argues (i) former partners are not adequately represented by any other committee in this case because the Unsecured Committee is currently comprised of three trade creditors of the Debtor, and because the Ad Hoc Committee consists solely of retired partners from only one of the Debtor's predecessor firms; (ii) it is too early to conclude that the FPC is "out of the money" because the former partners hold retirement claims under pension and retirement plans, contractual separation agreement claims, rights to payment under promissory notes and various other claims, none of which have yet been litigated; (iii) the FPC serves as a necessary check on the Debtor's activities in this case; (iv) the benefits provided by the FPC exceeds its costs and are in the best interest of the estate because of the arguably meritorious objections and motions it has filed, the advice it has given to former partners and their widows relating to the PCP and the proofs of claim process, and the administrative convenience the FPC has provided by dealing with over 200 former partners separately; and (v) the FPC is necessary due to the size of the former partner constituency and the complexity of this case. The FPC also questions the timing of the disbandment motion, which was filed one day after the Court approved the PCP, and the day before the FPC filed a notice of appeal from the Court's decision denying the appointment of an Examiner and approving the PCP. *See In re Dewey & LeBoeuf LLP*, 478 B.R. 627 (Bankr. S.D.N.Y. 2012).

In response, the Debtor argues that the Court has the authority to disband the FPC. According to the Debtor, the authority to disband is implicit in the power to appoint, even though such a power is not enumerated in section 1102. The Debtor cites several cases purportedly supporting such a proposition where committees were disbanded due to various changes of circumstances. The Debtor notes that, irrespective of the makeup of the Unsecured Committee,

4

the Unsecured Committee owes a fiduciary duty to all unsecured creditors, including former partners. The Debtor also argues that the FPC cannot justify the costs that it has imposed on the Debtor's estate, including its arguably meritless appeal of the PCP.

The Unsecured Committee filed a statement in support of the Debtor's motion, arguing that the FPC is no longer necessary because a majority of partners signed on to the PCP, and because any remaining interests of former partners can be adequately represented by the Unsecured Committee who holds a fiduciary duty to former partners.

## II.   DISCUSSION

Section 1102(a)(1) of the Bankruptcy Code provides that the UST "may appoint additional committees of creditors . . . *as the United States trustee deems appropriate*." 11 U.S.C. § 1102(a)(1) (emphasis added). No one in this case has suggested that the UST's initial decision to appoint the FPC is subject to court review, and the language of section 1102(a)(1) providing that the UST may appoint additional committees "as the United States trustee deems appropriate" would seem to leave little or no role for any court to review that decision. The Debtor and the Unsecured Committee argue here that changed circumstances now make it appropriate for the Court to order the UST to disband the FPC. The answer whether the Court has the authority to do so is not clear. And if that authority exists, the question then becomes what standards apply to a determination by the Court.

Section 1102(a)(2) permits the Court to order appointment of additional committees. 11 U.S.C. § 1102(a)(2). Appointment of an additional committee of creditors should only be ordered if necessary to assure adequate representation of creditors. *In re Residential Capital, LLC*, 480 B.R. 550, 557 (Bankr. S.D.N.Y. 2012). Appointment of an additional Committee is an extraordinary remedy that courts are reluctant to grant. *See e.g.*, *id.*; *In re Dana Corp.*, 344 B.R.

35, 38 (Bankr. S.D.N.Y. 2006) (citing *In re Enron Corp.,* 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002)). However, section 1102 is silent whether a court has the power to disband an additional committee after that committee has been appointed.

In considering the extraordinary remedy of ordering appointment of an additional committee, courts employ a two-step process. First, a court determines whether the appointment of an additional committee is necessary to assure the movants are adequately represented. *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.,* No. 02-cv-6274, 2003 WL 22327118, at *3 (S.D.N.Y. Oct. 10, 2003) (stating that section 1102(a) of the Bankruptcy Code "clearly requires an initial determination of whether a party is adequately represented"). Second, if the answer to the first question is "yes," then the court must decide whether it should exercise its discretion and order such appointment. *See Enron Corp.,* 279 B.R. at 685.

The burden is on the moving party to prove that the existing committee does not provide adequate representation. *Dana Corp.*, 344 B.R. at 38. *See also Enron Corp.*, 279 B.R. at 685; *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005); *In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997).

Despite having discretion to direct the appointment of additional official committees, courts are hesitant to grant such relief, and the requirement that the moving party show that such a committee is "necessary to assure adequate representation" has been described as ranging from a "high standard" to requiring a showing that an additional committee is "'absolutely required,' 'essential,' or 'indispensable.'" *See In re Eastman Kodak*, No. 12-10202, 2012 WL 2501071, at

6

*2 (Bankr. S.D.N.Y. June 28, 2012) (quoting *In re ShoreBank Corp.*, 467 B.R. 156, 164-65 (Bankr. N.D. Ill. 2011)); *In re Oneida Ltd.*, 351 B.R. 79, 83 (Bankr. S.D.N.Y. 2006).

Although there is no framework provided in the Bankruptcy Code for courts to determine "adequate representation," bankruptcy courts in this district generally consider seven factors in deciding whether appointment of an additional official committee is necessary to ensure adequate representation:

(1) the ability of the existing committee to function;

(2) the nature of the case;

(3) the standing and desires of the various constituencies;

(4) the ability of creditors to participate in a case without an additional committee;

(5) the delay and additional cost that would result if the court grants the motion;

(6) the tasks which a separate committee is to perform; and

(7) other factors relevant to the adequate representation issue.

*See Dana Corp.*, 344 B.R. at 38.

No one factor is dispositive, and the consideration given to each depends on the circumstances of a particular chapter 11 case. *Id*. at 38 (citing *In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 600-01 (Bankr. D. Del. 1996)).

