TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Scott E. Ratner
Scott A. Griffin
Samantha J. Rothman

Counsel to the Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
In re:                                                       :        Chapter 11
                                                             :
DEWEY & LEBOEUF LLP,                                          :        Case No. 12-12321 (MG)
                                                             :
                        Debtor.                              :
                                                             :
-------------------------------------------------------------X

**SECOND AMENDED CHAPTER 11 PLAN**
**OF LIQUIDATION OF DEWEY & LEBOEUF LLP**
**DATED JANUARY 7, 2013**

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION .......................................................... 1

    Section 1.1    Definitions. ............................................................................ 1
    Section 1.2    Rules of Interpretation.......................................................... 18
    Section 1.3    Application of Definitions and Rules of Construction
                   Contained in the Bankruptcy Code....................................... 18
    Section 1.4    Other Terms. ......................................................................... 18

ARTICLE II. ...................................................................................................................... 18

CLASSIFICATION OF CLAIMS AND INTERESTS............................................................. 18

    Section 2.1    Unclassified Claims - Administrative Claims and
                   Priority Tax Claims.............................................................. 18
    Section 2.2    Criterion of Class.................................................................. 18
    Section 2.3    Debtor Claims and Interests. ................................................ 18

ARTICLE III........................................................................................................................ 19

IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS AND
INTERESTS UNDER THE PLAN ....................................................................................... 19

    Section 3.1    Unimpaired Classes of Claims. ............................................. 19
    Section 3.2    Impaired Classes of Claims................................................... 19
    Section 3.3    Impairment Controversies. ................................................... 20

ARTICLE IV. PROVISIONS FOR TREATMENT OF UNCLASSIFIED
CLAIMS UNDER THE PLAN.............................................................................................. 20

    Section 4.1    Unclassified Claims.............................................................. 20
    Section 4.2    Treatment of Administrative Claims...................................... 20
    Section 4.3    Treatment of Priority Tax Claims. ........................................ 20

ARTICLE V. ........................................................................................................................ 21

PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS.................................... 21

    Section 5.1    Debtor Claims and Interests. ................................................ 21
    Section 5.2    Reservation of Rights Regarding Claims............................... 23

ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN;  EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS ..................... 23

    Section 6.1    Classes Entitled to Vote........................................................ 23
    Section 6.2    Class Acceptance Requirement. ........................................... 23
    Section 6.3    Cramdown............................................................................. 23

**Page**

ARTICLE VII. MEANS OF IMPLEMENTATION OF THE PLAN .................................... 24

Section 7.1    Creation of the Secured Lender Trust and Appointment
of the Secured Lender Trustee and the Secured Lender
Trust Oversight Committee. ............................................................ 24

Section 7.2    General Powers, Rights and Responsibilities of the
Secured Lender Trustee and the Secured Lender Trust
Oversight Committee. ...................................................................... 25

Section 7.3    Issuance of Secured Lender Trust Interests. .............................. 26

Section 7.4    Distribution of Secured Lender Trust Assets. ........................... 27

Section 7.5    Creation of the Liquidation Trust, Appointment
of the Liquidation Trustee and the Liquidation
Trust Oversight Committee. ............................................................ 27

Section 7.6    General Powers, Rights and Responsibilities
of the Liquidation Trustee and the Liquidation
Trust Oversight Committee. ............................................................ 28

Section 7.7    Issuance of Liquidation Trust Interests. ..................................... 30

Section 7.8    Distribution of Liquidation Trust Assets. ................................... 31

Section 7.9    Liquidation Trust Funding. ........................................................... 32

Section 7.10   Distributions to Administrative, Priority and Certain
Other Claims. ...................................................................................... 32

Section 7.11   Preservation of Causes of Action. ............................................... 34

Section 7.12   Preservation of Records. ................................................................. 34

Section 7.13   General Disposition of Assets. ...................................................... 35

Section 7.14   Debtor's Pre-Confirmation Period Operations. ........................ 35

Section 7.15   Administrative Claims Bar Dates. ................................................. 35

Section 7.16   Deadline for Filing Professional Fee Applications ................... 36

Section 7.17   Execution of Documents to Effectuate Plan. ............................ 36

Section 7.18   Authorization of Debtor's Action. ............................................... 36

Section 7.19   Dissolution of Debtor. ..................................................................... 36

Section 7.20   Post-Confirmation Reports and Fees. ......................................... 36

Section 7.21   Cancellation of Interests. ............................................................... 37

Section 7.22   Statutory Committees. ..................................................................... 37

Section 7.23   Insurance Preservation. .................................................................. 37

Section 7.24   Substantial Consummation. ........................................................... 37

Section 7.25   Termination of the Pension Plans and 401(k) Plan. ................ 37

Section 7.26   Wind-Down Employees. ................................................................. 37

Section 7.27   Release of Collateral Agent and Administrative Agent. ......... 38

ARTICLE VIII. DISTRIBUTION PROVISIONS ...................................................... 38

Section 8.1    Distributions. ..................................................................................... 38

Section 8.2    Timing of Distributions. ................................................................. 38

Section 8.3    Address for Delivery of Distributions. ....................................... 38

Section 8.4    Distributions under Twenty-Five Dollars. ................................. 39

Section 8.5    Time Bar to Cash Payments. ......................................................... 39

Section 8.6    Unclaimed Distributions at Closing of Bankruptcy Case. ...... 39

Section 8.7    Manner of Payments under the Plan. ........................................... 39

**Page**

Section 8.8    Expenses Incurred on or after the Effective Date and Claims
of the Liquidation Trustee and Secured Lender Trustee. ................ 40
Section 8.9    Setoffs and Recoupment..................................................................... 40
Section 8.10   No Interest. ....................................................................................... 40
Section 8.11   Expungement or Adjustment to Paid, Satisfied or
Superseded Claims and Interests. ...................................................... 40

ARTICLE IX. PROCEDURES FOR RESOLVING AND TREATING
DISPUTED CLAIMS........................................................................................... 41

Section 9.1    Objection Deadline............................................................................ 41
Section 9.2    Prosecution of Disputed Claims and Voting on the Plan................. 41
Section 9.3    Claims Settlement.............................................................................. 41
Section 9.4    No Distributions Pending Allowance. ............................................... 41
Section 9.5    Estimation of Claims.......................................................................... 42
Section 9.6    Limitations on Funding of Disputed Claims Reserve....................... 42
Section 9.7    Tax Requirements for Income Generated by Disputed
Claims Reserve. ................................................................................. 42

ARTICLE X. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES.............................................................................................................. 42

Section 10.1   Assumption and Rejection of Executory Contracts
and Unexpired Leases. ....................................................................... 42
Section 10.2   Cure................................................................................................... 43
Section 10.3   Claims Arising from Rejection, Expiration or Termination............. 43

ARTICLE XI. ....................................................................................................... 44

PARTNER CONTRIBUTION PLAN;  RELEASE AND INJUNCTION............................ 44

Section 11.1   Compromise of Controversies. .......................................................... 44
Section 11.2   The Participating Partner Injunctions................................................ 44
Section 11.3   Bar Order. ......................................................................................... 45
Section 11.4   Secured Lender Releases of Participating Partners. ......................... 46
Section 11.5   Covenants and Assignment of Claims................................................ 46
Section 11.6   PCP Effective Date............................................................................ 46
Section 11.7   Payment............................................................................................. 47
Section 11.8   Limitation on Releases and Injunction. ............................................. 47

ARTICLE XII....................................................................................................... 48

CONDITIONS PRECEDENT;  CONFIRMATION AND EFFECTIVE DATE ................. 48

Section 12.1   Conditions Precedent to Confirmation of the Plan........................... 48
Section 12.2   Conditions Precedent to the Effective Date. ..................................... 48
Section 12.3   Waiver of Conditions Precedent........................................................ 49
Section 12.4   Effect of Non-Occurrence of the Effective Date................................ 49

**Page**

ARTICLE XIII. ......................................................................................................... 49

INJUNCTION;  RELEASE;  EXCULPATION ..................................................... 49

    Section 13.1   General Injunctions......................................................... 49
    Section 13.2   Releases by the Debtor and its Estate. ............................. 50
    Section 13.3   Wind-Down Committee. .................................................. 50
    Section 13.4   All Distributions Received in Full and Final Satisfaction. .............. 50
    Section 13.5   No Modification of Res Judicata Effect............................. 51
    Section 13.6   Exculpation. .................................................................... 51
    Section 13.7   Governmental Carve-Out. ............................................... 51

ARTICLE XIV. ......................................................................................................... 51

PLAN INTERPRETATION, CONFIRMATION AND VOTING ....................... 51

    Section 14.1   Procedures Regarding Objections to Designation of
                    Classes as Impaired or Unimpaired................................. 51
    Section 14.2   Withdrawal and Modification of Plan. ............................. 52
    Section 14.3   Voting of Claims. ............................................................ 52
    Section 14.4   Acceptance by Impaired Class. ....................................... 52
    Section 14.5   Presumed Acceptances of Plan........................................ 52
    Section 14.6   Presumed Rejections of Plan. ......................................... 52

ARTICLE XV. .......................................................................................................... 52

SETTLEMENT OF SECURED LENDERS' COLLATERAL COVERAGE......................... 52

    Section 15.1   Settlement of Secured Lenders' Collateral Coverage. ...................... 52

ARTICLE XVI. ......................................................................................................... 53

RETENTION OF JURISDICTION BY BANKRUPTCY COURT ....................... 53

ARTICLE XVII........................................................................................................ 54

MISCELLANEOUS PROVISIONS ........................................................................ 54

    Section 17.1   Payment of Statutory Fees. ............................................. 54
    Section 17.2   Third Party Agreements;  Subordination. ........................ 54
    Section 17.3   No Discharge. .................................................................. 55
    Section 17.4   Headings. ......................................................................... 55
    Section 17.5   Governing Law................................................................ 55
    Section 17.6   Expedited Determination. ............................................... 55
    Section 17.7   Exemption from Transfer Taxes. ..................................... 55
    Section 17.8   Exemption from Securities Laws..................................... 55
    Section 17.9   Notice of Entry of Confirmation..................................... 56
    Section 17.10 Interest and Attorneys' Fees. .......................................... 56
    Section 17.11 Rates................................................................................. 56
    Section 17.12 Notices............................................................................. 56
    Section 17.13 Successors and Assigns. .................................................. 58
    Section 17.14 Further Action. ............................................................... 58
    Section 17.15 Exhibits........................................................................... 58
    Section 17.16 Severability. .................................................................... 59

## INTRODUCTION

Dewey & LeBoeuf LLP, as debtor and debtor in possession (the "Firm" or the "Debtor"), proposes the following second amended plan of liquidation pursuant to section 1121 of the Bankruptcy Code.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  A detailed discussion of the Debtor's history, business, and other pertinent information, as well as a summary and analysis of the Plan, are set forth in the Disclosure Statement filed contemporaneously herewith.  A Plan Supplement including other agreements and documents, which are referenced in the Plan and/or Disclosure Statement and are incorporated as if set forth in full therein will be filed with the United States Bankruptcy Court for the Southern District of New York.

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

**Section 1.1    Definitions.**

The following terms, when used in this Plan, the Plan Supplement (except as otherwise provided therein) or any subsequent amendments or modifications thereof, and in addition to those terms defined in the text of the Plan, shall have the respective meanings hereinafter set forth.

1.01.    "Ad Hoc Committee" means the Ad Hoc Committee of Retired Partners of LeBoeuf, Lamb, Leiby, & MacRae LLP, represented by Dorsey & Whitney LLP.

1.02.    "Administrative Agent" means JPMorgan Chase Bank, N.A., in its capacity as administrative agent under the Credit Agreement.

1.03.    "Administrative Bar Date Order" means the Revised Order Establishing Administrative Claims Bar Dates and Approving the Form and Manner of Notice Thereof, entered by the Bankruptcy Court on December 14, 2012.  [Docket No. 714.]

1.04.    "Administrative Claim" means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code including, without limitation, (a) any actual, necessary costs and expenses of preserving the Estate and winding down the Debtor's business during the Bankruptcy Case, (b) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business in connection with the conduct of its business during the Bankruptcy Case, (c) any Professional Fee Claims, and (d) any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code.

1.05.    "Administrative Claims Bar Dates" has the meaning set forth in Section 7.15 hereof.

1.06.    "Administrative Claims Reserve" means a reserve created by the Liquidation Trustee on the Effective Date with Receivables Cash Collateral in an

amount equal to any Budgeted, but unpaid, Administrative Claims, which amount shall be subject to the agreement of the Collateral Agent and the Creditors' Committee.

1.07.    "ADR Procedures Order" means the Order Authorizing the Debtor to (I) Issue Subpoenas for the Production of Documents and Information and Authorizing the Examination of Persons and Entities Pursuant to Federal Rule of Bankruptcy Procedure 2004 and (II) Implement Alternative Dispute Resolution Procedures Concerning Outstanding Accounts Receivable, Including Facilitative Mediation. [Docket No. 620.]

1.08.    "Allowed" means, with respect to any Claim (including any Administrative Claim): (a) a Claim against the Debtor, proof of which was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, (ii) as to which no timely objection has been interposed based upon section 502(d) of the Bankruptcy Code, and (iii) as to which an objection had been interposed, to the extent such Claim has been subsequently allowed (whether in whole or in part) by a Final Order; (b) if no proof of such Claim was filed timely or was withdrawn, any Claim against the Debtor which is listed by the Debtor in the Schedules, as such Schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules, as liquidated in amount and not disputed or contingent;  (c) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(b) of the Bankruptcy Code;  (d) any Claim allowed under, or pursuant to, the terms of this Plan;  or (e) any Claim that has been allowed by a Final Order.

1.09.    "Assets" means any and all property of the Estate, including, without limitation, all property and other interests identified in section 541(a) of the Bankruptcy Code.  Without limiting the foregoing, Assets shall include all of the Debtor's real, personal, tangible and intangible property, wherever located, and whether acquired prior to, or after, the Petition Date, including Cash, Receivables, WIP, furniture, fixtures, equipment, artwork, intellectual property, Causes of Action, the Malpractice Policies, and the PCPs, together with the proceeds and products, replacements and accessions thereof.

1.10.    "Avoidance Actions" means all avoidance actions including all Causes of Action under Chapter 5 of the Bankruptcy Code.

1.11.    "Bankruptcy Case" means the case commenced by the Debtor on May 28, 2012 under Chapter 11 of the Bankruptcy Code, administered under case number 12-12321 (MG).

1.12.    "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Bankruptcy Case concerning the Debtor.

1.13.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Bankruptcy Case.

1.14.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, in effect and applicable to the Bankruptcy Case.

1.15.    "Bar Date" means September 7, 2012, the date fixed by the Bankruptcy Court as the last date by which all Creditors must have filed proofs of Claim against the Debtor, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of Claim, in which case it means, for the specific Creditor, such different date set by the Bankruptcy Court in the order approving the Bar Date or otherwise.

1.16.    "Bar Date Notice" means the notice designating the last dates for a holder of a Claim to file proofs of claim against the Debtor for Unsecured Claims.

1.17.    "Bar Order" means the collective provisions set forth in Section 11.3 of this Plan.

1.18.    "Budget" means the budget attached to the Final Cash Collateral Order, and any extensions thereof, and included as a Plan Supplement in a form and substance acceptable to the Collateral Agent, Secured Lenders holding a majority in amount of the Secured Lender Claims and the Creditors' Committee.

1.19.    "Budgeted" means included in the Budget.

1.20.    "Business Day" means any day other than a Saturday, Sunday or other day on which commercial banks in New York City are required or authorized by law to be closed.

1.21.    "Cash" means legal tender of the United States and foreign currency, including amounts on deposit at financial institutions in checking accounts, deposit accounts, money market accounts and the like.

1.22.    "Causes of Action" means any and all Claims, rights, actions, choses in action, suits, causes of action, liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to, or after, the Petition Date and in each case whether known or unknown, in law, equity or otherwise, including, without limitation, Receivables, actions to collect Reconciliation Amounts and those Claims and actions to avoid or recover pre-petition or post-petition transfers of money or property pursuant to applicable bankruptcy and non-bankruptcy law (including rights and remedies arising under Chapter 5 of the Bankruptcy Code).

1.23.    "Claim" means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured;  or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.24.  "<u>Claims Objection Bar Date</u>" means the date that is one hundred eighty (180) days after the Effective Date, unless otherwise extended as set forth herein.

1.25.  "<u>Class</u>" means a category of Claims or Interests described in Article II hereof.

1.26.  "<u>Collateral Agent</u>" means JPMorgan Chase Bank, N.A., in its capacity as collateral agent under the Intercreditor Agreement.

1.27.  "<u>Confirmation</u>" means the Bankruptcy Court's confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code.

1.28.  "<u>Confirmation Date</u>" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket corresponding to the Bankruptcy Case.

1.29.  "<u>Confirmation Hearing</u>" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider Confirmation.

1.30.  "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming this Plan, or any amendment thereto, pursuant to section 1129 of the Bankruptcy Code, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

1.31.  "<u>Credit Agreement</u>" means the Credit Agreement among the Debtor, lenders and issuing banks from time to time thereto and the Administrative Agent, dated as of April 16, 2010 (as amended, modified or otherwise supplemented from time to time), pursuant to which the Debtor was provided with a credit facility consisting of revolving loans and letters of credit in an aggregate principal amount not to exceed $100 million outstanding at any time.

1.32.  "<u>Creditor</u>" means any Person who:  (a) holds a Claim against the Debtor that arose prior to the Petition Date;  (b) holds a Claim against the Debtor, which arose after the Petition Date, other than an Administrative Claim of the type specified in Bankruptcy Code section 503(b);  or (c) holds a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

1.33.  "<u>Creditors' Committee</u>" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code by the United States Trustee for the Southern District of New York on May 31, 2012, as it may be reconstituted from time to time.

1.34.  "<u>Debtor</u>" means Dewey & LeBoeuf LLP, the debtor and debtor in possession in the Bankruptcy Case.

1.35.  "<u>Debtor Released Claims</u>" means, as defined in the PCPs, (a) any and all Claims, obligations, demands, actions, Causes of Action, and liabilities of whatever kind and nature or character and description, and whether in law or equity, whether sounding in tort, contract or other applicable law, whether known or unknown,

whether matured or unmatured, whether liquidated or unliquidated, whether fixed or contingent, whether held directly or derivatively, and whether anticipated or unanticipated, that have been or could be asserted against a Participating Partner based upon any fact, circumstance, or occurrence relating in any way or manner to the Debtor or any of the Predecessor Entities or a Related Entity, the Partnership Agreement, the Members Agreement, the Pension Plans, the ERISA Claims, any Non-Qualified Pension Plan, any tax advanced or paid on behalf of a Participating Partner, any prior agreements between the Debtor (or any Predecessor Entity or Related Entity) and a Participating Partner, the Estate, or the Bankruptcy Case and (b) including but not limited to, Claims or Causes of Action arising from or relating to: (i) any or all indebtedness, obligation, or liability of or relating to the Debtor or any of the Predecessor Entities or a Related Entity or arising from the business or operations of the Debtor or any of the Predecessor Entities or a Related Entity or other Claims or rights against the Debtor or any of the Predecessor Entities or a Related Entity, whether asserted or not (including Claims or rights of contribution or indemnification by a Partner of the Debtor or its Predecessor Entities or Related Entities); (ii) such Participating Partner's status as a Partner or Employee of the Debtor or any of the Predecessor Entities or a Related Entity; (iii) any liability to any holder of a Claim in the Bankruptcy Case arising from or related to the Debtor or its affairs or any of the Predecessor Entities or a Related Entity or its affairs;  and (iv) the conduct of the affairs of the Debtor or any of the Predecessor Entities or a Related Entity, whether before or after the Petition Date.

1.36.  "<u>Deficiency Claim</u>" means that portion of any Allowed Claim held by a Secured Creditor which exceeds the value of the Assets securing such Allowed Claim.

1.37.  "<u>Disallowed</u>" means, when referring to a Claim or Interest, a Claim (including a Scheduled Claim) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

1.38.  "<u>Disclosure Statement</u>" means the disclosure statement, and all exhibits, annexed thereto, filed in connection with Bankruptcy Case pursuant to section 1125 of the Bankruptcy Code, and approved by the Bankruptcy Court as containing adequate information as that term is defined in section 1125(a)(1) of the Bankruptcy Code, as may be amended or modified from time to time by any duly authorized amendment or modification.

1.39.  "<u>Disclosure Statement Order</u>" means the order approving the Disclosure Statement.

1.40.  "<u>Disputed Claim</u>" means a Claim, including Malpractice Claims: (a) if such Claim is not an Allowed Claim as of a particular point in time;  (b) if no proof of Claim has been filed by the Bar Date or the Administrative Claims Bar Dates, as applicable, or has otherwise been deemed timely filed under applicable law, (i) that is listed on the Schedules as disputed, contingent or unliquidated or (ii) that is not listed on the Schedules;  or (c) if a proof of Claim has been filed by the Bar Date or the Administrative Claims Bar Dates, as applicable, or has otherwise been deemed timely filed under applicable law, for which an objection, complaint or request for estimation has been filed by the Debtor, the Creditors' Committee, the Liquidation Trustee, or any

other party in interest by the Claims Objection Bar Date, and such objection has not been withdrawn or denied in its entirety by Final Order. A Claim or Administrative Claim that is disputed as to its amount shall not be Allowed in any amount for purposes of Distribution until it is no longer a Disputed Claim.

1.41.  "Disputed Claims Reserve" means an appropriate reserve, to be determined by the Liquidation Trustee, unless otherwise ordered by the Bankruptcy Court, for Distributions on account of Disputed Claims that are subsequently Allowed after the Effective Date.

1.42.  "Distribution" means any distribution made pursuant to the terms of this Plan.

1.43.  "Distribution Date" means any date on which a Distribution is made to holders of Allowed Claims under this Plan, or as otherwise agreed.   The first Distribution shall occur on or as soon as practicable after the Effective Date or as otherwise agreed by the Debtor, the Collateral Agent and the Creditors' Committee.  To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Liquidation Trustee or the Secured Lender Trustee, as applicable, shall determine, in consultation with the Liquidation Trust Oversight Committee and the Secured Lender Trust Oversight Committee, respectively.

1.44.  "Effective Date" means the first Business Day after the later of the date (a) that the Confirmation Order (together with other orders entered in aid of confirmation of this Plan, and signed contemporaneously with the Confirmation Order) has been entered pursuant to Bankruptcy Rules 5003 and 9021;  and (b) on which all conditions precedent have been satisfied or waived as provided in Sections 12.2 and 12.3 hereof.

1.45.  "Eligible Claims" means all Allowed Claims in Classes in which the holders of such Claims are entitled to vote under Section 6.1 of the Plan to accept or reject the Plan.

1.46.  "Employee" means an employee, associate attorney, counsel or foreign attorney of the Debtor, but not an Equity Partner or Salaried Partner.

1.47.  "Encumbrances" means, collectively, any and all security interests, liens, pledges, Claims, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

1.48.  "Equity Partner" means a former Partner other than a Salaried Partner.

1.49.  "ERISA Claims" means any Claims arising out of, or related to, any underfunding of the Debtor's Pension Plans, profit-sharing plan, and 401k Plan, the merger of the Debtor's Pension Plans, profit-sharing plan, and 401k Plan or the transfer

of assets among the Debtor's Pension Plans, profit-sharing plan, and 401k Plan, covered by Title IV of the Employment Retirement Income Security Act of 1974, as amended.

1.50.   "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the Petition Date.

1.51.   "Excess Administrative Claim" means an Administrative Claim, or a category of Administrative Claims, to the extent such Administrative Claim or such category of Administrative Claims is in excess of the amount provided for such Claim or such category of Claims in the Budget.

1.52.   "Excess Administrative Claim Cap" means the amount set forth as such in the Budget that will be included as part of the Plan Supplement.

1.53.   "Excess Priority Claim Cap" means the amount set forth as such in the Budget that will be included as part of the Plan Supplement.

1.54.   "Fee Application" means the final fee application and/or an application for payment of reasonable fees and expenses filed under section 503(b) of the Bankruptcy Code by any parties seeking payment of Professional Fee Claims and/or reimbursement of expenses, as applicable, which shall be filed in accordance with Section 7.16 hereof.

1.55.   "File Disposition Procedures" means those certain procedures approved by order of the Bankruptcy Court, dated July 13, 2012, concerning the disposition of certain client files by the Debtor, as the same may be supplemented, amended or modified by the Bankruptcy Court.

1.56.   "Final Cash Collateral Order" means the Final Order of the Bankruptcy Court, dated June 13, 2012, (i) Authorizing Use of Cash Collateral, (ii) Granting Adequate Protection, and (iii) Modifying the Automatic Stay [Docket No. 91] (as supplemented and extended by further orders of the Bankruptcy Court).

1.57.   "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; *provided, however*, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired;  provided, further, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.58.   "Foreign Office Recoveries" means proceeds from the Debtor's foreign branch offices and foreign affiliates, but not including proceeds from PCP-Related Claims and Unfinished Business Claims against any such foreign branch offices or affiliates or Partners of any of its foreign offices, and any settlement proceeds attributable thereto.

1.59.   "Former Partners' Committee" means the Official Committee of Former Partners of the Debtor and certain of its Predecessor Entities appointed by the United States Trustee for the Southern District of New York to represent certain of the interests of former Partners of the Debtor and its Predecessor Entities in the Bankruptcy Case.

1.60.   "General Unsecured Claim" means any Unsecured Claim against the Debtor that is (a) not an Administrative Claim, Priority Tax Claim, Non-Tax Priority Claim, Subordinated Claim, Secured Claim, Secured Lender Claim, or an Other Secured Claim (except Secured Lender Deficiency Claims or other Deficiency Claims) or (b) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim. General Unsecured Claims will not include Claims that are disallowed, released, or subordinated, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

1.61.   "Harris Contingency Fee Claims" means any of the Debtor's Claims and Causes of Action arising out of services rendered by the Debtor to Harris Corporation on a contingency fee basis.

1.62.   "Harris Contingency Fee Claims Proceeds" means proceeds from Harris Contingency Fee Claims.

1.63.   "Initial Insurance Company Proceeds" means the first $5 million in proceeds received by the Debtor or the Liquidation Trust on account of its interest in Bar Assurance & Reinsurance Limited.

1.64.   "Initial PCP/Unfinished Business Proceeds" means the first $67.5 million of proceeds received by the Debtor or the Liquidation Trust, through settlement, litigation or otherwise, on account of (a) PCP-Related Claims and (b) Unfinished Business Claims.

1.65.   "Insurance Policies" means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against the Debtor, its Employees, Partners or any other Person, other than Malpractice Policies.

1.66.   "Insured Malpractice Claim" means the Insured Portion of any Malpractice Claim subject to a Malpractice Policy or Policies.

1.67.   "Insured Portion" means, with respect to a given Malpractice Policy, the insurance coverage available for Insured Malpractice Claims subject to such Malpractice Policy.

1.68.    "Intercreditor Agreement" means that certain Intercreditor Agreement dated as of April 16, 2010 among the Collateral Agent and the Secured Lenders, as amended, modified or otherwise supplemented from time to time.

1.69.    "Interest" means the rights and interests as of the Petition Date of a Partner or other Person in the Debtor pursuant to the Partnership Agreement or any applicable law concerning the Debtor.

1.70.    "Liquidation Trust" means the trust established pursuant to the Plan and in accordance with the Liquidation Trust Agreement.

1.71.    "Liquidation Trust Agreement" means the agreement between the Debtor and the Liquidation Trustee as agreed to by the Creditors' Committee, the Collateral Agent and Secured Lenders holding a majority in amount of the Secured Lender Claims substantially in form and substance as that filed as part of the Plan Supplement and approved pursuant to the Confirmation Order, as the same may be amended from time to time in accordance with its terms.

1.72.    "Liquidation Trust Assets" means from and after the Effective Date, all Assets of the Debtor and all legal and equitable interests of the Debtor in Causes of Action and all legal or equitable defenses or counterclaims of the Debtor to Claims, and any other Assets to be vested in the Liquidation Trust pursuant to the Liquidation Trust Agreement, *provided* that Liquidation Trust Assets shall not include Secured Lender Trust Assets.

1.73.    "Liquidation Trust Funding Amount" means $2.5 million of Receivables Cash Collateral.

1.74.    "Liquidation Trust Funding Reserve" means the reserve created by the Liquidation Trustee with the Liquidation Trust Funding Amount.

1.75.    "Liquidation Trust General Unsecured Creditor Interests" means the interests in the Liquidation Trust allocable to the holders of Allowed General Unsecured Claims (and any successors, transferees, or assigns thereof).

1.76.    "Liquidation Trust Interests" means the Liquidation Trust General Unsecured Creditor Interests and the Liquidation Trust Secured Lender Interests.

1.77.    "Liquidation Trust Oversight Committee" has the meaning set forth in Section 7.5(d) of the Plan.

1.78.    "Liquidation Trust Secured Lender Interests" means the interests in the Liquidation Trust allocable to the holders of Secured Lender Claims (and any successors, transferees, or assigns thereof).

1.79.    "Liquidation Trustee" means Alan Jacobs, or if Alan Jacobs is unwilling or ineligible to serve as Liquidation Trustee, such other Person or entity designated or appointed by the Collateral Agent, Secured Lenders holding a majority in amount of the Secured Lender Claims and the Creditors' Committee in consultation with the Debtor and approved pursuant to the Confirmation Order or the Liquidation Trust Agreement.

1.80.   "<u>Malpractice Claim</u>" means any Claim against the Debtor or any Partner or Employee arising out of alleged acts, errors or omissions in connection with the Debtor or a Partner or an Employee rendering or failing to render professional legal services or other potential or actual liability or costs arising in connection therewith, whether or not covered by a Malpractice Policy.

1.81.   "<u>Malpractice Costs and Expenses</u>" means, as to any Malpractice Policy, (a) the aggregate fees, costs and expenses (including attorneys' fees) arising from or relating to the investigation, adjustment, defense and appeal of the Malpractice Claims applicable to such policy, and (b) such other costs and expenses of the Debtor or the Liquidation Trustee, as the case may be, allocable to Malpractice Claims.

1.82.   "<u>Malpractice Policies</u>" means the policies of professional liability insurance issued to the Debtor, as such policies have been or are amended, modified, renewed or supplemented from time to time.

1.83.   "<u>Members Agreement</u>" means the Dewey & LeBoeuf LLP (United Kingdom) Members Agreement, dated as of December 15, 2010.

1.84.   "<u>Mismanagement Claims</u>" means Claims for mismanagement, breach of fiduciary duty, or similar Claims against Steven H. Davis, Stephen DiCarmine, and Joel Sanders, and any non-Partner management executives of the Debtor.

1.85.   "<u>Mismanagement Claims Proceeds</u>" means proceeds received by the Debtor, through settlement, litigation or otherwise (including proceeds from any insurance policies), on account of Mismanagement Claims.

1.86.   "<u>Net SIR</u>" means, as it relates to a particular Malpractice Policy, the SIR Amount less the Malpractice Costs and Expenses associated with such policy; *provided, however*, that if the Net SIR equals an amount less than zero, the Net SIR shall be deemed zero.

1.87.   "<u>Non-Management Personnel</u>" means Employees, excluding the members of the Wind-Down Committee, that were employed as of the Petition Date to assist with the Debtor's wind down.

1.88.   "<u>Non-Participating Partner</u>" means any Partner other than a Participating Partner.

1.89.   "<u>Non-Tax Priority Claim</u>" means a Claim which is entitled to priority treatment under section 507(a) of the Bankruptcy Code, excluding Claims entitled to priority under Bankruptcy Code subsections 507(a)(1) and 507(a)(8).

1.90.   "<u>Non-PCP Avoidance Actions</u>" means Avoidance Actions to the extent not included in PCP-Related Claims.

1.91.   "<u>Non-PCP Avoidance Action Proceeds</u>" means proceeds received by the Debtor or the Liquidation Trust on account of Non-PCP Avoidance Actions.

1.92.   "Non-Qualified Pension Plan" means the LeBoeuf, Lamb, Greene & MacRae LLP Partners' Retirement Plan, as amended and restated, effective January 1, 2009.

1.93.   "Non-Releasing Parties" means Steven H. Davis, Stephen DiCarmine and Joel Sanders.

1.94.   "Non-Releasing Secured Lenders" means the Secured Lenders who, on their ballot for voting on the Plan, have elected to opt out of the Secured Lender Releases, and their successors, transferees and assigns.  Any Secured Lender who fails to submit a ballot or make an election shall be deemed a Releasing Secured Lender.

1.95.   "Note Agreement" means the Note Purchase Agreement, dated as of April 16, 2010, among the Debtor and the holders of notes issued thereunder as amended, modified or supplemented from time to time, pursuant to which notes in the aggregate principal amount of $150 million were issued.

1.96.   "Notice of Confirmation" means the notice of Confirmation of the Plan to be served by the Debtor on all parties in interest within five (5) Business Days after entry of the Confirmation Order, which notice shall include a true and correct copy of the Confirmation Order.

1.97.   "Notice of Effective Date" means the notice to be served by the Liquidation Trustee advising all parties in interest of the Effective Date within five (5) Business Days after the Effective Date.

1.98.   "Other Secured Claim" means any Secured Claim that is not a Secured Lender Claim.

1.99.   "Participating Partner" means every current or former Partner that shall have entered into a PCP.

1.100.   "Participating Partner Injunctions" shall mean the injunctions set forth in Section 11.2 of this Plan.

1.101.   "Partner Release" means the release as set forth in Section 6 of the PCPs.

1.102.   "Partner" means (for purposes of the Plan only) an individual who was an Equity Partner and/or Salaried Partner of the Debtor, its Predecessor Entities or a Related Entity at any point in time.

1.103.   "Partner Contribution Amount" means the amount payable by each Participating Partner on account of such Participating Partner's Reconciliation Amount and/or other amounts, pursuant to a PCP.

1.104.   "Partnership Agreement" means the "Dewey & LeBoeuf LLP Partnership Agreement," effective as of October 1, 2007 (as amended, as of April 12, 2010 and as of April 3, 2012).

1.105. "PBGC" means the Pension Benefit Guaranty Corporation, which is a wholly-owned United States government corporation established under 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program created by ERISA.

1.106. "PCP" means the Partner Contribution Settlement Agreement and Mutual Release, which (a) is an agreement between the Debtor and a Participating Partner and (b) among other things, resolves substantially all Causes of Action against the Participating Partner and all Claims such Participating Partner may have against the Debtor or its Estate and which provides such Participating Partner with the full benefit of the Partner Release and Participating Partner Injunctions, as such agreement may subsequently be amended, modified or supplemented in accordance with its terms. Individually, each Partner Contribution Settlement Agreement and Mutual Release is a "PCP," and collectively, "PCPs."

1.107. "PCP 9019 Order" means the order of the Bankruptcy Court, dated October 9, 2012, approving the PCPs and denying the Ad Hoc Committee's motion filed with the Bankruptcy Court seeking the appointment of a Chapter 11 trustee, or alternatively, an examiner.  [Docket No. 538.]

1.108. "PCP Effective Date" means the effective date of the PCPs as set forth in Section 11.6 of the Plan.

1.109. "PCP Note" means a promissory note, as may be duly executed and delivered pursuant to a PCP by a Participating Partner.

1.110. "PCP-Related Claims" means the Debtor's Claims against Partners other than Steven Davis.

1.111. "Pension Plans" means the Dewey & LeBoeuf LLP Pension Plan, the Dewey & LeBoeuf Cash Balance Retirement Plan, and the Dewey & LeBoeuf 2007 Partner Cash Balance Plan.

1.112. "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other entity.

1.113. "Petition Date" means May 28, 2012, the date the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.114. "Plan" means this second amended plan of liquidation and any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

1.115. "Plan Supplement" means, collectively, the documents and agreements, instruments, schedules and exhibits and forms, or as applicable, summaries thereof, specified in this Plan or amending Plan exhibits, to be filed with the Bankruptcy Court

no later than seven (7) days prior to the Voting Deadline, each of which (unless otherwise stated herein) shall be in form and substance acceptable to the Creditors' Committee and the Collateral Agent, provided that the Debtor may amend such Plan Supplement at any time prior to the Confirmation Hearing with the consent of the Creditors' Committee and the Collateral Agent.  Holders of Eligible Claims may obtain a copy of the Plan Supplement upon written request to counsel for the Debtor or view the same at http://dm.epiq11.com/Dewey.

1.116.  "Post-Confirmation Interest" means simple interest on an Allowed Claim at the rate payable on federal judgments as of the Effective Date or such rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, with such interest to accrue from the Distribution Date applicable to a Claim to the date of actual payment with respect to such Claim.

1.117.  "Predecessor Entities" means (i) Dewey Ballantine LLP; (ii) LeBoeuf, Lamb, Greene & MacRae LLP; (iii) Root, Clark & Bird; (iv) Buckner & Howland; (v) Root, Clark, Buckner & Howland; (vi) Root, Clark, Howland & Ballantine; (vii) Dewey, Ballantine, Bushby, Palmer & Wood; (viii) LeBoeuf & Winston; (ix) LeBoeuf, Lamb & Leiby; (x) LeBoeuf, Lamb, Leiby & MacRae; and (xi) Dewey Ballantine.

1.118.  "Priority Claims" means Priority Tax Claims and Non-Tax Priority Claims.

1.119.  "Priority Claims Reserve" means a reserve created by the Liquidation Trustee on the Effective Date with Receivables Cash Collateral in an amount equal to all Budgeted but unpaid Priority Claims, which amount shall be subject to the agreement of the Collateral Agent and the Creditors' Committee.

1.120.  "Priority Tax Claim" means a Claim or a portion of a Claim, which is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.121.  "Pro Rata" means, at any time, the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular Class at such time, including Disputed Claims at such time (a) as calculated by the Liquidation Trustee or the Secured Lender Trustee, as applicable, on or before any Distribution Date;  or (b) as determined or estimated by the Bankruptcy Court.

1.122.  "Professional Fee Claim Estimate" means an estimate to be provided by each Professional who holds, asserts or intends to assert a Professional Fee Claim, of all of such Professional's Professional Fee Claims from the Petition Date through the Effective Date.

1.123.  "Professional Fee Claims" means any Claim of (a) a Professional, retained in the Bankruptcy Case, pursuant to sections 327 or 1103 of the Bankruptcy Code and/or members of the Statutory Committees, for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date but prior to and including the Effective Date, when and to the extent any such Claim is Allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, 503(b), or 1103 of the Bankruptcy

Code, or (b) a Person seeking compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

1.124. "<u>Professionals</u>" means an entity (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.125. "<u>Receivables Cash Collateral</u>" means the proceeds of Receivables and WIP.

1.126. "<u>Receivables</u>" means, collectively and individually, as applicable, accounts receivable generated or otherwise owned by the Debtor, any of its branch offices (foreign or domestic) or any of its affiliates (foreign or domestic) arising out of or in connection with the Debtor's pre-petition rendering of services, including the Debtor's rights to be compensated for its services and reimbursed for related costs and expenses incurred, amounts disbursed or obligations incurred for the account of the Debtor's clients for fees paid or payable to, or goods or services obtained from, Partners and Employees or third-parties, whether or not the Debtor has rendered a bill for such services or disbursements or entered the value of such services or disbursements in its books as accounts receivable, whether or not such services or disbursements have been completed and whether or not an express or implied agreement for compensation for such services or reimbursement for such disbursements exists, *provided, however,* that Receivables shall not include proceeds from Unfinished Business Claims unless such proceeds are directly attributable to the Debtor's rendering of pre-petition services, *provided further* that Receivables shall not include Harris Contingency Fee Claims.

1.127. "<u>Reconciliation Amount</u>" means the amount determined to be owed by a Partner on account of loans, advances, or distributions made in excess of contractual entitlements under the Partnership Agreement during the period prior to the Petition Date.

1.128. "<u>Related Entity</u>" means Dewey & LeBoeuf LLP (UK), formed under the laws of England & Wales with registration number OC355432; Dewey & LeBoeuf Multinational Partnership; LeBoeuf, Lamb, Greene & MacRae Multinational Partnership; and Dewey Ballantine Multinational Partnership.

1.129. "<u>Released Party</u>" means each of the following in its capacity as such, and only in its capacity as such: (a) the Debtor; (b) the Creditors' Committee and the members thereof; (c) Secured Lender Parties; (d) the Wind-Down Committee and Non-Management Personnel; and (e) with respect to each of the foregoing entities in clauses (a) and (b), their respective Professionals, in their capacities as such.

1.130. "<u>Releasing Secured Lenders</u>" means the Secured Lenders that are not Non-Releasing Secured Lenders, and their successors, transferees or assigns.

1.131.  "<u>Salaried Partner</u>" means a Salaried Partner, as that term is defined in Article 2.1 of the Partnership Agreement.

1.132.  "<u>Scheduled Claim</u>" means a Claim that is listed by the Debtor in the Schedules.

1.133.  "<u>Schedules</u>" means the Schedules of Assets and Liabilities [Docket No. 293] and Statement of Financial Affairs for Dewey & LeBoeuf LLP [Docket No. 294] filed by the Debtor with the Bankruptcy Court on July 26, 2012 pursuant to Bankruptcy Rule 1007, and any amendments thereto.

1.134.  "<u>Secured Claim</u>" means, with respect to any Claim against the Debtor, that portion which, pursuant to section 506 of the Bankruptcy Code, is (a) secured by a valid, perfected, and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtor in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of this Plan (subject to the occurrence of the Effective Date).  Secured Claim includes any Claim to the extent that it is (x) subject to an offset right under applicable law and (y) a Claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

1.135.  "<u>Secured Creditor</u>" means the Secured Lenders and Creditors holding Other Secured Claims.

1.136.  "<u>Secured Lender Claims</u>" means the secured lender and note Claims under the Credit Agreement and Note Agreement, respectively, which shall be deemed Allowed on the Effective Date in the aggregate amount of $261,897,943.72.

1.137.  "<u>Secured Lender Deficiency Claims</u>" means the Deficiency Claims of the Secured Lenders which shall be deemed Allowed General Unsecured Claims on the Effective Date in the amount of $100 million and allocated Pro Rata to the holders of Secured Lender Claims.

1.138.  "<u>Secured Lender Parties</u>" means the parties to the Credit Agreement and the Note Agreement, including the Secured Lenders, the Collateral Agent and the Administrative Agent and each of their respective agents, members, managers, officers, directors, employees, retained professionals, successors and assigns, solely in their capacities as such.

1.139.  "<u>Secured Lender Release</u>" means the release by Releasing Secured Lenders set forth in Section 11.4 hereof.

1.140.  "<u>Secured Lender Trust</u>" means the trust established pursuant to the Plan and in accordance with the Secured Lender Trust Agreement.

1.141.  "<u>Secured Lender Trust Agreement</u>" means that certain trust agreement between the Debtor and the Secured Lender Trustee that establishes and governs the Secured Lender Trust as agreed to by the Debtor, the Collateral Agent and Secured

Lenders holding a majority in amount of the Secured Lender Claims substantially in form and substance as that filed as part of the Plan Supplement and approved pursuant to the Confirmation Order, as the same may be amended from time to time in accordance with its terms.

1.142. "Secured Lender Trust Assets" means all (a) WIP, (b) Receivables, (c) Foreign Office Recoveries (d) Receivables Cash Collateral, excluding the Liquidation Trust Funding Amount, the Administrative Claims Reserve, and the Priority Claims Reserve, (e) any documents and data evidencing, or otherwise relating thereto, and (f) all Causes of Action relating to the foregoing.

1.143. "Secured Lender Trust Funding Reserve" means a reserve established by the Secured Lender Trustee from the Secured Lender Trust Assets in an initial amount of $1 million to fund the activities of the Secured Lender Trust.

1.144. "Secured Lender Trust Interests" means the interests in the Secured Lender Trust allocable to the holders of Allowed Secured Lender Claims (or their successors, transferees or assigns).

1.145. "Secured Lender Trust Oversight Committee" has the meaning set forth in Section 7.1(d) of the Plan.

1.146. "Secured Lender Trustee" means FTI Consulting, Inc., or if FTI Consulting Inc. is unwilling or ineligible to serve as Secured Lender Trustee, such other Person or entity designated or appointed by the Collateral Agent and Secured Lenders holding a majority in amount of Secured Lender Claims in consultation with the Debtor and approved pursuant to the Confirmation Order or the Secured Lender Trust Agreement.

1.147. "Secured Lenders" means the holders of Secured Lender Claims and the Secured Lender Deficiency Claims, and their respective successors, transferees and assigns.

1.148. "SIR Amount" means a self-insured retention amount that the Debtor may be obligated to pay under its Malpractice Policies.

1.149. "Statutory Committees" means the Creditors' Committee and the Former Partners' Committee.

1.150. "Subordinated Claim" means any Claim that is subordinated pursuant to section 510 of the Bankruptcy Code or otherwise by a Final Order.

1.151. "Subsequent Insurance Company Proceeds" means the proceeds received by the Debtor or the Liquidation Trust on account of its interest in Bar Assurance & Reinsurance Limited in excess of the Initial Insurance Company Proceeds.

1.152. "Subsequent PCP/Unfinished Business Proceeds" means proceeds received by the Debtor or the Liquidation Trust, through settlement, litigation or otherwise, on account of (a) PCP-Related Claims and (b) Unfinished Business Claims, in excess of Initial PCP/Unfinished Business Claims.

1.153. "<u>U.S. Trustee</u>" means any and all representatives and employees of the Office of the United States Trustee for the Southern District of New York.

1.154. "<u>Unclaimed Distribution</u>" means any Distribution, together with interest earned or payable thereon, if any, after the applicable Distribution Date, unclaimed one hundred and twenty (120) days following any such Distribution Date.  Unclaimed Distributions shall include, without limitation (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds representing checks which have not been paid, and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a correct address.

1.155. "<u>Unclassified Claims</u>" means Administrative Claims and Priority Tax Claims.

1.156. "<u>Unfinished Business Claims</u>" means Claims or Causes of Action arising from or under the "unfinished business doctrine" described in *Jewel v. Boxer*, 203 Cal. Rptr. 13 (Cal. Ct. App. 1984) and subsequent applicable case law, to the extent such Claims are not also Receivables.

1.157. "<u>Uninsured Malpractice Claim</u>" means any Malpractice Claim to the extent of the Uninsured Portion, as determined by the Net SIR of the applicable Malpractice Policy.

1.158. "<u>Uninsured Portion</u>" means, with respect to a given Malpractice Claim, the Debtor's Net SIR.

1.159. "<u>Unsecured Claim</u>" means any Claim which is not a Secured Claim, an Administrative Claim or a Priority Claim.

1.160. "<u>Voting Deadline</u>" means the date, as set by the Bankruptcy Court, by which all ballots must be properly executed, completed, delivered, and received to be counted as a vote by the holder of an Eligible Claim for accepting or rejecting the Plan.

1.161. "<u>Voting Record Date</u>" means the date, as set by the Bankruptcy Court, used for determining which Creditors are entitled to receive the solicitation materials required by Bankruptcy Rule 3017(d) and related documents, and which holders of Eligible Claims are entitled to vote on the Plan.

1.162. "<u>Wind-Down Committee</u>" means the committee established to oversee the day-to-day wind-down activities of the Debtor, which committee currently consists of: (a) Janis M. Meyer, Esq., and (b) Stephen J. Horvath III, Esq.

1.163. "<u>WIP</u>" means all work in process of the Debtor, any of its foreign or domestic branch offices or any of its foreign or domestic affiliates that has not yet been converted to Receivables.

1.164. "<u>401(k) Plan</u>" means that certain 401(k) savings and retirement plan, of which Fidelity Investments is the plan's record-keeper and trustee, that the Debtor sponsored for certain of its Partners and Employees.

1.165. "1301 Properties" means 1301 Properties Owner LP, as landlord with regard to that certain commercial lease with Dewey & LeBoeuf LLP for its former head office at 1301 Avenue of the Americas, New York, New York 10019.

**Section 1.2    Rules of Interpretation.**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender.  The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

**Section 1.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**Section 1.4    Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**ARTICLE II.**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**Section 2.1    Unclassified Claims - Administrative Claims and Priority Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified under the Plan, and shall instead be treated separately as Unclassified Claims on the terms set forth in Article IV of the Plan.

**Section 2.2    Criterion of Class.**

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class and is in a different Class to the extent that the remainder of the Claim qualifies within the description of the different Class.

**Section 2.3    Debtor Claims and Interests.**

The Classes of Claims against and Interests in the Debtor shall be:

(a)    **Class 1 – Non-Tax Priority Claims.**

Class 1 Claims shall consist of all Non-Tax Priority Claims against the Debtor.

(b)    **Class 2 – Secured Lender Claims.**

Class 2 Claims shall consist of all Secured Lender Claims against the Debtor.

(c)    **Class 3 – Other Secured Claims.**

Class 3 Claims shall consist of all Other Secured Claims against the Debtor.

(d)    **Class 4 – General Unsecured Claims.**

Class 4 Claims shall consist of all General Unsecured Claims against the Debtor.

(e)    **Class 5 – Insured Malpractice Claims.**

Class 5 Claims shall consist of all Insured Malpractice Claims against the Debtor.

(f)    **Class 6 – Subordinated Claims.**

Class 6 Claims shall consist of all Subordinated Claims against the Debtor.

(g)    **Class 7 – Interests.**

Class 7 Interests shall consist of all Interests in the Debtor.

## ARTICLE III.

## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS AND INTERESTS UNDER THE PLAN

**Section 3.1    Unimpaired Classes of Claims.**

Class 1 – Non-Tax Priority Claims are not impaired under the Plan.

**Section 3.2    Impaired Classes of Claims.**

Except as provided in Section 3.1 hereof, all Classes of Claims and Interests are impaired under the Plan.

**Section 3.3    Impairment Controversies**.

If a controversy arises as to whether any Claim or Interest, or any Class of Claims or Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE IV.

## PROVISIONS FOR TREATMENT OF UNCLASSIFIED
## CLAIMS UNDER THE PLAN

**Section 4.1    Unclassified Claims**.

As set forth below, the Administrative Claims and Priority Tax Claims shall be treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.

**Section 4.2    Treatment of Administrative Claims**.

All Administrative Claims shall be treated as follows:

(a)    _Allowance of Administrative Claims/Professional Fee Claims_.  An Administrative Claim (other than a Professional Fee Claim) with respect to which notice has been properly filed and served pursuant to Section 7.15 hereof shall become an Allowed Administrative Claim if no objection is filed within one hundred eighty (180) days after the later of (i) the Effective Date, or (ii) the date of service of the applicable notice of Administrative Claim.  If an objection is filed within such 180-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  A Professional Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 7.16 hereof shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

(b)    _Payment of Allowed Administrative Claims_.  On the later of the Effective Date or the date such Claim is Allowed, or as soon thereafter as is reasonably practicable, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim which shall be paid pursuant to and in accordance with Section 4.2(a) hereof, or (ii) such other treatment as may be agreed upon in writing by the Debtor or the Liquidation Trustee and the holder of such Allowed Administrative Claim.

**Section 4.3    Treatment of Priority Tax Claims**.

At the election of the Liquidation Trustee, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction of such holder's Allowed Priority Tax Claim (a) the amount of such holder's Allowed Priority Tax Claim, with Post-Confirmation Interest thereon, in equal annual Cash payments on each anniversary of the Effective Date, until the sixth anniversary of the date of assessment of such Priority Tax Claim (provided that the Liquidation Trustee may pre-pay the balance of any such Allowed

Priority Tax Claim at any time without penalty);  (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder;  or (c) such other treatment as may be agreed upon in writing by such holder;  *provided, however,* that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Priority Tax Claim.  In the event there exists from time to time any Disputed Priority Tax Claims, the Liquidation Trustee shall at all such times hold and maintain an appropriate reserve to be determined by the Liquidation Trustee, unless otherwise ordered by the Bankruptcy Court, for such Disputed Priority Tax Claims.  Provided that Allowed Priority Tax Claims are paid in full, the Confirmation Order shall enjoin any holder of a Priority Tax Claim from commencing or continuing any action or proceeding against any responsible Person, Partner or officer of the Debtor that otherwise would be liable to such holder for payment of a Priority Tax Claim.

## ARTICLE V.

## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**Section 5.1    Debtor Claims and Interests**.

The Classes of Claims against and Interests in the Debtor shall be treated under the Plan as follows:

(a)    **Class 1 - Non-Tax Priority Claims**.  On the later of the Effective Date or the date such Claim is Allowed, or as soon thereafter as is reasonably practicable, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 1 - Non-Tax Priority Claim, each holder of an Allowed Non-Tax Priority Claim against the Debtor shall receive (a) an amount in Cash equal to the Allowed amount of such Non-Tax Priority Claim, which shall be paid pursuant to and in accordance with Section 7.10(b);  or (b) such other treatment as to which the Debtor or the Liquidation Trustee and such holder shall have agreed upon in writing.  In the event there exists from time to time any Disputed Non-Tax Priority Claims, the Liquidation Trustee shall at all such times hold and maintain an appropriate reserve to be determined by the Liquidation Trustee, unless otherwise ordered by the Bankruptcy Court, for such Disputed Non-Tax Priority Claims.

(b)    **Class 2 – Secured Lender Claims.**  On the Effective Date, the Secured Lender Claims will be deemed Allowed Secured Lender Claims in the aggregate amount of $261,897,943.72.  On the Effective Date, or as soon thereafter as is reasonably practicable, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Class 2 - Secured Lender Claims, each holder of an Allowed Secured Lender Claim shall receive its Pro Rata share of (i) the Secured Lender Trust Interests and (ii) Liquidation Trust Secured Lender Interests;  *provided, however*, that on the Effective Date, holders of Allowed Secured Lender Claims will be deemed to have waived any diminution in value claims arising under the Final Cash Collateral Order.  In addition, on the Effective Date, the Secured Lender Deficiency Claims shall be deemed Allowed General Unsecured Claims in the amount of $100 million and shall be included in and treated as a Class  4 — General Unsecured Claim; *provided, however*, the holders of Secured Lender Deficiency Claims shall waive or otherwise forego any

Distribution from Initial PCP/Unfinished Business Proceeds that they would otherwise receive as general unsecured creditors by virtue of their Secured Lender Deficiency Claims.

(c)    **Class 3 – Other Secured Claims.**  On the later of the Effective Date or the date such Claim is Allowed, or as soon thereafter as is reasonably practicable, in full satisfaction, settlement, release, and discharge, of and in exchange for, such Allowed Class 3 - Other Secured Claims, each holder of an Allowed Other Secured Claim shall receive at the option of the Liquidation Trustee (i) Cash in the amount of such Allowed Other Secured Claim, (ii) a non-recourse conveyance of the Estate's right, title and interest in and to the collateral securing such Allowed Other Secured Claim, or (iii) such other, less favorable treatment as may be agreed to by the holder of such Allowed Other Secured Claim and the Debtor or the Liquidation Trustee in writing. Any Deficiency Claim resulting from the aforesaid treatment shall be included in and treated as a Class 4 - General Unsecured Claim.  In the event there exists from time to time any Disputed Other Secured Claims, the Liquidation Trustee shall (x) at all such times hold and maintain an appropriate reserve to be determined by the Liquidation Trustee, unless otherwise ordered by the Bankruptcy Court, for such Disputed Other Secured Claims at such times or (y) maintain and preserve the collateral securing such Other Secured Claims.  The Debtor's failure to object to any Other Secured Claim shall be without prejudice to the Debtor's or the Liquidation Trustee's right to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the Other Secured Claim holder.  Nothing in this Section or elsewhere in this Plan shall preclude the Debtor, the Liquidation Trustee or the Secured Lender Trustee from challenging the validity of any alleged lien on any Asset of the Debtor or the value of the property that secures any alleged lien, allegedly securing an Other Secured Claim.

(d)    **Class 4 - General Unsecured Claims**.  On the later of the Effective Date or the date such Claim is Allowed, or as soon thereafter as is reasonably practicable, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Class 4 - General Unsecured Claim, each holder of an Allowed General Unsecured Claim (including the Secured Lender Deficiency Claims and other Deficiency Claims, if any) shall receive its Pro Rata share of the Liquidation Trust General Unsecured Creditor Interests; *provided, however,* the holders of Secured Lender Deficiency Claims shall waive or otherwise forego any Distribution from Initial PCP/Unfinished Business Proceeds that they would otherwise receive as general unsecured creditors by virtue of their Secured Lender Deficiency Claims. In the event there exists from time to time any Disputed General Unsecured Claims, the Liquidation Trustee shall at all such times hold and maintain an appropriate reserve to be determined by the Liquidation Trustee, unless otherwise ordered by the Bankruptcy Court, for such Disputed General Unsecured Claims at such times.

(e)    **Class 5 - Insured Malpractice Claims**.  On the later of the Effective Date or the date such Claim is Allowed, or as soon thereafter as is reasonably practicable, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Class 5 - Insured Malpractice Claim, each holder of an Allowed Insured Malpractice Claim shall be paid pursuant to, and solely from the proceeds of, any applicable Malpractice Policy with respect to the Insured Portion of the Claim.  Any

Claim, or portion of a Claim, that is an Allowed Uninsured Malpractice Claim shall be treated as a Class 4 - General Unsecured Claim.

   (f) **Class 6 – Subordinated Claims**.  Holders of Allowed Subordinated Claims shall not receive any Distributions on account of such Claims unless and until all holders of Allowed General Unsecured Claims against the Debtor are satisfied in full with post-petition interest, in which case each holder of an Allowed Subordinated Claim shall receive its Pro Rata Share of any remaining Liquidation Trust Assets.

   (g) **Class 7 – Interests.**  On the Effective Date, the legal, equitable, and contractual rights of each holder of an Interest in the Debtor shall be extinguished, canceled and discharged, and such holders of Interests shall not receive any Distribution or consideration in connection with such Interests.

**Section 5.2 Reservation of Rights Regarding Claims**.

   Except as otherwise explicitly provided in this Plan, nothing shall affect the Debtor's or the Liquidation Trustee's rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims (other than Secured Lender Claims and Secured Lender Deficiency Claims), including, but not limited to, all rights of setoff or recoupment.

**ARTICLE VI.**

**ACCEPTANCE OR REJECTION OF THE PLAN;  EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS**

**Section 6.1 Classes Entitled to Vote**.

   Except for Class 1 – Non-Tax Priority Claims, Class 6 – Subordinated Claims and Class 7 – Interests, all Classes of Claims are entitled to vote on the Plan.

**Section 6.2 Class Acceptance Requirement.**

   A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

**Section 6.3 Cramdown.**

   If all applicable requirements for Confirmation are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), the Bankruptcy Court may confirm the Plan on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims that is impaired thereunder, and has not accepted the Plan.

23

## ARTICLE VII.

## MEANS OF IMPLEMENTATION OF THE PLAN

**Section 7.1    Creation of the Secured Lender Trust and Appointment of the Secured Lender Trustee and the Secured Lender Trust Oversight Committee.**

(a)    <u>Creation of the Secured Lender Trust</u>.  As of the Effective Date, the Secured Lender Trust shall be formed to liquidate the Secured Lender Trust Assets and to enable the Secured Lender Trustee to distribute the proceeds thereof to holders of Secured Lender Claims.  The activities of the Secured Lender Trust shall be funded out of the Secured Lender Trust Funding Reserve and not from the Liquidation Trust, Liquidation Trust Assets or Liquidation Trust Funding Reserve.  The Secured Lender Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  The terms of the Secured Lender Trust Agreement shall be satisfactory in form and substance to the Debtor, the Collateral Agent and Secured Lenders holding a majority in amount of the Secured Lender Claims, and shall control to the extent of any conflict or inconsistency among the Plan, the Intercreditor Agreement and the Secured Lender Trust Agreement.

(b)    <u>The Secured Lender Trust Agreement and Appointment of the Secured Lender Trustee</u>.  As of the Effective Date, the Secured Lender Trust Agreement shall be executed by the Debtor and the Secured Lender Trustee and shall become effective without further action by any party.

(c)    <u>Secured Lender Trust Assets</u>.  The Secured Lender Trust shall consist of the Secured Lender Trust Assets.  On the Effective Date, the Debtor shall, and shall direct the Collateral Agent to, transfer all of the Secured Lender Trust Assets to the Secured Lender Trust subject to the liens of the Secured Lenders.  Thereafter, the Collateral Agent shall transfer and assign its liens on the Secured Lender Trust Assets to the Secured Lender Trustee for the benefit of the Secured Lenders.

(d)    <u>Appointment of the Secured Lender Trust Oversight Committee</u>. The Secured Lender Trustee shall report to an oversight committee the ("Secured Lender Trust Oversight Committee"), which committee shall be selected by Secured Lenders holding a majority in amount of the Secured Lender Claims, in consultation with the Debtor, pursuant to the terms of the Secured Lender Trust Agreement and the members of which will be identified prior to the Confirmation Hearing.

(e)    <u>Tax Treatment</u>. Consistent with the principles of Revenue Procedure 94-45, 1994-2 C.B. 684, as of the Effective Date, for federal income tax purposes, (i) the Debtor will be deemed to transfer the Secured Lender Trust Assets to the holders of Secured Lender Claims, (ii) the holders of Secured Lender Claims will be deemed to transfer such Assets to the Secured Lender Trust,  (iii) the Secured Lender Trust will be treated as a "liquidating trust," as defined in Treasury Regulation section 301.7701-4(d), and as a "grantor trust" within the meaning of Internal Revenue Code

sections 671-679 and (iv) the holders of Secured Lender Claims will be treated as the "grantors" of the Secured Lender Trust.

**Section 7.2    General Powers, Rights and Responsibilities of the Secured Lender Trustee and the Secured Lender Trust Oversight Committee.**

(a)     As of the Effective Date, the Secured Lender Trustee shall be appointed, and shall serve in such capacity and shall have comparable authority as a bankruptcy trustee of the Debtor, as the exclusive representative of the Estate under section 1123(b)(3)(B) of the Bankruptcy Code or any corresponding provision of federal or state laws with respect to the Secured Lender Trust Assets and shall succeed to all of the Debtor's rights and powers with respect thereto, including, without limitation, those provided under the ADR Procedures Order. The powers, rights, and responsibilities of the Secured Lender Trustee, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the Secured Lender Trust Agreement and shall include, but not be limited to, the power and authority to collect and liquidate the Secured Lender Trust Assets under the jurisdiction of the Bankruptcy Court. The Secured Lender Trustee shall consult with and report to members of the Secured Lender Oversight Committee regarding the collection and liquidation of the Secured Lender Trust Assets, as set forth in the Secured Lender Trust Agreement. The Secured Lender Trustee shall cooperate with the Liquidation Trustee in good faith and make available to the Liquidation Trustee, on reasonable terms and conditions, documents and data in the possession or control of the Secured Lender Trustee, as needed by the Liquidation Trustee to carry out the purposes and activities of the Liquidation Trust.

(b)     The Secured Lender Trustee may collect the proceeds of the Receivables and other Secured Lender Trust Assets and may retain one or more collection agents to continue to pursue collections after the Effective Date, to the extent set forth in the Secured Lender Trust Agreement.

(c)     The Secured Lender Trustee shall be authorized to negotiate, resolve and enter into settlements with respect to the Secured Lender Trust Assets, subject to the consent of the Secured Lender Trust Oversight Committee, as applicable, to the extent set forth in the Secured Lender Trust Agreement and without further order of the Bankruptcy Court.

(d)     The Secured Lender Trustee shall be authorized to take such actions as he or she deems appropriate in the Secured Lender Trustee's reasonable business judgment against any Person with respect to any of the Secured Lender Trust Assets, to the extent set forth in the Secured Lender Trust Agreement.

(e)     The Secured Lender Trustee shall be entitled to proceed with and employ all discovery devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, in order to investigate any Secured Lender Trust Assets, and shall be entitled to rights provided to the Debtor under the ADR Procedures Order.

(f)     The Secured Lender Trustee shall be authorized to enter into a settlement with any Person upon terms and conditions which he or she deems appropriate in the Secured Lender Trustee's reasonable business judgment, to the extent

set forth in the Secured Lender Trust Agreement, and without further order of the Bankruptcy Court.

(g)    The Secured Lender Trustee may employ, without further order of the Bankruptcy Court, professionals or other persons to assist it in carrying out its duties hereunder, including former counsel and advisors to the Debtor and/or the Secured Lender Parties and former Wind-Down Committee members or Employees of the Debtor, and may compensate and reimburse the expenses of those professionals and other persons, on the terms to be agreed to by the Secured Lender Trustee and such professionals and other persons, without further order of the Bankruptcy Court, to the extent set forth in the Secured Lender Trust Agreement.

(h)    The Secured Lender Trustee shall be authorized, without further order of the Bankruptcy Court, to dispose or abandon Secured Lender Trust Assets where the Secured Lender Trustee deems appropriate in the Secured Lender Trustee's reasonable business judgment upon proper notice to relevant third parties that may have an interest in the property to be abandoned, including the disposition of client files and records or other files and records of the Debtor and its Estate (to the extent such files and records are Secured Lender Trust Assets) in accordance with the File Disposition Procedures and/or governing law, as applicable, to the extent set forth in the Secured Lender Trust Agreement.

(i)    The Secured Lender Trustee shall be authorized to commence any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable law, to the extent set forth in the Secured Lender Trust Agreement.

**Section 7.3    Issuance of Secured Lender Trust Interests.**

On the Effective Date or as soon as practicable thereafter, the Collateral Agent shall deliver to the Secured Lender Trustee a list of each Person entitled to receive Secured Lender Trust Interests pursuant to the Plan, including the Allowed amount of such Person's Secured Lender Claim and the address of each such Person.  In so doing, the Collateral Agent (without any independent investigation) shall be entitled to rely solely upon, and shall not incur any liability for so relying upon, information provided to the Collateral Agent by the Secured Lenders under the Intercreditor Agreement.  The Secured Lender Trustee shall maintain a register of the holders of Secured Lender Trust Interests.  To the extent permitted in the Secured Lender Trust Agreement, upon notice to the Secured Lender Trustee by any holder of a Secured Lender Trust Interest, the Secured Lender Trustee shall amend the register to reflect any transfer of a Secured Lender Trust Interest by such holder to a transferee as set forth in the notice;  *provided, however*, **that the Secured Lender Trustee need not reflect any transfer (or make any distribution to any transferee) and will give notice to such holder that no transfer has been recognized in the event the Secured Lender Trustee reasonably believes that such transfer (or the distribution to such transferee) may constitute a violation of applicable laws or might cause the Secured Lender Trust to be required to register Secured Lender Trust Interests, or to become a reporting company, under the Securities Exchange Act of 1934, as amended.**

**Section 7.4    Distribution of Secured Lender Trust Assets.**

Subject in all cases to the terms of the Secured Lender Trust Agreement, the Secured Lender Trustee shall distribute to holders of Allowed Secured Lender Claims on account of their Secured Lender Trust Interests, on a quarterly basis (or such other basis as determined by the Secured Lender Trustee in consultation with the Secured Lender Trust Oversight Committee), all Cash on hand in the Secured Lender Trust (including any Cash received from the Debtor on the Effective Date), except the Secured Lender Trust Funding Reserve which shall be used to fund the activities of the Secured Lender Trust and such additional reserves as the Secured Lender Trustee deems necessary to fund (i) any additional amounts required to be funded with Secured Lender Trust Assets pursuant to Section 7.10(a) and (b) hereof and (ii) any other costs, fees, expenses, and other amounts owing and payable to the Collateral Agent or the Administrative Agent under the Intercreditor Agreement or any of the other Financing Agreements (as defined in the Intercreditor Agreement).

**Section 7.5    Creation of the Liquidation Trust, Appointment of the Liquidation Trustee and the Liquidation Trust Oversight Committee.**

(a)    _Creation of the Liquidation Trust_.    On the Effective Date, the Liquidation Trust shall be formed pursuant to this Plan and the Liquidation Trust shall be established and become effective in accordance with the Liquidation Trust Agreement to liquidate the Liquidation Trust Assets, including, without limitation, the prosecution of Causes of Action retained by the Estate (except those that are Secured Lender Trust Assets) under the jurisdiction of the Bankruptcy Court and to enable the Liquidation Trustee to distribute the proceeds thereof to holders of Allowed Claims in accordance with the Plan and the Liquidation Trust Agreement.   The Liquidation Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.   The terms of the Liquidation Trust Agreement shall be satisfactory in form and substance to the Debtor, the Collateral Agent, Secured Lenders holding a majority in amount of the Secured Lender Claims and the Creditors' Committee, and shall control to the extent of any conflict or inconsistency among the Plan, the Intercreditor Agreement, and the Liquidation Trust Agreement.

(b)    _The Liquidation Trust Agreement and Appointment of the Liquidation Trustee_.   On the Effective Date, the Liquidation Trust Agreement shall be executed by the Debtor and the Liquidation Trustee and shall become effective without further action by any party.

(c)    _Liquidation Trust Assets_.   The Liquidation Trust shall consist of the Liquidation Trust Assets.   On the Effective Date, the Debtor shall transfer all of the Liquidation Trust Assets to the Liquidation Trust.

(d)    _Appointment of the Liquidation Trust Oversight Committee_. The Liquidation Trustee shall report to an oversight committee the ("Liquidation Trust Oversight Committee"), which committee shall be comprised of (i) an individual selected by the Collateral Agent and Secured Lenders holding a majority of the Secured

Lender Claims, (ii) an individual selected by the Creditors' Committee and (iii) an individual selected jointly by the Collateral Agent, Secured Lenders holding a majority in amount of the Secured Lender Claims and the Creditors' Committee, in consultation with the Debtor, pursuant to the terms of the Liquidation Trust Agreement, and which individuals shall be identified prior to the Confirmation Hearing.

(e)    No Distributions from Litigation Recoveries to Defendants.    If a litigation recovery on account of a Cause of Action arising from a defendant's bad faith, willful misconduct, or gross negligence is obtained by the Liquidation Trustee, such defendant shall not be entitled to share directly or indirectly in the proceeds from such litigation recovery.

(f)    Tax Treatment.    Except to the extent allocable to Disputed Claims, consistent with the principles of Revenue Procedure 94-45, 1994-2 C.B. 684, as of the Effective Date, for federal income tax purposes, (i) the Debtor will be deemed to transfer the Liquidation Trust Assets to the holders of Allowed Claims in proportion to their respective beneficial interests in the Liquidation Trust, (ii) the holders of Allowed Claims will be deemed to transfer such Assets to the Liquidation Trust,  (iii) the Liquidation Trust will be treated as a "liquidating trust," as defined in Treasury Regulation section 301.7701-4(d), and as a "grantor trust" within the meaning of Internal Revenue Code sections 671-679 and (iv) the holders of Allowed Claims will be treated as the "grantors" of the Liquidation Trust.

**Section 7.6    General Powers, Rights and Responsibilities of the Liquidation Trustee and the Liquidation Trust Oversight Committee.**

(a)    As of the Effective Date, the Liquidation Trustee shall be appointed, and shall serve in such capacity and shall have comparable authority as a bankruptcy trustee of the Debtor, as the exclusive representative of the Estate under section 1123(b)(3)(B) of the Bankruptcy Code or any corresponding federal or state laws with respect to the Liquidation Trust Assets and the wind down of the Debtor and shall succeed to all of the Debtor's and the Estate's rights with respect thereto.  The powers, rights, and responsibilities of the Liquidation Trustee, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the Liquidation Trust Agreement and shall include, but not be limited to:  (i) collect and liquidate the Liquidation Trust Assets under the jurisdiction of the Bankruptcy Court, (ii) assert, prosecute, pursue, compromise and settle in accordance with the Liquidation Trustee's reasonable business judgment, all Claims and Causes of Action (other than those that are Secured Lender Trust Assets), including against Non-Participating Partners and any Causes of Action for which the Creditors' Committee has obtained standing to prosecute, and assert and enforce all legal or equitable remedies and defenses belonging to the Debtor or its Estate, including, without limitation, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code, (iii) collect all sums due from Participating Partners and enforce all rights under and in connection with any PCP, (iv) object to Claims in accordance with the Liquidation Trustee's reasonable business judgment, (v) make distributions to holders of Liquidation Trust Interests and (vi) take all other actions required under the Plan to complete the dissolution and wind down of the Debtor under applicable non-bankruptcy law and in accordance with the Plan, to the

extent set forth in the Liquidation Trust Agreement, and except as provided therein, without further order of the Bankruptcy Court.

(b)     The Liquidation Trustee shall be authorized to negotiate, resolve and enter into settlements on all matters affecting the Estate, including, without limitation, Reconciliation Amounts, Disputed Claims, and/or other Causes of Action (other than those that are Secured Lender Trust Assets), subject to the consent of the Liquidation Trust Oversight Committee as applicable, to the extent set forth in the Liquidation Trust Agreement and except as provided therein, without further order of the Bankruptcy Court.

(c)     The Liquidation Trustee shall be authorized to take such actions as he or she deems appropriate in the Liquidation Trustee's reasonable business judgment against any Person with respect to a Cause of Action (other than a Cause of Action that is a Secured Lender Trust Asset), to the extent set forth in the Liquidation Trust Agreement.

(d)     The Liquidation Trustee shall be entitled to proceed with and employ all discovery devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, in order to investigate any Causes of Action (other than those that are Secured Lender Trust Assets).

(e)     The Liquidation Trustee shall be authorized to enter into a settlement with any Party upon terms and conditions which he or she deems appropriate in the Liquidation Trustee's reasonable business judgment, to the extent set forth in the Liquidation Trust Agreement and, except as provided therein, without further order of the Bankruptcy Court.

(f)     The Liquidation Trustee shall be authorized to take or cause to be taken all actions pursuant to the provisions of the Liquidation Trust Agreement and the PCPs as necessary to secure the effective implementation of this Plan and the continued effectiveness of the Participating Partner Injunction, to the extent set forth in the Liquidation Trust Agreement.

(g)     The Liquidation Trustee may employ, without further order of the Bankruptcy Court, professionals or other persons to assist it in carrying out its duties hereunder, including former counsel and advisors to the Debtor, the Creditors' Committee and/or the Secured Lender Parties and former Wind-Down Committee members and Employees of the Debtor, and may compensate and reimburse the expenses of those professionals and other persons, on the terms to be agreed to by the Liquidation Trustee and such professionals and other persons, without further order of the Bankruptcy Court, to the extent set forth in the Liquidation Trust Agreement.

(h)     The Liquidation Trustee shall be authorized, without further order of the Bankruptcy Court, to dispose or abandon the Liquidation Trust Assets when it deems appropriate in the Liquidation Trustee's reasonable business judgment upon proper notice to relevant third parties that may have an interest in the property to be abandoned, including the disposition of client files and records or other files and records of the Debtor and its Estate in accordance with the File Disposition Procedures

and/or governing law as, applicable, to the extent set forth in the Liquidation Trust Agreement and in consultation with the Secured Lender Trustee.

(i)     The Liquidation Trustee shall be authorized to commence any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable law, to the extent set forth in the Liquidation Trust Agreement.

(j)     The Liquidation Trustee shall (i) consult with members of the Liquidation Trust Oversight Committee regarding the prosecution and/or settlement of Causes of Action (other than those that are Secured Lender Trust Assets) and report to the Liquidation Trust Oversight Committee regarding such matters;   and (ii) seek approval from the Liquidation Trust Oversight Committee regarding the prosecution and/or settlement of each Cause of Action, to the extent set forth in the Liquidation Trust Agreement.

(k)     The Liquidation Trustee shall cooperate with the Secured Lender Trustee in good faith and make available to the Secured Lender Trustee, on reasonable terms and conditions, documents and data in the possession or control of the Liquidation Trustee as needed by the Secured Lender Trustee to carry out the purposes and activities of the Secured Lender Trust.

**Section 7.7     Issuance of Liquidation Trust Interests.**

(a)     *Liquidation Trust Secured Lender Interests*.  On the Effective Date or as soon as practicable thereafter, the Collateral Agent shall deliver to the Liquidation Trustee a list of each Person entitled to receive Liquidation Trust Secured Lender Interests pursuant to the Plan, including the Allowed amounts of such Person's Secured Lender Claim and the address of each such Person.  In so doing, the Collateral Agent (without any independent investigation) shall be entitled to rely solely upon, and shall not incur any liability for so relying upon, information provided to the Collateral Agent under the Intercreditor Agreement.

(b)     *Liquidation Trust General Unsecured Creditor Interests*.  On the Effective Date or as soon as practicable thereafter, the Debtor shall deliver to the Liquidation Trustee a list of each Person to receive Liquidation Trust General Unsecured Creditor Interests as of the Effective Date pursuant to the Plan, including the Allowed amounts of the General Unsecured Claims of, and the address of, each such Person, provided that, with respect to the Secured Lender Deficiency Claims, such list shall be provided by the Collateral Agent and the Collateral Agent (without any independent investigation) shall be entitled to rely solely upon, and shall not incur any liability for so relying upon, information provided to the Collateral Agent under the Intercreditor Agreement.  On the Effective Date, the Debtor shall also deliver to the Liquidation Trustee (i) a list of each holder of a General Unsecured Claim that is a Disputed Claim as of the Effective Date, including the maximum amount of each such Claim, and the address of the holder thereof and (ii) in consultation with the Collateral Agent, a list containing the identities of Secured Lenders who are Releasing Secured Lenders and those who are Non-Releasing Secured Lenders.

   (c) <u>Transfer of Liquidation Trust Interests</u>.  The Liquidation Trustee shall maintain a register of the holders of Liquidation Trust Interests and shall adjust the register from time to time as General Unsecured Claims that are Disputed Claims become Allowed.  To the extent permitted in the Liquidation Trust Agreement, upon notice to the Liquidation Trustee by any holder of a Liquidation Trust Interest, the Liquidation Trustee shall amend the register to reflect any transfer of a Liquidation Trust Lender Interest by such holder to a transferee as set forth in the notice; ***provided, however*, that the Liquidation Trustee need not reflect any transfer (or make any distribution to any transferee) and will give notice to such holder that no transfer has been recognized in the event the Liquidation Trustee reasonably believes that such transfer (or the distribution to such transferee) may constitute a violation of applicable laws or might cause the Liquidation Trust to be required to register Liquidation Trust Interests, or to become a reporting company, under the Securities Exchange Act of 1934, as amended.**

**Section 7.8**   <u>**Distribution of Liquidation Trust Assets.**</u>

   The Liquidation Trustee shall distribute to the holders of Liquidation Trust Interests, on a quarterly basis (or such other basis as determined by the Liquidation Trustee in consultation with the Liquidation Trust Oversight Committee), the proceeds of the Liquidation Trust Assets (except the Liquidation Trust Funding Reserve which shall be used to fund the activities of the Liquidation Trust), as follows:

   i. *Distributions on Account of Liquidation Trust Secured Lender Interests.* The Liquidation Trustee shall distribute to holders of Allowed Secured Lender Claims on account of their Liquidation Trust Secured Lender Interests, net of related legal fees and related expenses, (i) 80% of the Initial PCP/Unfinished Business Proceeds, (ii) 49.5% of Subsequent PCP/Unfinished Business Proceeds, (iii) 65% of Mismanagement Claims Proceeds, (iv) 50% of Initial Insurance Company Proceeds, (v) 60% of Subsequent Insurance Company Proceeds, (vi) 65% of Non-PCP Avoidance Action Proceeds, (vii) 50% of Harris Contingency Fee Claims Proceeds and (viii) 70% of the proceeds from all other Liquidation Trust Assets, including artwork and litigation claims (other than Mismanagement Claims, PCP-Related Claims and Non-PCP Avoidance Actions).  **Notwithstanding the foregoing, Non-Releasing Secured Lenders shall not be entitled to any Initial PCP/Unfinished Business Proceeds or Subsequent PCP/Unfinished Business Proceeds, to the extent such proceeds are the proceeds of a PCP, and such proceeds to which such Non-Releasing Secured Lenders would otherwise be entitled shall be distributed Pro Rata to Releasing Secured Lenders.**

   ii. *Distributions on Account of Liquidation Trust General Unsecured Creditor Interests.* The Liquidation Trustee shall distribute to holders of Allowed General Unsecured Claims, other than holders of the Secured Lender Deficiency Claims, on account of their Liquidation Trust General Unsecured Creditor Interests, net of related legal fees and related expenses, 20% of the Initial PCP/Unfinished Business Proceeds. In addition, the Liquidation Trustee shall distribute to holders of Allowed General Unsecured Claims, including holders of the Secured Lender Deficiency Claims, on account of their Liquidation Trust General Unsecured Creditor Interests, net of related legal fees and related expenses, (i) 50.5% of Subsequent PCP/Unfinished Business Proceeds, (ii) 35% of Mismanagement Claims Proceeds, (iii) 50% of Initial Insurance

Company Proceeds, (iv) 40% of Subsequent Insurance Company Proceeds, (v) 35% of Non-PCP Avoidance Action Proceeds, (vi) 50% of Harris Contingency Fee Claims Proceeds and (vii) 30% of the proceeds from all other Liquidation Trust Assets, including artwork and litigation claims (other than Mismanagement Claims, PCP-Related Claims and Non-PCP Avoidance Actions). **Notwithstanding the foregoing, Non-Releasing Secured Lenders shall not be entitled to any Initial PCP/Unfinished Business Proceeds or Subsequent PCP/Unfinished Business Proceeds on account of their Secured Lender Deficiency Claims, to the extent such proceeds are the proceeds of a PCP, and such proceeds to which such Non-Releasing Secured Lenders would otherwise be entitled shall be distributed Pro Rata to holders of Allowed General Unsecured Claims (including Secured Lender Deficiency Claims to the extent held by Releasing Secured Lenders).**

**Section 7.9    Liquidation Trust Funding.**

On the Effective Date or as soon as practicable thereafter, the Liquidation Trust Funding Reserve shall be established with Receivables Cash Collateral. Subject to the provisions of the Liquidation Trust Agreement, the Liquidation Trust Funding shall be used to pay the expenses of the Liquidation Trust, including without limitation, costs and expenses of counsel or other advisors. The Liquidation Trust Agreement shall provide for an allocation of the Liquidation Trust Funding across projected expenditures agreed to by the Collateral Agent, Secured Lenders holding a majority in amount of Secured Lender Claims and the Creditors' Committee in consultation with the Liquidation Trustee. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval. Additional funding of the Liquidation Trust Funding Reserve may only be authorized by the Liquidation Trust Oversight Committee in accordance with the terms of the Liquidation Trust Agreement. Subject to the provisions of the Liquidation Trust Agreement, to the extent additional funding is so authorized in connection with General Unsecured Claim objections, 100% of the cost of such funding shall be paid only out of Liquidation Trust Assets that would otherwise be distributed to the holders of Liquidation Trust General Unsecured Creditor Interests hereunder. The costs of all other additional funding shall be paid only out of Liquidation Trust Assets, 65% of which would otherwise be distributed to the holders of Liquidation Trust Secured Lender Interests and 35% of which would otherwise be distributed to the holders of Liquidation Trust General Unsecured Creditor Interests.

**Section 7.10    Distributions to Administrative, Priority and Certain Other Claims.**

Following the Effective Date, as set forth in greater detail in Article VIII herein, Distributions shall be made as follows:

(a)    On the Effective Date or as soon as practicable thereafter, the Administrative Claims Reserve shall be established out of Receivables Cash Collateral. After the Effective Date, the Liquidation Trustee shall, to the extent required under this Plan, make Distributions from the Administrative Claims Reserve to all holders of Allowed Administrative Claims. To the extent there are any excess funds in the Administrative Claims Reserve after all Allowed Administrative Claims have been paid, such excess shall be returned to the Secured Lender Trustee for the benefit of the holders of the Secured Lender Trust Interests. To the extent there are any Excess

Administrative Claims, such Excess Administrative Claims shall be funded as follows: (i) Excess Administrative Claims attributable to Professionals retained by the Secured Lenders, the Collateral Agent or the Administrative Agent shall be paid by the Secured Lender Trustee out of the Secured Lender Trust Assets; (ii) Excess Administrative Claims attributable to Professionals retained by the Creditors' Committee shall be paid Pro Rata out of Distributions that would otherwise be made to holders of Liquidation Trust General Unsecured Creditor Interests and (iii) 65% of all other Excess Administrative Claims shall be paid by the Secured Lender Trustee out of the Secured Lender Trust Assets and 35% shall be paid Pro Rata out of Distributions that would otherwise be made to holders of Liquidation Trust General Unsecured Creditor Interests, provided, however, that if there are insufficient Distributions that would otherwise be made to holders of Liquidation Trust General Unsecured Interests available to satisfy the funding of Excess Administrative Claims as provided for herein, the Secured Lender Trustee shall to the extent reasonably practicable advance sufficient Receivables Cash Collateral to the Liquidation Trustee to cover any deficiency in the form of a loan on terms substantially similar to those set forth in the Plan Supplement.

(b)    On the Effective Date or as soon as practicable thereafter, the Priority Claims Reserve shall be established out of Receivables Cash Collateral.  After the Effective Date, the Liquidation Trustee shall, to the extent required under this Plan, make Distributions from the Priority Claims Reserve to all holders of Allowed Priority Tax Claims and Allowed Class 1 - Non-Tax Priority Claims.  To the extent there are any excess funds in the Priority Claims Reserve after all Allowed Priority Claims have been paid, such excess shall be returned to the Secured Lender Trustee for the benefit of the holders of the Secured Lender Trust Interests.  To the extent there are Excess Priority Claims, 65% of such Excess Priority Claims shall be paid by the Secured Lender Trustee out of the Secured Lender Trust Assets and 35% shall be paid Pro Rata out of Distributions that would otherwise be made to holders of Liquidation Trust General Unsecured Creditor Interests, *provided, however,* that if there are no such Distributions that would otherwise be made to holders of Liquidation Trust General Unsecured Interests available to satisfy the funding of Excess Priority Claims as provided herein, the Secured Lender Trustee shall to the extent reasonably practicable advance sufficient Receivables Cash Collateral to the Liquidation Trustee to cover any deficiency in the form of a loan on terms substantially similar to those set forth in the Plan Supplement.

(c)    Distributions to holders of Allowed Class 2 – Secured Lender Claims shall be made by the Secured Lender Trustee in accordance with the provisions of Section 5.1(b) above.

(d)    Distributions to holders of Allowed Class 3 – Other Secured Claims shall be made by the Liquidation Trustee in accordance with the provisions of Section 5.1(c) above.

(e)    Distributions to holders of Allowed Class 4 – General Unsecured Claims shall be made in accordance with the provisions of Section 5.1(d) above.

(f)    Distributions to holders of Allowed Class 5 – Insured Malpractice Claims shall be made solely from the proceeds of the Debtor's Malpractice Policies in accordance with the provisions of Section 5.1(e) above.

(g)    Distributions to holders of Allowed Class 6 – Subordinated Claims, if any, shall be made in accordance with the provisions of Section 5.1(f) above.

(h)    No holders of Allowed Class 7 – Interests shall receive no Distribution in accordance with the provisions of Section 5.1(g) above.

**Section 7.11    Preservation of Causes of Action.**

On the Effective Date, all Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor and Estate are preserved for the benefit of holders of the Liquidation Trust Interests and Secured Lender Trust Interests and shall be transferred to and vested in the Liquidation Trust and Secured Lender Trust, respectively, as set forth herein unless expressly released, waived, or relinquished under this Plan,  the Confirmation Order or other order of the Bankruptcy Court.  No Person may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Liquidation Trustee or the Secured Lender Trustee, as applicable, will not pursue a Cause of Action against them.

The Liquidation Trustee shall be appointed representative of the Estate, and shall have comparable authority as a bankruptcy trustee of the Debtor, and exclusively retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action solely to the extent they are Liquidation Trust Assets.

The Secured Lender Trustee shall be appointed representative of the Estate, and shall have comparable authority as a bankruptcy trustee of the Debtor, and exclusively retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action solely to the extent they are Secured Lender Trust Assets.

No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, Claim preclusion, estoppel (judicial, equitable or otherwise), Claim splitting or laches shall apply to such Claims and Causes of Action by virtue of or in connection with the Confirmation, consummation or effectiveness of the Plan; *provided, however*, that no Claims, demands, rights or Causes of Action that the Debtor or its Estate may hold against the members of the Wind-Down Committee or Non-Management Personnel shall be retained or preserved for prosecution by the Liquidation Trustee, Secured Lender Trustee, or any other Person on behalf of the Debtor or its Estate, except for Claims, demands, rights or Causes of Action arising as a result of willful misconduct or gross negligence.

**Section 7.12    Preservation of Records.**

The Debtor, the Liquidation Trustee, and the Secured Lender Trustee shall preserve for the benefit of the Estate all documents and files in their respective possession necessary to the prosecution of the Causes of Action.

**Section 7.13    General Disposition of Assets.**

Pursuant to section 1123(a)(5) of the Bankruptcy Code and subject to the terms of the Liquidation Trust Agreement and this Plan, (i) the Liquidation Trustee shall sell or otherwise dispose of, and liquidate, or otherwise convert to Cash any non-Cash Liquidation Trust Assets as expeditiously, and in such manner, as is in the best interests of the Liquidation Trust and (ii) the Secured Lender Trustee shall sell or otherwise dispose of, and liquidate, or otherwise convert to Cash any non-Cash Secured Lender Trust Assets as expeditiously and in such manner, as is in the best interests of the Secured Lender Trust.

**Section 7.14    Debtor's Pre-Confirmation Period Operations.**

During the period prior to the Effective Date, the Debtor shall, in all respects in accordance with the Budget, continue to wind down its business and financial affairs including, but not limited to, paying normal operating expenses, preparing and filing tax returns and statements, collecting Receivables and filing U.S. Trustee reports, as a debtor in possession with the authority granted under sections 1107 and 1108 of the Bankruptcy Code and subject only to those restrictions imposed upon the Debtor pursuant to the Bankruptcy Code, the Bankruptcy Rules, and orders of the Bankruptcy Court.

**Section 7.15    Administrative Claims Bar Dates.**

The Administrative Bar Date Order sets the Administrative Claims Bar Dates (defined below) as follows:  (i) Administrative Claims arising on the Petition Date through December 31, 2012 shall be filed by January 18, 2013 (the "Initial Administrative Claims Bar Date") and (ii) Administrative Claims arising on January 1, 2013 through the Effective Date shall be filed within thirty (30) days after the date the Notice of Effective Date is filed and served (the "Supplemental Administrative Claims Bar Date" and, together with the Initial Administrative Claims Bar Date, the "Administrative Claims Bar Dates").  The Administrative Bar Date Order provides, *inter alia*, that such notices of Administrative Claims must include at a minimum (i) the name of the holder of the Administrative Claim, (ii) the amount of the Administrative Claim, and (iii) the basis of the Claim.  The Administrative Bar Date Order, however, provides that Administrative Claims (a) arising from post-petition obligations incurred or assumed by the Debtor in the ordinary course of business, (b) arising from fees payable to the U. S. Trustee pursuant to 28 U.S.C. § 1930, (c) that have already been approved by Order of the Bankruptcy Court, (d) that constitute Professional Fee Claims, or (e) of governmental units subject to section 503(b)(1)(D) (collectively, the "Excluded Administrative Claims") shall not be subject to the Administrative Bar Dates, except Administrative Claims in subsection (a) hereof shall be required to file a Supplemental Administrative Claim to the extent not paid in the ordinary course prior to the Supplemental Administrative Claims Bar Date.  Pursuant to the Administrative Bar Date Order, failure of a party to file and serve notices of their Administrative Claim (except the Excluded Administrative Claims) timely and properly shall result in such Administrative Claim being forever barred and discharged.

**Section 7.16    Deadline for Filing Professional Fee Applications.**

Each Professional who holds or asserts a Professional Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive notice (a) a Professional Fee Estimate within 10 days of entry of the Confirmation Order and (b) unless such Professional is not otherwise required to file a Fee Application pursuant to an order of the Bankruptcy Court, a Fee Application within forty-five (45) days after the Effective Date which such Fee Application shall not assert, and such Professional shall not at any time seek compensation for, Professional Fee Claims in excess of the Professional Fee Estimate.    Failure to timely and properly file and serve either a Professional Fee Estimate or a Fee Application shall result in the Professional Fee Claim being forever barred and discharged.

**Section 7.17    Execution of Documents to Effectuate Plan.**

Prior to the Effective Date, the Debtor shall execute any instruments or documents that are necessary to confirm and effectuate the provisions of the Plan. Secured Creditors and all other necessary parties shall execute or deliver, or join in the execution and delivery, of any instrument required to effect a transfer of property under the Plan, and shall perform any other act, including the satisfaction, release or assignment of any lien that is necessary for the consummation of the Plan.    Subject to the provisions of the Plan, all related agreements and the Confirmation Order, from and after the Effective Date, the Liquidation Trustee and/or the Secured Lender Trustee, as applicable, shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan.

**Section 7.18     Authorization of Debtor's Action.**

Entry of the Confirmation Order shall authorize (a) the Debtor to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan and (b) the Liquidation Trustee and Secured Lender Trustee, as applicable, to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan after the Effective Date.    All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action.

**Section 7.19    Dissolution of Debtor.**

On the Effective Date, the Debtor shall be deemed dissolved and shall not be required to take any further steps with respect to such dissolution.    The Liquidation Trustee shall wind up the Debtor's affairs and prepare appropriate partnership dissolution and de-registration filings, and file all appropriate tax returns.

**Section 7.20    Post-Confirmation Reports and Fees.**

Following the Confirmation Date, the Liquidation Trustee and the Secured Lender Trustee shall be responsible for the filing of post-Confirmation reports required during such periods with the U.S. Trustee and payment from the assets of the

Liquidation Trust and Secured Lender Trust of all post-Confirmation fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods.  The Liquidation Trust and Secured Lender Trust shall be jointly and severally liable for such post-Confirmation fees.

**Section 7.21   Cancellation of Interests.**

On the Effective Date, all existing Interests, including Interests of the Debtor's former Partners, shall, without any further action, be cancelled, annulled, and extinguished, and any certificates representing such canceled, annulled, and extinguished Interests shall be null and void.

**Section 7.22   Statutory Committees.**

On the Effective Date, the Statutory Committees, to the extent not already dissolved or otherwise disbanded, shall be dissolved and the members of the Statutory Committees will be released and discharged from all duties and obligations arising from or related to the Bankruptcy Case, except for the purpose of (a) any appeal or request for reconsideration, stay pending appeal, other disputes, or litigation regarding this Plan, the Confirmation Order or the PCP 9019 Order;  and (b) only with respect to the Creditors' Committee, objecting to Fee Applications described in Section 7.16 hereof.

**Section 7.23   Insurance Preservation.**

Nothing in this Plan shall diminish or impair the enforceability of any Insurance Policies or Malpractice Policies that may cover Claims against the Debtor, its Employees, its former Partners or any other Person.

**Section 7.24   Substantial Consummation.**

Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to have occurred on the Effective Date.

**Section 7.25   Termination of the Pension Plans and 401(k) Plan.**

Prior to the Petition Date, each of the Pension Plans was terminated by the PBGC. The Liquidation Trustee will perform such acts as the Liquidation Trustee, in consultation with the Liquidation Trust Oversight Committee, deems to be necessary and appropriate with respect to the 401(k) Plan, including, but not limited to, responding to requests of the 401(k) Plan's administrator and named fiduciary, acting on behalf of the Plan and the Debtor pursuant to the agreement with the 401(k) Plan's named fiduciary (including appointing a replacement for the named fiduciary if the agreement with the 401(k) Plan's named fiduciary terminates), and performing any acts necessary or appropriate with respect to terminating the 401(k) Plan.

**Section 7.26   Wind-Down Employees.**

To the extent deemed necessary by the Liquidation Trustee or the Secured Lender Trustee, in each of their respective reasonable business judgment, the

Liquidation Trustee, in accordance with the Liquidation Trust Agreement, or the Secured Lender Trustee, in accordance with the Secured Lender Trust Agreement, may hire or otherwise retain the services of the Debtor's Non-Management Personnel and members of the Wind-Down Committee.

**Section 7.27    Release of Collateral Agent and Administrative Agent.**

Upon the transfer of all Secured Lender Trust Assets, and the transfer and assignment of the Collateral Agent's liens and security interests therein to the Secured Lender Trustee as contemplated herein, (i) the Administrative Agent shall be released from all further responsibility and obligations under the Credit Agreement and all other Facility Documents as defined therein and (ii) the Collateral Agent shall be released from all further responsibility and obligations under the Intercreditor Agreement and all other Financing Agreements as defined therein.

## ARTICLE VIII.

## DISTRIBUTION PROVISIONS

**Section 8.1    Distributions.**

As set forth in Section 7.8 above, the Liquidation Trustee shall make all Distributions, other than Distributions to Secured Lenders from the Secured Lender Trust (which Distributions shall be made by the Secured Lender Trustee). Whenever any Distribution shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. For federal income tax purposes, a Distribution will be allocated to the principal amount of a Claim first and then to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**Section 8.2    Timing of Distributions.**

Each Distribution shall be made on the relevant Distribution Date and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**Section 8.3    Address for Delivery of Distributions.**

Subject to Bankruptcy Rule 9010, any Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the registers maintained by the Liquidation Trustee and the Secured Lender Trustee as provided in Sections 7.3 and 7.7. If any Distribution is returned to the Liquidation Trustee or the Secured Lender Trustee, as applicable, as undeliverable, no Distributions shall be made to such holder unless the Liquidation Trustee or the Secured Lender Trustee, as applicable, is notified of such holder's then current address within one hundred twenty (120) days after such Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the

undeliverable Distributions shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan.

## Section 8.4     Distributions under Twenty-Five Dollars.

No Plan Distribution of less than twenty-five dollars ($25.00) shall be made by the Liquidation Trustee or the Secured Lender Trustee, as applicable, to the holder of any Claim and such Distributions will be reserved by the Liquidation Trustee or Secured Lender Trustee, as applicable, and distributed to such holder on either (i) a Distribution Date on which such holder would be entitled to Distributions totaling at least twenty-five dollars ($25.00) (including any amounts previously reserved hereunder) or (ii) the final Distribution Date.

## Section 8.5     Time Bar to Cash Payments.

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Liquidation Trustee or the Secured Lender Trustee, as applicable, by the holder of the Allowed Claim to whom such check was originally issued.  Any Claim in respect of such voided check shall be made on or before the first anniversary of 120 days of the date on which such Distribution was made.   If no Claim is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Distribution shall be reallocated and distributed to those holders of Allowed Claims in accordance with the Plan.

## Section 8.6     Unclaimed Distributions at Closing of Bankruptcy Case.

In the event that any unclaimed Distributions exist on the date the Bankruptcy Court enters a Final Order and decree closing the Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code and Rule 3022 of the Federal Rules of Bankruptcy Procedures, the Liquidation Trust Agreement and the Secured Lender Trust Agreement, as applicable, may provide that the Liquidation Trustee and Secured Lender Trustee, as applicable, in consultation with their respective Oversight Committee, shall donate such unclaimed Distributions to any not for profit, non-religious organization, including, but not limited to, the American Bankruptcy Institute.

## Section 8.7     Manner of Payments under the Plan.

Unless the Person or Entity receiving a Distribution agrees otherwise, any Distribution to be made in Cash under the Plan shall be made, at the election of the Liquidation Trustee or the Secured Lender Trustee, as applicable, by check drawn on a domestic bank or by wire transfer from a domestic bank.  Cash payments to foreign Creditors may be made, at the option of the Liquidation Trustee or the Secured Lender Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**Section 8.8     Expenses Incurred on or after the Effective Date and
                  Claims of the Liquidation Trustee and Secured Lender Trustee.**

Except as otherwise ordered by the Bankruptcy Court or as provided herein or in
the Secured Lender Trust Agreement or the Liquidation Trust Agreement, as applicable,
the amount of any reasonable fees and expenses incurred (or to be incurred) by the
Liquidation Trustee or the Secured Lender Trustee on or after the Effective Date
(including, but not limited to, taxes) and professional fees and expenses incurred by the
Liquidation Trustee and Secured Lender Trustee from and after the Effective Date in
connection with the effectuation of the Plan shall be paid shall be paid when due
without further notice to Creditors or Bankruptcy Court approval.    Any dispute
regarding compensation shall be resolved by agreement of the parties or if the parties
are unable to agree, by the Bankruptcy Court.

**Section 8.9     Setoffs and Recoupment.**

Except as otherwise provided in this Plan, the Debtor and the Liquidation
Trustee may, but shall not be required to, setoff against or recoup from any Claim or
Claims of any nature whatsoever that the Debtor may have against the Creditor holding
such Claim(s) and such Creditor shall have the right to object to any such setoff or
recoupment made by the Debtor or Liquidation Trustee, but neither the failure to do so
nor the allowance of any Claim hereunder shall constitute a waiver or release by the
Debtor or the Liquidation Trustee of any such Claim it may have against such Creditor.
Notwithstanding the foregoing, nothing in this provision shall provide the Debtor or
the Liquidation Trustee with any rights with respect to, or authorize the Debtor or the
Liquidation Trustee to take any action in respect of, Secured Lender Trust Assets.

**Section 8.10    No Interest.**

Unless otherwise specifically provided for in the Plan (including with respect to
the Allowed amount of any Claims hereunder), required under applicable bankruptcy
law, or agreed to by the Debtor or Liquidation Trustee, the Confirmation Order, or a
postpetition agreement in writing between the Debtor or the Liquidation Trustee and a
holder of a Claim, postpetition interest shall not accrue or be paid on Claims, and no
holder of a Claim shall be entitled to interest accruing on or after the Petition Date on
any Claim or right.    Additionally, and without limiting the foregoing, interest shall not
accrue or be paid on any Disputed Claim with respect to the period from the Effective
Date to the date a final Distribution is made on account of such Disputed Claim, if and
when such Disputed Claim becomes an Allowed Claim.

**Section 8.11    Expungement or Adjustment to Paid, Satisfied or
                  Superseded Claims and Interests.**

Any Claim that has been paid, satisfied or superseded or any Claim that has been
amended or superseded, may be adjusted or expunged on the claims register by the
Liquidation Trustee without a claim objection having to be filed and without any
further notice to or action, order or approval of the Bankruptcy Court.

# ARTICLE IX.

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**Section 9.1    Objection Deadline.**

On and after the Effective Date, the Liquidation Trustee and any Creditor may continue to attempt to consensually resolve any disputes regarding the amount of any Claim and the Liquidation Trustee shall have the right, but not the obligation, to object to the allowance of any Claim (other than a Secured Lender Claim, a Secured Lender Deficiency Claim or a Claim that has already been Allowed) and may file with the Bankruptcy Court any other appropriate motion or adversary proceeding with respect thereto.  All such objections may be litigated to Final Order.  The Liquidation Trustee shall retain the rights and defenses of the Debtor or its Estate had with respect to any Claim or Interest immediately prior to the Effective Date, subject to the provisions of this Plan.  Notwithstanding the foregoing, nothing in this provision shall provide the Debtor or the Liquidation Trustee with any rights with respect to, or authorize the Debtor or the Liquidation Trustee to take any action in respect of, Secured Lender Trust Assets.

As soon as practicable, but in no event later than the Claims Objection Bar Date (subject to extension by the Bankruptcy Court upon notice and motion of the Liquidation Trustee), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

**Section 9.2    Prosecution of Disputed Claims and Voting on the Plan.**

The Liquidation Trustee may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 9.3 hereof.  No holder of a Disputed Claim shall be entitled to vote on the Plan absent an order of the Bankruptcy Court temporarily allowing such Claim for the purpose of voting on the Plan upon motion made by the holder of such Disputed Claim.

**Section 9.3    Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date and subject to the provisions of this Plan, the Liquidation Trustee and Secured Lender Trustee, as applicable, shall have authority to settle or compromise all Claims and Causes of Action relating to the Liquidation Trust Assets and Secured Lender Trust Assets, respectively, without further review or approval of the Bankruptcy Court in accordance with the Liquidation Trust Agreement and the Secured Lender Trust Agreement.

**Section 9.4    No Distributions Pending Allowance.**

Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any portion of any Claim that is a Disputed Claim, unless and until such

Disputed Claim becomes an Allowed Claim, and in such event any holder of a Disputed Claim may only be entitled to receive a Distribution on its Allowed Claim from the Disputed Claim Reserve.

**Section 9.5    <u>Estimation of Claims</u>.**

The Liquidation Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether such Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in this Plan, a Claim that has been expunged from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated for Distribution purposes at zero dollars ($0), unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan (including for purposes of Distributions).  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**Section 9.6    <u>Limitations on Funding of Disputed Claims Reserve</u>.**

Except as expressly set forth in the Plan or the Liquidation Trust Agreement, the Liquidation Trustee shall have no duty to fund the Disputed Claims Reserve.

**Section 9.7    <u>Tax Requirements for Income Generated by Disputed Claims Reserve</u>.**

The Liquidation Trustee shall pay, or cause to be paid, out of the funds held in the Disputed Claims Reserve, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in, or on account of, such Disputed Claims Reserve.  The Liquidation Trustee shall file, or cause to be filed, any tax or information return related to the Disputed Claims Reserve that is required by any federal, state or local taxing authority.

**ARTICLE X.**

**<u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

**Section 10.1  Assumption and Rejection of Executory Contracts
                      and Unexpired Leases.**

On the Effective Date, all executory contracts and unexpired leases of the Debtor shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code, except:  (a) any executory contracts and unexpired leases that are the subject of separate motions to assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtor before the Effective Date;  (b) contracts and

leases listed in the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" to be filed by the Debtor with the Bankruptcy Court before the entry of the Confirmation Order;  (c) all executory contracts or unexpired leases assumed or assumed and assigned under this Plan or by order of the Bankruptcy Court entered before the Effective Date;  and (d) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to the next Section hereof and for which the Debtor or the Liquidation Trustee makes a motion to reject such contract or lease based upon the existence of such dispute filed at any time.  Any order entered post-Confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of any executory contract or unexpired lease shall cause such rejection to be a pre-petition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief were granted and such order were entered pre-Confirmation.

The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected pursuant to this Section, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan.  Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its Estate.

**Section 10.2   Cure.**

At the election of the Debtor or Liquidation Trustee, monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable;  or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.  In the event of a dispute regarding:  (x) the amount of any cure payments;  (y) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assigned;  or (z) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable. The Debtor hereby gives notice that the cure amounts for each such contract and lease shall be zero dollars ($0) unless otherwise noticed on a schedule filed by the Debtor hereafter.

**Section 10.3   Claims Arising from Rejection, Expiration or Termination.**

Claims created by the rejection of executory contracts or unexpired leases or the expiration or termination of any executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidation Trustee (a) in the case of an executory contract or unexpired lease rejected by the Debtor prior to Confirmation, in accordance with the Bar Date Notice, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to Confirmation, or (ii) is rejected pursuant to Section 10.1 hereof, no later than thirty (30) days after Confirmation.  Any such Claims for which a proof of Claim is not filed and served

within such time will be forever barred from assertion and shall not be enforceable against the Debtor, its Assets or the Liquidation Trustee.

**ARTICLE XI.**

**PARTNER CONTRIBUTION PLAN;  RELEASE AND INJUNCTION**

**Section 11.1  <u>Compromise of Controversies</u>.**

Pursuant to the PCP 9019 Order, and in consideration for the classification, Distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, Claims and controversies resolved pursuant to the PCPs and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

**Section 11.2   <u>The Participating Partner Injunctions</u>.**

**Upon the Effective Date, all Persons and entities are enjoined and barred from commencing or continuing any and all past, present or future Claims or Causes of Action and from asserting any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, whether or not based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), against a Participating Partner based on, relating to, or arising from, the Debtor Released Claims, including any Claim that is duplicative of any Claim of the Debtor, is derivative of any Claim of the Debtor, or could have been brought by or on behalf of the Debtor or its Estate including, subject to the limitations set forth in the PCPs, Claims based on alter ego or veil piercing or similar doctrine or otherwise based on the contention that the Partners of the Debtor or its Predecessor Entities or Related Entities are liable for the debts of the Debtor, and further including:**

**i.      The commencement or continuation in any manner, directly or indirectly, of any suit, action or other proceeding against or affecting a Participating Partner;**

**ii.      The enforcement, levy or attachment, collection or other recovery by any means in any manner, whether directly or indirectly on any judgment, award, decree or other order against a Participating Partner;**

**iii.      The creation, perfection or other enforcement in any manner directly or indirectly, of any encumbrance against a Participating Partner;**

**iv.      The setoff or assertion in any manner of a right to seek reimbursement, indemnification, contribution from or subrogation against or**

44

otherwise recoup in any manner, directly or indirectly, any amount against a Participating Partner; and

       v.      Any act to obtain possession of property or exercise control over the property of a Participating Partner.

**Section 11.3  Bar Order.**

      (a)      Any and all Persons (including any Non-Participating Partners) shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Participating Partner or his or her estate, family members, administrators, successors, and assigns (collectively, the "Releasees") arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, where such Claim is, or arises from, the Debtor Released Claims and the alleged injury to such Person arises from that Person's alleged liability to the Debtor, including any such Claim in which a Person seeks to recover from any of the Releasees (i) any amounts that such Person has or might become liable to pay to the Debtor and/or (ii) any costs, expenses, or attorneys' fees from defending any Claim by the Debtor.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.  The provisions herein are intended to preclude any liability of any of the Releasees to any Person for indemnification, contribution, or otherwise, on any such Claim that is, or arises from, the Debtor Released Claims and where the alleged injury to such Person arises from that Person's alleged liability to the Debtor; *provided, however*, that if the Debtor obtains any judgment against any such Person based upon, arising out of, or relating to the Debtor Released Claims for which such Person and any of the Releasees are found to be jointly liable, such Person shall be entitled to a judgment credit equal to an amount that corresponds to the Releasees' percentage of responsibility for the loss to the Debtor.

      (b)      Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other Person (including any other Releasee and any Non-Participating Partner) arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract and for misrepresentation, where the Claim is or arises from the Debtor Released Claims and the alleged injury to such Releasee arises from that Releasee's alleged liability to the Debtor, including any Claim in which any Releasee seeks to recover from any Person(including another Releasee) (i) any amounts any such Releasee has or might become liable to pay to the Debtor and/or (ii) any costs, expenses, or attorneys' fees from defending any Claim by the Debtor. All such Claims are hereby extinguished, discharged, satisfied and unenforceable.

      (c)      Notwithstanding anything stated herein, if any Person (for purposes of this Subsection (c), a "Petitioner") commences against any of the Releasees any action either (i) asserting a Claim that is, or arises from, the Debtor Released Claims and where the alleged injury to such Person arises from that Person's alleged liability to the Debtor or (ii) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such

45

action or Claim is not barred by a court pursuant to the provisions of this Section, neither this Section nor the PCPs shall bar Claims by that Releasee against (x) such Petitioner, (y) any Person who is or was controlled by, controlling, or under common control with the Petitioner, whose assets or estate are or were controlled, represented, or administered by the Petitioner, or as to whose Claims the Petitioner has succeeded, and (z) any Person that participated with any of the preceding Persons described in items (i) and (ii) of this Subsection (c) in connection with the assertion of the Claim brought against the Releasee(s).

(d)    The Debtor, and following the Effective Date the Liquidation Trustee, shall use reasonable efforts in settling any Claim with any other Person who is not a Participating Partner, to obtain from such Person a release of any and all Claims based upon, arising out of, or relating to the Debtor Released Claims that the Person might have against any of the Releasees.

(e)    If any term of this Section is held to be unenforceable, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to the Debtor Released Claims.

**Section 11.4** <u>Secured Lender Releases of Participating Partners</u>.

Upon the PCP Effective Date, the Releasing Secured Lenders, solely in their capacity as holders of Claims under the Credit Agreement and Note Agreement, shall be deemed to have released each Participating Partner from any and all Claims that the Releasing Secured Lenders hold against such Participating Partners, solely to the extent such Claims relate to the Debtor, Predecessor Entities, or a Related Entity.

**Section 11.5** <u>Covenants and Assignment of Claims</u>.

Pursuant to their respective PCPs, the Participating Partners have covenanted that they will not file any Claim against the Debtor (except for proofs of Claim against the Debtor in the Bankruptcy Case, which will be deemed withdrawn upon the PCP Effective Date). Moreover, to the extent Participating Partners have any direct Claims against Non-Participating Partners, those Claims are irrevocably assigned to the Debtor (with certain exceptions as described further in the PCPs) and, upon the Effective Date, to the Liquidation Trustee.

**Section 11.6** <u>PCP Effective Date</u>.

The PCP Effective Date, for each PCP, will occur when the last of the following events has occurred:

(a)    the Bankruptcy Court shall have entered a Final Order confirming this Plan that incorporates and implements the terms of the PCPs, including the releases and injunctions provided for therein, and provides that no holder of a Claim arising under the Credit Agreement or under the Note Agreement shall be entitled to a Distribution of any amounts paid to the Estate by the Participating Partners unless such holder releases any and all Claims that such holder may hold against such Participating

46

Partners, in such holder's capacity as a holder of a Claim under the Credit Agreement or Note Agreement, relating to the Debtor, the Predecessor Entities or a Related Entity;

        (b)      the Effective Date of this Plan shall have occurred;  and

        (c)      the Debtor, in consultation with its advisors, shall have provided the Creditors' Committee and the Collateral Agent a certificate certifying that the Debtor believes, in good faith, that, as of the day that is five (5) days prior to the Disclosure Statement Hearing, the Participating Partner has complied with his/her obligations with respect to unbilled time and outstanding accounts receivable for the benefit of the Estate.

## Section 11.7    Payment.

The Participating Partners shall, within ten (10) Business Days of the publication of the Notice of Effective Date of this Plan:  (a) pay to the Liquidation Trustee the Partner Contribution Amount in Cash;  or (b) execute and deliver to the Liquidation Trustee a fully completed PCP Note in a principal amount equal to the Partner Contribution Amount.

## Section 11.8   Limitation on Releases and Injunction.

Notwithstanding anything contained herein to the contrary, with the exception of the Claims enjoined by the Bar Order and the Claims released by Releasing Secured Lenders pursuant to Section 11.4 hereof, nothing in this Plan shall be deemed to release, enjoin, bar or impair (i) any Claim or Cause of Action that is not derivative of a Claim or right assertable by or belonging to the Debtor or its Estate; or (ii) any Unfinished Business Claims, *provided, however*, that any Claims between or among any Participating Partners relating to the affairs of the Debtor shall be deemed released, and any Unfinished Business Claims against Participating Partners executing PCPs that include a release of such Unfinished Business Claims shall be deemed released and Persons seeking to assert such Claims shall be permanently barred and enjoined from doing so.

Nothing in this Plan shall be deemed to enjoin, bar, or restrain any of the Non-Releasing Parties from asserting or establishing that such Non-Released Party is only liable for its proportionate share of any harm, or asserting or establishing any other right of set-off, to the extent permitted under any applicable legal principle, including, but not limited to, New York General Obligations Law 15-108, indemnity, or contribution.

## ARTICLE XII.

## CONDITIONS PRECEDENT;  CONFIRMATION AND EFFECTIVE DATE

**Section 12.1    <u>Conditions Precedent to Confirmation of the Plan</u>**.

The following conditions must be satisfied, or otherwise waived in accordance with Section 12.3 herein, on or before the Confirmation Date:

(a)    The Disclosure Statement Order shall have been entered and shall have become a Final Order;

(b)    The Final Cash Collateral Order (as modified or extended with the consent of the Collateral Agent) shall be in full force and effect and there shall be no ongoing event of default;

(c)    The Confirmation Order, which shall be in form and substance satisfactory to the Debtor, the Creditors' Committee, the Collateral Agent, and Secured Lenders holding a majority in amount of the Secured Lender Claims, shall be entered by the Bankruptcy Court;  and

(d)    The Confirmation Date shall occur on or before March 15, 2013.

**Section 12.2    <u>Conditions Precedent to the Effective Date</u>**.

The Effective Date shall not occur and no obligations and rights set forth in the Plan and set to occur as of the Effective Date or thereafter shall come into existence, unless each of the following conditions is met or, alternatively, is waived in accordance with Section 12.3 hereof, on or before the Effective Date:

(a)    The Confirmation Order shall have been entered and no stay of effectiveness of the same shall have been issued within 14 days following the entry of the Confirmation Order;

(b)    The Confirmation Order shall have authorized and approved the appointment of the Secured Lender Trustee and the Liquidation Trustee;

(c)    The PCP 9019 Order shall not be the subject of any stay;

(d)    The Creditors' Committee, the Collateral Agent and Secured Lenders holding a majority in amount of the Secured Lender Claims are reasonably satisfied that the aggregate amount of Excess Administrative Claims, if any, will not exceed the Excess Administrative Claim Cap;

(e)    The Creditors' Committee, the Collateral Agent and Secured Lenders holding a majority in amount of the Secured Lender Claims are reasonably satisfied that the aggregate amount of Excess Priority Claims, if any, will not exceed the Excess Priority Claim Cap;  and

(f)    The Effective Date shall occur on or before April 1, 2013.

**Section 12.3  Waiver of Conditions Precedent**.

Each of the conditions precedent in Sections 12.1 and 12.2 hereof may be waived or modified without further Bankruptcy Court approval, in whole or in part, but only with the written consent of each of the Debtor, the Collateral Agent, Secured Lenders holding a majority in amount of the Secured Lender Claims, and the Creditors' Committee.

**Section 12.4  Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not have occurred on or before April 1, 2013 and such condition to effectiveness has not been waived in accordance with Section 12.3 hereof, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtor;  (b) prejudice in any manner the rights of the Debtor, including, without limitation, the right to seek a further extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtor.

## ARTICLE XIII.

## INJUNCTION;  RELEASE;  EXCULPATION

**Section 13.1  General Injunctions**.

In addition to the Partner Release and Participating Partner Injunctions, as set forth in Article XI herein and the PCP 9019 Order, the following provisions shall apply and shall be fully set forth in the Confirmation Order.

(a)  **Injunctions Against Interference with Consummation or Implementation of Plan.  Upon the Effective Date all holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate, the Wind-Down Committee, the Collateral Agent, the Administrative Agent, the Liquidation Trustee or the Secured Lender Trustee, the Liquidation Trust or the Secured Lender Trust, with the intent or effect of interfering with the consummation and implementation of this Plan and the transfers, payments and Distributions to be made hereunder.**

(b)  **Injunction Against Prosecution of Causes of Action.  Except as otherwise specifically provided for by this Plan, as and from the Effective Date, all Persons shall be enjoined from (i) the commencement or continuation of any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order; (iii) the creation, perfection or enforcement of any encumbrance of any kind;  and/or (iv) the assertion of any right of setoff, counterclaim, exculpation, subrogation or recoupment of any kind;  in each case against the Debtor, its Estate, the Wind-Down Committee, the Secured Lender Parties, the Statutory Committees, the Liquidation Trust, the Secured Lender Trust, the Liquidation Trustee, the Secured Lender Trustee or any of their respective agents,**

49

members, employees and professionals (acting in such capacity) to the extent satisfied, or released, or enjoined elsewhere under this Plan, to the fullest extent authorized or provided by the Bankruptcy Code; *provided, however*, that (a) nothing herein is intended to impair, alter or affect any valid right of or to setoff, counterclaim, exculpation, subrogation or recoupment that a Person may have under the Bankruptcy Code or other applicable law, and (b) this provision shall not limit the rights and powers vested in the Liquidation Trustee or Secured Lender Trustee under any other provisions of this Plan.

**Section 13.2    <u>Releases by the Debtor and its Estate</u>.**

Except for the right to enforce this Plan, the Debtor shall, on its own behalf and on behalf of its Estate, effective upon occurrence of the Effective Date, be deemed to forever release, waive and discharge the Released Parties of and from any and all Claims, demands, Causes of Action and the like, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise; *provided, however,* other than with respect to the Secured Lender Parties, the foregoing releases, waivers and discharges shall not extend to liability that results from willful misconduct or gross negligence (as determined by a Final Order).  Such release, waiver and discharge shall not operate as a release, waiver or discharge of any Released Party in respect of any express contractual obligation of any such party effective from and after the Effective Date.

**Section 13.3    <u>Wind-Down Committee</u>.**

On the Effective Date, the Wind-Down Committee shall be deemed to be dissolved and disbanded. Notwithstanding anything contained herein to the contrary, each member of the Wind-Down Committee shall be deemed a Participating Partner and afforded the benefit of, and subject to, each of the release, injunction, covenant, assignment, cooperation and other related conditions set forth in the form of PCP approved by the PCP 9019 Order;  including, but not limited to, the Partner Release and the Participating Partner Injunctions.

**Section 13.4    <u>All Distributions Received in Full and Final Satisfaction</u>.**

Except as otherwise set forth herein, all payments and all Distributions to be made in accordance with the Plan on account of Claims (including Administrative Claims) shall be received in full and final satisfaction, settlement, release and discharge of such Claims as against the Debtor, its property and the Estate.  On and after the Effective Date, the Debtor is released from all Claims and other liabilities in existence one day prior to the Effective Date, subject to the continuing obligations of the Liquidation Trustee and Secured Lender Trustee under the Plan.

**Section 13.5   No Modification of Res Judicata Effect**.

The provisions of this Article XIII are not intended, and shall not be construed, to modify the res judicata effect of any order entered in the Bankruptcy Case, including, without limitation the Confirmation Order and any order finally determining Professional Fee Claims to any Professional.

**Section 13.6   Exculpation.**

**To the extent permitted by applicable law and approved by the Bankruptcy Court, the Debtor, the Wind-Down Committee and the Statutory Committees, and their respective agents, members, managers, officers, directors, employees (in all cases, excluding Steven H. Davis, Stephen DiCarmine, and Joel Sanders) and Professionals (acting in such capacity), shall not have any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement, Plan Supplement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken with respect to, or any contract, instrument, release or other agreement or document created or entered into in connection with, the Debtor during the Bankruptcy Case, *provided, however,* the foregoing releases and exculpations shall not extend to acts of willful misconduct or gross negligence.  Nothing in this Section 13.6 shall be construed to alter, impair, or affect any release, waiver, or injunction provided elsewhere in this Plan or with respect to the terms approved relating to, *inter alia*, waivers and releases afforded under the PCPs.**

**Section 13.7   Governmental Carve-Out**.

Nothing in this Plan or the Confirmation Order shall (i) effect a release of any Claim of, (ii) enjoin from bringing any Claim, suit, action or other proceedings by, or (iii) exculpate any party from any liability to, the United States Government or any of its agencies or any state or local government within the United States, arising under (v) the federal securities laws, (w) the Employment Retirement Income Security Act of 1974, as amended, (x) the Internal Revenue Code, (y) the environmental laws or (z) any criminal laws of the United States.

## ARTICLE XIV.

## PLAN INTERPRETATION, CONFIRMATION AND VOTING

**Section 14.1   Procedures Regarding Objections to Designation of
Classes as Impaired or Unimpaired**.

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**Section 14.2**  **Withdrawal and Modification of Plan**.

This Plan may be withdrawn by the Debtor, after consultation with the Creditors' Committee, the Collateral Agent, the Administrative Agent, and Secured Lenders holding a majority in amount of the Secured Lender Claims, at any time prior to the Confirmation Date.  The Debtor, with the consent of the Creditors' Committee, the Collateral Agent, the Administrative Agent, and Secured Lenders holding a majority in amount of the Secured Lender Claims, the Liquidation Trustee or the Secured Lender Trustee, as the case may be, may modify the Plan in any manner consistent with section 1127 of the Bankruptcy Code prior to substantial consummation thereof.  Upon request by the Liquidation Trustee or the Secured Lender Trustee, as applicable, this Plan may be modified after substantial consummation with the approval of the Bankruptcy Court to the extent permitted by the Bankruptcy Code, provided that such modification does not affect the essential economic treatment of any Person that objects in writing to such modification.

**Section 14.3**  **Voting of Claims**.

Each holder of an Allowed Claim as of the Voting Record Date in Class 2 – Secured Lender Claims, Class 3 – Other Secured Claims, Class 4 – General Unsecured Claims, and Class 5 – Insured Malpractice Claims shall be entitled to vote to accept or reject the Plan.

**Section 14.4**  **Acceptance by Impaired Class**.

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Creditors shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**Section 14.5**  **Presumed Acceptances of Plan**.

Class 1 – Non-Tax Priority Claims are unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan.

**Section 14.6**  **Presumed Rejections of Plan**.

Class 6 – Subordinated Claims and Class 7 – Interests are conclusively presumed to have rejected the Plan.

# ARTICLE XV.

## SETTLEMENT OF SECURED LENDERS' COLLATERAL COVERAGE

**Section 15.1**  **Settlement of Secured Lenders' Collateral Coverage**.

In consideration for the Distributions and other benefits provided under this Plan, the provisions of this Plan constitute a good faith compromise and settlement of

all Claims and controversies resolved under this Plan and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under Bankruptcy Rule 9019.

(a)      **Issues Subject to Compromise.**

The Plan proposes, and its terms embody, a compromise and settlement of intercreditor issues relating to the Secured Lender Claims and collateral coverage.

(b)      **Effect of Settlement.**

The Plan provides for an allocation of the Assets between holders of Allowed General Unsecured Claims and Allowed Secured Lender Claims for Distribution purposes.  The amount of Distributions that are subject to the allocation in the Plan reflects the joint determination by the Creditors' Committee and Secured Lenders holding a majority in amount of Secured Lender Claims that there are risks to both sides if the legal and factual issues between them are fully litigated.  To avoid those risks, a compromise on those issues is appropriate and in the best interest of all economic stakeholders.

(c)      **Approval of Settlement.**

The Plan is deemed to include a motion under sections 105 and 1123 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules for approval of the compromise and settlement of the issues described above.  The Confirmation of the Plan shall constitute approval of this motion by the Bankruptcy Court, and the Confirmation Order shall contain findings supporting and conclusions approving the compromise and settlement as fair and equitable and within the bounds of reasonableness.

## ARTICLE XVI.

## RETENTION OF JURISDICTION BY BANKRUPTCY COURT

From the Effective Date until entry of a final decree closing the Debtor's Bankruptcy Case (pursuant to 11 U.S.C. §350 and Bankruptcy Rule 3022), the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Bankruptcy Case, the Debtor, and the Participating Partners, as applicable, for the following purposes:

(a)      to hear and determine any and all objections to the allowance of any Claim or Administrative Claim, or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently affect the obligations of the Debtor, the Liquidation Trustee or the Secured Lender Trustee to any Creditors, holders of Claims, or other parties in interest;

(b)      to hear and determine any and all applications for compensation and reimbursement of expenses by Professionals or other Persons;

(c)     to hear and determine any and all pending motions for the assumption, rejection and disaffirmance of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d)     to adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Bankruptcy Court including, but not limited to Causes of Action or Claims captured within this Plan;

(e)     to enforce and interpret the provisions of this Plan, the Confirmation Order and the Liquidation Trust Agreement and Secured Lender Trust Agreement;

(f)     to issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(g)     to modify the Plan pursuant to section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules;

(h)     to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, the Liquidation Trust Agreement, Secured Lender Trust Agreement or in the Confirmation Order as may be necessary to carry out the purpose and the intent of this Plan;

(i)     to resolve any tax matters necessary to the implementation of or otherwise contemplated, under the Plan, including the tax closing agreement requested by the Debtor from the Internal Revenue Service in connection with the Bankruptcy Case;

(j)     to interpret and determine such other matters as the Confirmation Order may provide for, or as may be authorized under the Bankruptcy Code;

(k)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated.

## ARTICLE XVII.

## MISCELLANEOUS PROVISIONS

### Section 17.1  Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.

### Section 17.2  Third Party Agreements;  Subordination.

The Distributions to the various Classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with

respect to such Distributions by reason of any claimed subordinated rights or otherwise. All of such rights and any agreements relating thereto shall remain in full force and effect. Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan. The right of the Debtor to seek subordination of any Claim (other than the Secured Lender Claims and the Secured Lender Deficiency Claims) pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim that becomes a Subordinated Claim at any time shall be modified to reflect such subordination.

**Section 17.3   No Discharge.**

The Debtor will not receive a discharge under the Plan in accordance with section 1141 of the Bankruptcy Code.

**Section 17.4   Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of provisions of the Plan.

**Section 17.5   Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the state of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan, and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

**Section 17.6   Expedited Determination.**

The Liquidation Trustee is hereby authorized to file a request with the Bankruptcy Court for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtor.

**Section 17.7   Exemption from Transfer Taxes.**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**Section 17.8   Exemption from Securities Laws.**

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under this Plan of the Secured Lender Trust Interests and the Liquidation Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations

promulgated thereunder, and all applicable state and local securities laws and regulations.

**Section 17.9   <u>Notice of Entry of Confirmation</u>.**

Promptly upon entry of the Confirmation Order, the Debtor shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing Administrative Claims, and the deadline for filing rejection damage Claims.

**Section 17.10 <u>Interest and Attorneys' Fees</u>.**

Post-petition interest will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law. No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as ordered by the Bankruptcy Court.

**Section 17.11  <u>Rates</u>.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental or regulatory commission after the occurrence of the Effective Date.

**Section 17.12  <u>Notices</u>.**

All notices, requests, and demands to or upon the Debtor or the Statutory Committees to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> To the Debtor:
>
> DEWEY & LEBOEUF LLP
> 1271 Avenue of the Americas
> Suite 4300
> New York, New York 10020

with copies to:

TOGUT, SEGAL & SEGAL LLP
Attorneys for the Debtor
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:    (212) 594-5000
Facsimile:    (212) 967-4258
Attn:   Albert Togut, Esq.
          Scott E. Ratner, Esq.


To the Creditors' Committee:

BROWN RUDNICK, LLP
Attorneys for the Official Committee of Unsecured Creditors
Seven Times Square
New York, New York 10036
Telephone:    (212) 209-4900
Facsimile:    (212) 209-4901
Attn:   Edward Weisfelner, Esq.
          Howard S. Steel, Esq.


To the Former Partners' Committee

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:    (212) 506-1700
Facsimile:    (212) 506-1800
Attn:   David M. Friedman, Esq.
          Jeffrey R. Gleit, Esq.


To the Administrative Agent and Collateral Agent:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 715-9100
Facsimile:    (212) 715-8000
Attn:   Kenneth Eckstein, Esq.
          Robert Schmidt, Esq.
          Daniel Eggermann, Esq.

**Section 17.13  <u>Successors and Assigns</u>**.

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on and will inure to the benefit of any heir, executor, administrator, successor or assign of such entity, regardless of whether such entity voted to accept the Plan.

**Section 17.14  <u>Further Action</u>**.

Nothing contained in the Plan will prevent the Debtor, the Wind-Down Committee, the Collateral Agent, the Administrative Agent, the Liquidation Trustee, the Secured Lender Trustee, the Liquidation Trust or the Secured Lender Trust from taking such actions as may be necessary to consummate the Plan even though such actions may not be specifically provided for within the Plan.

**Section 17.15  <u>Exhibits</u>**.

All Exhibits to the Plan are incorporated by reference and are intended to be an integral part of this document as though fully set forth in the Plan.

**[concluded next page]**

**Section 17.16  Severability.**

Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Debtor may modify the Plan in accordance with Section 14.2 so that such provision shall not be applicable to the holder of any such Claim or Interest or transaction. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan;  or (b) require the re-solicitation of any acceptance or rejection of the Plan.

DATED:    New York, New York
               January 7, 2013


                                        DEWEY & LEBOEUF LLP
                                        Debtor and Debtor in Possession

                                        By:

                                        /s/ Jonathan A. Mitchell
                                        Jonathan A. Mitchell
                                        Chief Restructuring Officer


Approved as to Form:

TOGUT, SEGAL & SEGAL LLP
Attorneys for the Debtor and
Debtor in Possession
By:

/s/ Albert Togut
Albert Togut
Scott E. Ratner
Members of the Firm
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000