TOGUT, SEGAL & SEGAL LLP  
One Penn Plaza  
Suite 3335  
New York, New York 10119  
(212) 594-5000  
Albert Togut  
Frank A. Oswald  
Lara R. Sheikh

Hearing Date:   Jan. 24, 2013 at 10:00 a.m.

Objection Deadline:   Jan. 17, 2013 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-----------------------------------------------------------------X  
                                                               :  
In re:                                   :          Chapter 11  
                                             :  
DEWEY & LEBOEUF LLP,          :          Case No. 12-12321 (MG)  
                                             :  
                     Debtor.          :  
                                             :  
-----------------------------------------------------------------X

## DEBTOR'S AMENDED APPLICATION FOR ORDER APPROVING, AND AUTHORIZING IMPLEMENTATION OF PROCEDURES FOR DISPOSITION OF FILES

TO THE HONORABLE MARTIN GLENN  
UNITED STATES BANKRUPTCY JUDGE:

        Dewey & LeBoeuf LLP, the Chapter 11 debtor and debtor in possession herein ("DL" or the "Debtor"), amends its Application (the "Amended Application") for an Order Approving and Authorizing Implementation of Procedures for the Disposition of Client Files (the "Original Application") [Dkt. No. 121]. By this Amended Application and the annexed supporting Declaration of Jonathan A. Mitchell (the "Mitchell Declaration"), the Debtor requests the entry of an Order authorizing the destruction of the To Be Destroyed Files (defined below) pursuant to certain procedures set forth below.

        In support of this Amended Application, the Debtor, by and through its undersigned counsel, respectfully states:

**PRELIMINARY STATEMENT**

The Debtor seeks approval of supplemental procedures that will ensure, in each case at the estate's expense, the secure: (a) destruction of unclaimed files that are not necessary to the continued liquidation of the estate; and (b) continued storage of files that are necessary to liquidate the estate.

To recap, after considering the applicable rules of professional responsibility, the Debtor filed the Original Application requesting approval of procedures for the disposition of the Debtor's former client files stored at its former offices and off-site storage facilities (the "Storage Facilities"). The proposed procedures included: (a) sending copies of a Notice of Intent to Dispose of Client Files (the "Client Files Notice") to all former partners; (b) making reasonable efforts to send the Client Files Notice to former clients; (c) publishing the Client Files Notice in the global edition of the Wall Street Journal; (d) providing a file retrieval form (the "Retrieval Form") through the Debtor's claims agent on the internet or by mail, if requested; (e) deeming all files abandoned for which no form was received within a 45-day period, subject to certain exceptions; and (f) granting the Debtor authorization to dispose of abandoned files as it deems fit.

The Court considered the Original Application at a hearing on July 9, 2012 (the "July 9th Hearing") and granted the Original Application, in part, by approving certain Client File Disposition Procedures reflected in an Order dated July 13, 2012 [Dkt. No. 237] (the "July 13th Order"). The Client File Disposition Procedures provided former partners and clients of DL with notice and an opportunity to retrieve their client files by submitting a Retrieval Form on or before September 11, 2012. The Retrieval Form provided former clients and partners (authorized by clients) with an option to retrieve either physical or electronic files or both and included an acknowledgment that

2

by electing not to take custody of files, they would be deemed to have abandoned such files.  A copy of the Client Files Notice that was sent and published is annexed hereto as Exhibit "1."

The July 13th Order adjourned consideration of the Debtor's request for authorization to dispose of files for which no Retrieval Form was timely submitted (the "Unclaimed Files").  In connection with the adjournment, the Court requested the submission of an opinion by a recognized authority on professional ethics on the Debtor's request to abandon Unclaimed Files without providing for their destruction.

The Debtor located a respected ethics expert who said the law on this subject is unclear.  Consequently, the Debtor recognized that it is preferable to provide certainty by destruction of files, if feasible.  Based on negotiations with its pre-petition secured lenders (the "Secured Lenders") and the Official Committee of Unsecured Creditors (the "Creditors Committee"), a wind-down budget has been agreed upon that provides for payment of reasonable costs to destroy Unclaimed Files.  Accordingly, the Debtor submits that the procedures set forth below providing for authority to destroy Unclaimed Files are fair, equitable and, under the circumstances, necessary and in the best interests of the Debtor's estate, and requests that this Amended Application be approved.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. §§ 1334(a) and (b).

2. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1409(a).

3. This proceeding is a core proceeding as described and defined under and pursuant to the provisions of 28 U.S.C. §§ 157(b) (2) (A) and (M).

3

**BACKGROUND**

4. On May 28, 2012 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor continues to manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On May 31, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Creditors Committee and the Official Committee of Former Partners.

6. As noted, by the July 13th Order, the Court granted the Original Application in part, and adjourned the Debtor's request to dispose of Unclaimed Files as it deems fit.

7. On November 21, 2012, the Debtor filed a chapter 11 plan of liquidation (as it may be amended, the "Plan") and proposed disclosure statement [Dkt. Nos. 653, 655].

**RELIEF REQUESTED**

8. The Debtor seeks approval of the annexed proposed Order authorizing the Debtor or the Liquidation Trustee, in consultation with the Secured Lender Trustee (as both are defined in the Plan), as applicable, to implement File Destruction Procedures (defined below) whereby the Debtor or, after the effective date of the Plan, the Liquidation Trustee, in consultation with the Secured Lender Trustee, is authorized to: (a) abandon for destruction Off-Site Files (defined below), including the Unclaimed Files (both physical and electronic records), that are not necessary to the administration of the Debtor's estate (the "To Be Destroyed Files"); (b) provide a list of the To Be Destroyed Files to the Storage Facilities for destruction; and, (c) upon presentation of a Destruction Certificate (defined below), compensate the Storage

4

Facilities at the rate of $4 per box to retrieve and destroy the To Be Destroyed Files without further Order of the Court.

## BASIS FOR RELIEF

9. As described in the Mitchell Declaration, in anticipation of DL's wind-down, all of DL's active client matters were transitioned to other law firms, as the responsible attorneys transferred client files with them to their new firms, or clients requested transfers of files to other firms.  Mitchell Declaration ¶ 3.

10. DL took substantial steps to facilitate the appropriate transfer of client files before the Petition Date.  For example, in March, April and May 2012, DL sent emails to, and had numerous discussions with, departing DL partners advising them of their responsibilities with respect to client files.  Mitchell Declaration ¶ 4.  To assist in that process, DL provided form documentation for clients to authorize the transfer of their files to other law firms.  Mitchell Declaration ¶ 4.

11. Notwithstanding these efforts, at the time of the Original Application, approximately 430,000 boxes of files (the "Off-Site Files") remained in storage in at least twenty-four separate Storage Facilities located near 14 cities where DL had operations across the United States in New York, Washington, D.C., California, Texas, Massachusetts, Connecticut, Pennsylvania, Florida, Colorado, Utah and Illinois. Mitchell Declaration ¶ 5.

12. The Off-Site Files arguably constitute property of the Debtor's estate pursuant to section 541 of the Bankruptcy Code, as the Debtor maintains an interest in certain of the information contained therein.  However, most of the remaining Off-Site Files are not only unnecessary for the Debtor's Chapter 11 process, but their maintenance imposes a significant ongoing burden to the estate's effective administration.

13. Section 554 of the Bankruptcy Code provides debtors with a vehicle by which property deemed "burdensome" or of "inconsequential value and benefit" to the estate may be abandoned. Under different circumstances, this often utilized provision would be ideal for disposing of the Off-Site Files, most of which have no value or benefit to the Debtor.

14. However, in consideration of the potential ethical and fiduciary responsibilities applicable to law firms such as DL if wound down outside of the bankruptcy context, the Debtor sought approval of and implemented the Client File Disposition Procedures instead of moving solely under section 554.

15. The Debtor has complied with the Client File Disposition Procedures and the July 13th Order. Specifically, through its claims agent, the Debtor effectuated a mailing of the Client Files Notice on or about July 25, 2012 to over 4,800 former clients, primarily in the United States, and all of its former partners (approximately 700) dating back to DL's merger in 2007. The Client Files Notice was also published in the global edition of the Wall Street Journal on July 25, 2012.

16. Pursuant to the July 13th Order, the remaining Off-Site Files are Unclaimed Files that have been deemed abandoned by former clients either because: (a) a Retrieval Form was not received; or (b) a Retrieval Form was received but the files have not been timely retrieved by the requesting party.[1]

---

[1] Specifically, the Order provides that client files shall be deemed abandoned pursuant to the following provisions: "Forty-five (45) days after the last date of publication or mailing of the Notice of Intent to Dispose of Client Files, whichever is later, those Client Files for which no File Retrieval Form has been received shall be deemed abandoned by the former client. . . . To the extent a File Retrieval Form is timely received and to the extent the claimed file is a Client File that may be located by the Debtor, all information concerning the location of the file will be made available and, subject to payment of all costs attendant to retrieval by the former client or its qualified agent, such former client or attorney will be provided an opportunity to obtain the file and the same will not be disposed of or abandoned by the Debtor, as may be authorized by the Court in the future, if adequate arrangements are made with the Debtor and the possessor of the file (in the event the file(s) are in the possession of a third party storage facility) within thirty (30) days following timely receipt of the File Retrieval Form. The Debtor will retain the right to extend the thirty (30) day period in its discretion." See July 13th Order [Dkt. No. 237].

6

17. As of the date of this Amended Application, the Debtor has received approximately 2,500 requests for files relating to approximately 37,000 client matters within 82,000 boxes of Off-Site Files and 1,500 requests for electronic records. Mitchell Declaration ¶ 5. Notwithstanding the September 11, 2012 deadline for submission of Retrieval Forms, the Debtor continued to accept requests through the end of December 2012. The Debtor estimates that approximately 345,000 boxes of Off-Site Files remain at the Storage Facilities. Mitchell Declaration ¶ 6.

18. As expected, many of the Off-Site Files relate to inactive or closed matters. DL's internal record keeping systems and records from the Storage Facilities indicate that 96% of the Off-Site Files had not been accessed in the year preceding the Petition Date; 87% of the Off-Site Files had not been accessed in the past 2 years preceding the Petition Date; and 81% of the Off-Site Files had not been accessed in the past 3 years preceding the Petition Date. Mitchell Declaration ¶ 7. The Debtor's records indicate that Off-Site Files include client files relating to matters dating back to the 1930's. Mitchell Declaration ¶ 7.

19. Pursuant to Section 7.6 of the Plan, the Liquidation Trustee, in consultation with the Secured Lender Trustee, will be responsible for the further disposition or destruction of Unclaimed Files and any other remaining Off-Site Files.

20. While the Debtor submits that under its present circumstances, an ethics expert opinion would support the request in the Original Application to abandon Unclaimed Files, the Debtor has negotiated a file destruction cost of $4 per box with its largest Storage Facilities. Mitchell Declaration ¶ 8. Based on these costs, the Debtor was able to negotiate with its Secured Lenders and the Creditors Committee for the destruction of the To Be Destroyed Files. Mitchell Declaration ¶ 8. To avoid further litigation, the Secured Lenders and the Creditors Committee have consented to the

Debtor's or, after the Plan goes effective, the Liquidation Trustee's payment of the costs to destroy the To Be Destroyed Files pursuant to the following procedures (the "File Destruction Procedures") and in consultation with the Secured Lender Trustee:

- The Debtor or the Liquidation Trustee, as applicable, in consultation with the Secured Lender Trustee, shall provide the Storage Companies with a listing (and, as necessary, supplemental listings) of the To Be Destroyed Files and, the Storage Facilities shall retrieve and destroy such files within thirty (30) days of the receipt of such listing via a method that renders them incapable of being read. The Storage Facilities shall provide written confirmation to the Debtor or the Liquidation Trustee, as applicable, stating the number of boxes that have been destroyed and the method of destruction, and certifying that the files have in fact been destroyed (the "Destruction Certification").

- Upon the Debtor or the Liquidation Trustee's receipt of the Destruction Certification, the Storage Facilities shall be entitled to compensation at the rate of $4 per box to retrieve and destroy the files, and the Debtor or the Liquidation Trustee is authorized and directed to pay such amounts to the Storage Facilities within ten (10) days following receipt of the Destruction Certification and without the need of further Court order.

- To the extent that the To Be Destroyed Files are maintained electronically, the Debtor or the Liquidation Trustee is authorized to arrange for the destruction of such electronic records via a method that renders them incapable of being read.

21.  The File Destruction Procedures strike an appropriate balance between DL's obligations to the estate and the potentially applicable ethical and professional obligations and are consistent with similar procedures approved by the Bankruptcy Court in other law firm bankruptcy cases. *See In re Dreier LLP,* Chapter 11 Case No. 08-15051 (SMB) [Dkt. No. 870], *First Amended Order Approving and Authorizing Procedures for Disposition of Client Files* (providing for abandonment of files and reimbursement to storage facilities for secure destruction of abandoned files); *In re Thelen LLP*, No. 09-15631 (ALG) (Bankr. S.D.N.Y., Dec. 23, 2009) (authorizing destruction of abandoned files); *In re Coudert Brothers LLP*, No. 06-12226 (RDD) (Bankr.

8

S.D.N.Y., Jan. 22, 2007) (same); *In re Brobeck, Phleger & Harrison LLP*, No. 03-32715-DM7 (Bankr. N.D. Ca. May 7, 2004) (same).

22. The cost to destroy the To Be Destroyed Files will be substantial and the Debtor has no means to pay this expense other than with the use of the Secured Lenders' cash collateral and consent, which will be provided under the terms of the File Destruction Procedures. Mitchell Declaration ¶ 8.

23. Further, as noted, the Debtor estimates that approximately 96% of the Unclaimed Files are aged, are of inconsequential value to the estate (or to former clients) and continuing to maintain them places a significant burden on the estate. The Debtor's aggregate file storage costs are currently approximately $100,000 per month. To the extent that there is a benefit for the Debtor's estate to retain Off-Site Files, (for instance: (a) to defend objections to claims, including those based on legal malpractice allegations; or (b) in connection with the collection of accounts receivable or the prosecution of causes of action, including those under Chapter 5 of the Bankruptcy Code (without limitation, the "Necessary Files"), the Debtor has discretion under the July 13th Order to retain such Necessary Files. However, the vast majority of the Off-Site Files are not necessary to the administration of the Debtor's estate and their storage and maintenance is a burden.

## NOTICE

24. Notice of this Motion has been provided either by facsimile, electronic transmission, overnight delivery, or hand delivery to: (i) the United States Trustee for the Southern District of New York; (ii) Brown Rudnick LLP, 7 Times Square, New York, New York 10036, Attn: Edward S. Weisfelner, as counsel to the Creditors' Committee; (iii) Kasowitz Benson Torres & Friedman LLP, 1633 Broadway, New York, New York 10019, Attn: David M. Friedman, as counsel to the Former Partners'

9

Committee;  (iv) Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of Americas, New York, New York 10036, Attn: Kenneth Eckstein and Robert Schmidt (as counsel to the Administrative Agent and Collateral Agent), and Bingham McCutchen LLP, 399 Park Avenue, New York, NY 10022, Attn: Michael J. Reilly and Ronald J. Silverman (as counsel to the noteholders);  (v) the Office of the United States Attorney for the Southern District of New York;  (vi) any parties required to be served under any applicable Bankruptcy Rule or Local Rule;  (vii) the Bar Associations for each jurisdiction in the United States in which the Debtor maintained an office;  and (viii) the Debtor's Storage Facilities.  The Debtor submits that, under the circumstances, no other or further notice is necessary.

25. The Debtor respectfully requests that such notice be deemed fair and adequate notice of the instant application.

**WHEREFORE,** the Debtor respectfully requests entry of the Order annexed hereto, and for such further and different relief as is just and proper.

Dated:  New York, New York
January 7, 2013

>	DEWEY & LEBOEUF LLP,
>	By its Attorneys
>	TOGUT, SEGAL & SEGAL LLP
>	By:
>
>	/s/ Albert Togut
>	ALBERT TOGUT
>	FRANK A. OSWALD
>	LARA R. SHEIKH
>	One Penn Plaza, Suite 3335
>	New York, New York 10119
>	(212) 594-5000

10