**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>DEWEY & LEBOEUF LLP,<br><br>Debtor. | NOT FOR PUBLICATION<br><br>Case No. 12-12321 (MG)<br><br>Chapter 11 |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE DEBTOR'S OBJECTION TO CLAIMS AS TO CLAIM NOS. 833 & 1134 FILED BY STEVEN J. STANWYCK**

*A P P E A R A N C E S:*

TOGUT, SEGAL & SEGAL LLP
*Counsel for the Liquidation Trust*
One Penn Plaza, Suite 3335
New York, New York 10119
By:     David A. Paul, Esq.

STEVEN J. STANWYCK
*Pro Se*
225 Montana Ave, No. 103
Santa Monica, CA 90403

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the Liquidating Trustee's *Twenty-Third Omnibus Objection to Claims* (the "Objection," ECF Doc. # 1558) solely as it relates to Claim Numbers 833 and 1134, filed by Steven J. Stanwyck. In support of the Objection, the Trustee offers the Declaration of Alan M. Jacobs.[1] (ECF Doc. # 1558-4.) The Objection asserts that Claim Number 833 is amended and superseded by Claim Number 1134 (the "Stanwyck Claim"), which

---

[1]    Alan M. Jacobs serves as the Liquidating Trustee for and on behalf of the Dewey & LeBoeuf Liquidation Trust.

should be expunged because the Debtor's estate bears no liability for the conduct asserted in the Claim.  Stanwyck filed a response to the Objection (the "Response," ECF Doc. # 1864-1 Ex. 1), and the Trustee filed a reply (the "Reply," ECF Doc. # 1863).  In support of the Reply, the Trustee submitted the Declaration of David A. Paul, Esq. (the "Paul Decl.," ECF Doc. # 1864).  Stanwyck also submitted a supplemental response to the Objection.  (ECF Doc. # 1885.)  The Court heard argument on the Objection on December 3, 2013.  Following the hearing, the Trustee filed a letter (the "Paul Letter") responding to certain questions raised by the Court.  (ECF Doc. # 1904.)

The Court agrees with the Trustee that the Stanwyck Claim should be disallowed and expunged because portions of the Claim (1) are time barred, (2) are precluded by *res judicata*, (3) assert liability for conduct by non-Debtors, (4) lack any support other than conclusory assertions, and (5) have been rendered moot.  The Objection is therefore **SUSTAINED**.

## BACKGROUND

Stanwyck was an associate in Dewey Ballantine's Los Angeles office from 1971 through 1973.[2]  (Response ¶ 4.)  After leaving the firm, Stanwyck became a client of Dewey Ballantine's for six months in 2001 (Reply ¶ 11).  Dewey Ballantine's representation of Stanwyck related to bankruptcy and family law issues (*see* Paul Decl. Ex. 2), although Stanwyck claims that the representation involved an intellectual property rights dispute with AT&T regarding a 1986 software license and development agreement.  (*See* Response ¶ 4*.*)  Dewey Ballantine terminated its representation of Stanwyck in November 2001.  (*See* Paul Decl. Ex. 3.)  The lead counsel handling Stanwyck's representation—Paul R. Walker—later left Dewey Ballantine for Sidley Austin in 2005.  (Reply ¶ 5.)  Following a merger between Dewey Ballantine and LeBoeuf,

---

[2]    After being declared a vexatious litigant in multiple courts, Stanwyck was disbarred in California in 2009.  (*See* Paul Decl. Exs. 7–9.)

Lamb, Greene & McRae, Dewey & LeBoeuf became the successor to Dewey Ballantine. The Liquidation Trust is the successor to Debtor Dewey & LeBoeuf.

To support his purported intellectual property claim against AT&T, Stanwyck gave Dewey Ballantine a 1995 appraisal of the intellectual property rights at issue. (Response ¶ 4.) According to Stanwyck, Dewey Ballantine was long aware of the value of Stanwyck's claim against AT&T, yet the firm acted against Stanwyck's interests in favor of other clients. (*Id.*) Stanwyck asserts that (1) Dewey Ballantine preferred AT&T as a client over Stanwyck and acted in a conspiracy with AT&T; (2) Dewey Ballantine did not adequately disclose a conflict since the firm also represented AT&T in other matters; (3) after joining Sidley Austin, Walker, who was "never licensed to practice in New York," divulged Stanwyck's confidential information to Sidley Austin and to AT&T; (4) Dewey & LeBoeuf failed to return Stanwyck's client files after he requested them; and (5) Dewey & LeBoeuf perpetrated fraud by disavowing knowledge of Walker's actions after he left the firm. (*Id.* ¶¶ 4–7).

The Debtor commenced a voluntary chapter 11 case on May 28, 2012. On July 30, 2012, the Court entered an order (the "Bar Date Order," ECF Doc. # 303) setting the bar date as September 7, 2012 at 5:00 p.m. for general creditors. On August 15, 2012, the Debtor published notice of the Bar Date Order in the *Wall Street Journal*. Stanwyck filed his Claim on September 7, 2012.

On January 7, 2013, the Debtor filed the Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP. (ECF Doc. # 807.) On February 27, 2013, the Court entered an order confirming the Second Amended Plan. (ECF Doc. # 1144.) On March, 22, 2013, the Plan became effective, at which point the Dewey & LeBoeuf Liquidation Trust was established.

3

The Trustee asserts multiple grounds for expunging the Stanwyck Claim, including that the claim (1) is time-barred, (2) is barred by *res judicata*, and (3) lacks sufficient support to sustain a plausible theory of liability. The Trustee also asserts that Stanwyck's claim regarding his client files is moot since his files have since been returned.

## DISCUSSION

### A.     Claims Objections

Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If the claim is properly filed, it is *prima facie* evidence that the claim is valid. *See* FED. R. BANKR. P. 3001(f). A party in interest may object to a proof of claim, and once an objection is made, the court must determine whether the objection is well founded. *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2013).

"Although Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof rests on different parties at different times. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). The party objecting to the proof of claim bears the burden of "providing evidence to show that the proof of claim should not be allowed." *In re MF Global Holdings Ltd.*, Nos. 11-15059, 11-02790, 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012). If the objecting party satisfies its initial burden and "the presumption of *prima facie* validity is overcome—e.g., the objecting party establishes that the proof of claim lacks a sound legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy." *Id.* (citing *In re Oneida Ltd.*, 500 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The burden then shifts

4

to the claimant if the objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.").

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### B. Claim Number 833 Was Amended and Superseded by the Stanwyck Claim.

Through the Objection, the Debtor seeks expungement of claim number 833 because it was amended and superseded by the Stanwyck Claim. According to the Trustee, claim number 833 states a claim by the same creditor for the same purported liability identified in the later-filed Stanwyck Claim. Stanwyck did not oppose this reason for the Trustee's objection to claim number 833. The Court therefore concludes that claim number 833 was amended and superseded by the Stanwyck Claim, and claim number 833 should therefore be disallowed and expunged.

### C. Stanwyck May Not Assert a Claim Based on Walker's Conduct after Walker Left Dewey Ballantine.

Although Stanwyck alleges that Walker may have divulged certain confidential information to Sidley Austin and AT&T after Walker left Dewey Ballantine, those allegations do not implicate any Debtor liability. Dewey Ballantine had terminated its representation of Stanwyck years before Walker left for Sidley Austin, and any wrongful disclosures Walker may have made after joining a new firm cannot be imputed to the Debtor. Further, Stanwyck's claim that the Debtor fraudulently denied knowledge of Walker's actions after Walker left Dewey Ballantine fails because Stanwyck provides no basis to conclude that the Debtor was lying.

5

Instead, Stanwyck offers only his conclusory assertion that the Debtor acted fraudulently. This bare allegation cannot plausibly support any Debtor liability.

### D. Stanwyck's Claim Regarding His Client Files Is Moot.

Stanwyck asserts that the Debtor wrongfully retained his client files after he requested them. Although the Court entered an order approving procedures for the disposition of former client files (ECF Doc. # 237), Stanwyck did not request his files through the Court-approved procedures. (*See* Paul Letter.) Rather, Stanwyck requested his files by e-mail (*see* Paul Decl. Ex. 1), and the Trustee produced the files on September 27, 2013. (*See* Paul Letter.) Even if failure to return client files could support a claim for civil liability, which is not entirely clear, these facts do not support any Debtor liability. Rather, the request for the files is moot, and Stanwyck did not provide any basis to infer that he suffered harm by the delay between his request and the return of his files.

To the extent Stanwyck asserts liability for the Trustee's review of Stanwyck's client files, that claim also fails because the Trustee was entitled to review those materials since they pertained to Stanwyck's allegations of legal malpractice. *See* N.Y. R. OF PROF'L CONDUCT 1.6 (Consol. 2014); *Nesenoff v. Dinerstein & Lesser, P.C.*, 12 A.D.3d 427 (N.Y. App. Div. 2d Dep't 2004) (approving disclosure of confidential client information in context of defending accusation of legal malpractice); CAL. EVID. CODE § 958 (Deering 2014); *Gross Belsky Alonso LLP v. Edelson*, No. C 08-4666 SBA, 2009 U.S. Dist. LEXIS 49260 (N.D. Cal. May 27, 2009) (permitting counsel to reveal client confidences to defend charges of improper conduct). If the disclosing party is protected when defending charges of legal malpractice, the party reviewing the confidential information is, too.

6

### E. Stanwyck's Remaining Claims Are Time Barred.

Stanwyck claims that the Debtor's estate is liable for alleged legal malpractice committed in 2001. A bankruptcy court may disallow a creditor's claim if that claim is barred by the statute of limitations. *See In re Hess*, 404 B.R. 747, 750–51 (Bankr. S.D.N.Y. 2009) ("The claims allowance process of the Bankruptcy Code contemplates that time-barred claims may be filed and expressly preserves the statute of limitations as a defense and a ground for disallowance of the claim."); *In re Brill*, 318 B.R. 49, 53 (Bankr. S.D.N.Y. 2004) ("A challenged claim will not be allowed by the bankruptcy court if the claim is barred by the applicable statute of limitations."); *see also Pickett v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6785 (WHP), 2013 U.S. Dist. LEXIS, *4 (S.D.N.Y. Jan. 7, 2013) (same).

To determine which state's statute of limitation applies, the Court applies New York state choice of law rules. *See Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180, 188–91 (2d Cir. 2012) (holding that the bankruptcy court should apply choice of law of forum state unless filing proof of claim had effect of transferring pre-existing state-law action). New York courts will apply New York's statute of limitations even if the substantive law of another jurisdiction applies to a claim. *See Architectronics, Inc. v. Control Sys.*, 935 F. Supp. 425, 431 (S.D.N.Y. 1996). New York's statute of limitations for legal malpractice claims is three years. *See* N.Y. C.P.L.R. § 214 (Consol. 2014).[3] Even if the Court construed the Stanwyck Claim as stating something other than legal malpractice (e.g., breach of contract,

---

[3] New York also applies a borrowing statute, applying a foreign jurisdiction's statute of limitations if the cause of action accrued in that jurisdiction and the limitations period is shorter than New York's. N.Y. C.P.L.R. § 202. If Stanwyck's cause of action accrued in California (Stanwyck is a California resident and Walker represented Stanwyck in California), the applicable statute of limitations would be one year from Stanwyck's discovery of the malpractice (or one year from the point when Stanwyck should have discovered the malpractice through reasonable diligence), but under no circumstances longer than four years after the legal malpractice. Cal. Civ. Proc. Code § 340.6 (Deering 2014). Theoretically, then, the statute of limitations period could be shorter than New York's three year bar depending on when Stanwyck discovered the malpractice, but the Court does not need to resolve that issue here.

7

tortious interference), the statute of limitations would be six years at most. *See* N.Y. C.P.L.R. §§ 213, 214. Stanwyck filed his Claim in September 2012—nearly eleven years after Dewey Ballantine terminated its representation of Stanwyck. Thus, the portions of Stanwyck's Claim relating to Dewey Ballantine's representation of Stanwyck are untimely.

### F.     Stanwyck's Remaining Claims Are Also Barred by *Res Judicata*.

Even if Stanwyck's malpractice allegation was not time barred, it would still be barred by *res judicata*. Stanwyck filed a suit in California state court in 2002 alleging breach of contract and legal malpractice against Dewey Ballantine, among other defendants. (*See* Paul Decl. Ex. 6.) Specifically, Stanwyck pled that despite agreeing to represent Stanwyck, Dewey Ballantine "completely abandoned" him in favor of another client, and the firm hid conflicts of interest from him. (*See id.*) On April 30, 2002, the California court dismissed Stanwyck's action with prejudice. (*See* Paul Decl. Ex. 7.)

The Second Circuit has explained that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). Under California law, "[o]nly a final judgment on the merits between the same parties or their privies and upon the same cause of action is entitled to the *res judicata* effect of bar or merger." *Busick v. Workmen's Comp. Appeals Bd.*, 500 P.2d 1386, 1391–92 (Cal. 1972). Here, the California court issued a final judgment on the merits, and the case involved Stanwyck and the Debtor's predecessor, Dewey Ballantine. The preclusive effect of the ruling extends to the Debtor because the Debtor is a privy to a party to the final judgment. *See Rice v. Crow*, 97 Cal.

8

Rptr. 2d 110, 117 (Cal. Ct. App. 2000) (explaining that a successor to a party to a litigation is considered a privy of that party).

To determine whether a claim constitutes the same "cause of action" as a previous suit, California applies a "primary right" theory. *See Amin v. Khazinder*, 5 Cal. Rptr. 3d 224, 229 (Cal. Ct. App. 2003). That theory asks whether the same indivisible right is being raised again. *See Wade v. Ports Am. Mgmt. Corp.*, 160 Cal. Rptr. 3d 482, 489 (Cal. Ct. App. 2013) ("[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered."). Stanwyck seeks protection of the same primary rights here as he did in his California litigation. Namely, Stanwyck wanted enforcement of his right to competent legal services free of conflicts, preferences for other clients, or other ethical violations. He raises those very issues again here in his Claim.

When the elements for *res judicata* are satisfied, bankruptcy courts may look behind a state court decision only where such judgment was obtained by fraud or collusion, or where the state court lacked jurisdiction. *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) (citations omitted). "[F]raud in the procurement of a judgment sufficient to warrant relief therefrom is properly identified with fraud on the court, *i.e.* fraud which is directed to the judicial machinery itself and is not fraud between the parties . . . ." *In re Laing*, 945 F.2d 354, 358 (10th Cir. 1991) (internal quotations omitted). Stanwyck has not asserted that the California court's judgment was obtained by fraud, and his Claims are therefore barred by *res judicata*.

## **CONCLUSION**

Stanwyck seeks redress for legal services performed more than ten years ago over a six month period. He already sued Dewey and Ballantine once and lost. Stanwyck cannot be allowed to pursue those same claims against the Debtor here. And although Stanwyck added some new theories for Debtor liability, those theories also fail because they either relate to

9

conduct by third parties, are moot, or are supported by nothing more than conclusory allegations. In these circumstances, Stanwyck's Claims must be disallowed. The Court therefore **SUSTAINS** the Trustee's Objection to the Stanwyck Claims (Claim Nos. 833 and 1134), and those claims are **DISALLOWED** with prejudice and **EXPUNGED**.

    **IT IS SO ORDERED.**

Dated:  January 16, 2014
       New York, New York

                          *Martin Glenn*
                          MARTIN GLENN
                  United States Bankruptcy Judge