In the vast majority of chapter 11 cases, a single committee of creditors has been deemed sufficient. *See, e.g.*, *In re Sharon Steel Corp.*, 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989) (explaining that a single Creditors Committee is the norm and appointment of additional committees is an extraordinary remedy); *see also In re Hills Stores Co.*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992) (denying request for appointment of separate committee of subordinated bondholders); *Ad Hoc Bondholders Grp. v. Interco, Inc. (In re Interco, Inc.)*, 141 B.R. 422

(Bankr. E.D. Mo. 1992) (denying request to appoint separate committee of debenture holders); *In re Public Serv. Co. of N.H.*, 89 B.R. 1014, 1019 (Bankr. D.N.H. 1988) (declining request by individual debenture holders for appointment of separate committee). This high standard dictates that an additional committee should not be appointed unless the moving parties prove that they "are unable to represent their interests . . . without an official committee." *See In re Williams Comm'ns Grp., Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002) (denying motion for appointment of equity committee since shareholders' interests were adequately represented).

The large size of a bankruptcy case in and of itself is not determinative of whether additional committees should be appointed. *See Dana Corp.*, 344 B.R. at 718; *see also Mirant*, 2003 WL 22327118, at *6 (refusing to appoint an additional official committee of trade creditors even though at the time of filing the Enron case was the largest bankruptcy matter in history). Moreover, the mere presence of a conflict of interest does not necessitate an additional committee. *See Mirant*, 2003 WL 22327118, at *6. And, forming an additional committee solely to advance individual creditors' claims is not appropriate, because acting as *de facto* counsel for creditors would be an impermissible role for an official committee. *Id.* ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to 'strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.'") (quoting *Hills Stores,* 137 B.R. at 7); *see also In re Garden Ridge Corp.*, No. 04-10324, 2005 Bankr. LEXIS 323, at *12 (Bankr. D. Del. Mar. 2, 2005) (noting that the "Official Committee is simply not intended to represent individual creditor interests" in declining to appoint an official committee for landlords).

As already indicated, the issue here is not whether the UST abused her discretion in appointing the FPC in the first instance—the Debtor does not argue that the decision is

8

reviewable or, assuming it is reviewable, that the decision to appoint the FPC was erroneous. Rather, the issue now is whether circumstances have changed making it appropriate for the Court to order that the FPC be disbanded in light of the very substantial expense to the estate and the ability of the Unsecured Committee to represent the interests of the former partners that make up the FPC's constituency.

Under the circumstances here the Court need not reach the issue whether section 1102 implicitly confers on the Court the authority to order an official committee appointed by the UST to be disbanded based on subsequent changed circumstances, or whether sections 105 and 1102 when applied together provide such authority, because even if the Court has such authority, the Court concludes that the FPC continues to serve an important purpose, the most obvious function being to prosecute the appeal the FPC filed from this Court's decision denying the examiner motion and approving the PCP. While the Court strongly believes those issues were correctly decided, the FPC's arguments were not frivolous and there is no basis to conclude that the appeal is being pursued in bad faith. Furthermore, the Debtor has recently filed a proposed disclosure statement and plan. The FPC can play a constructive role in efforts to reach a consensual plan.

The FPC argues that the Unsecured Committee does not adequately represent the interests of former partners.[2] While the burden rests with the parties seeking appointment of an additional committee, *if* the authority exists for the court to order an additional committee disbanded, the burden must rest on the parties moving for that relief. As already explained, the standard for ordering appointment of an additional committee requires the moving party to show that such a committee is "necessary to assure adequate representation"; it is a "high standard," requiring a showing that an additional committee is "'absolutely required,' 'essential,' or

---

[2] Whether the Court would appoint an additional committee at this point, if one did not already exist, is a different issue than whether a committee already appointed by the UST should be disbanded. The Court need not reach the former issue because the FPC has already been appointed.

'indispensable.'" *See In re Eastman Kodak*, No. 12-10202, 2012 WL 2501071, at *2. The burden should be no less rigorous to disband an additional committee appointed by the UST—has the moving party demonstrated that the existing committee is *not* necessary to assure adequate representation? On the record before the Court at this time the Court concludes that the Debtor has failed to meet this burden. No former partners currently serve on the Unsecured Committee, which consists of trade creditors, because the former partners have their own official committee.

Frankly, the biggest concerns relating to the FPC are the very high fees being incurred for the work of the FPC's professionals. In denying the FPC's examiner motion, the Court pointed out the "precarious financial situation present in this case [such that the appointment of an examiner] would almost certainly result in conversion of this case to a case under chapter 7 and possible administrative insolvency." *In re Dewey & LeBoeuf LLP*, 478 B.R. at 639. The professional fees of the Debtor, Unsecured Committee and FPC likewise risk tipping this case to administrative insolvency. The Court has not yet considered applications to approve professional fees, but all professionals seeking compensation from the estate should be mindful of the fact that the standards for reviewing fee applications require the Court to consider whether services are necessary, determined from the perspective of the time at which the services were rendered. 3 COLLIER ON BANKRUPTCY ¶ 330.04[1][b][iii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012). In the Second Circuit, the "necessary" standard in section 330 of the Bankruptcy Code is given a broad interpretation. Services are "necessary" if they benefit the estate. *In re Keene Corp.* 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). The test considers whether services provided were "reasonably likely to benefit the estate"; it is an objective test, considering the services that a reasonable lawyer would have performed in the same

circumstances.  *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996).  The "circumstances" must take into account the financial resources of the debtor.

### III.    CONCLUSION

For the foregoing reasons, the Motion to direct the UST to disband the FPC is **DENIED**.

**IT IS SO ORDERED.**

Dated:   November 29, 2012
         New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge