L. Londell McMillan, (Pro Se)
29 W. 46th St. 3rd Fl.
New York, New York 10036

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:
DEWEY & LEBOEUF LLP,

Case No. 12-12321 (MG)
Chapter 11

Debtor.
------------------------------------------------------------------X

------------------------------------------------------------------X
ALAN M. JACOBS, as liquidating Trustee of
the Dewey & LeBoeuf Liquidation Trust,

Plaintiff,

v.

Adv. Proc. No. 13-01772

L. LONDELL MCMILLAN,
Defendant.
------------------------------------------------------------------X

### DEFENDANT'S INITIAL DISCLOSURES PURSUANT
### TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)

Defendant, L. Londell McMillan, hereby submits its initial disclosures in

accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure. Defendant, L.

Londell McMillan, reserves the right to supplement and/or amend these disclosures

as appropriate during the course of this action.

### Rule 26(a)(1)(A)(i)

The following individuals may have discoverable information that Defendant

may use to support its claims and defenses:

Steven H. Davis

1

Stephen D. Carmine
Joel I. Sanders
John Quinones
Jeffery Mace
Frank Salzano
Bernard Jackson
Russ Barron
Julian Petty
Irene Piehl
John Flateau

## Rule 26(a)(1)(A)(ii)

The following documents, located at Defendant's offices, 29 W. 46th Street, 3rd Floor, New York, NY 10036, relates to Defendant's claims or defenses:

1.    Defendant's Proof of Claim in the United States Bankruptcy Court for The Southern District of New York filed and received on September 07, 2012, as appended hereto as Exhibit A.

2.    Amended Offer Letter setting forth Defendant's partnership and employment terms with Debtor dated April 11, 2007, as appended hereto as Exhibit B.

3.    Defendant's Amended Complaint in the United States District Court: *L. Londell McMillan vs. Barclays Bank PLC, Steven H. Davis, Stephen DiCarmine, Joel I. Sanders, Francis J. Canellas*, 13 CIV 1095 (ALC)(DF), as appended hereto as Exhibit C.

4.    Memorandum to L. Londell McMillan from the Dewey & LeBoeuf Executive Committee regarding "Capital Account Balance" (with the attached form setting forth Defendant's "Annual Partnership Compensation" as $1,500,00) dated March 6, 2008, as appended hereto as Exhibit D.

5.    Correspondence dated June 22, 2010 from Joel Sanders to L. Londell

McMillan and cc'ing: David Rodriguez, Stephen DiCarmine, Fancis J. Canellas is appended hereto as Exhibit E.

## Rule 26(a)(1)(A)(iii)

Defendant claims damages for:

A.    Breach of Contractual Agreement for Compensation; Tax Over-Reporting(s) and Filing(s); Unreturned Capital Contribution Claim (Alleged Loan) as set forth in the appended document marked as Exhibit A (Amount TBD);

B.    Fraud and/or Negligent Misrepresentation as set forth in the action *L. Londell McMillan vs. Barclays Bank PLC, Steven H. Davis, Stephen DiCarmine, Joel I. Sanders, Francis J. Canellas*, 13 CIV 1095 (ALC)(DF) appended hereto as Exhibit C (Amount TBD);

C.    Loss of benefits including pension, health insurance, etc. (Amount TBD);

D.    Espenses incurred, including attorney's fees and costs, as a result of Debtor/Trustee's prosecution of this action (Amount TBD); and

E.    Such other relief that the Court deems appropriate under the circumstances.

## Rule 26(a)(1)(A)(iv)

Defendant, at this time, is not aware of any insurance agreement under which any persons carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in favor of Defendant or to indemnify or reimburse Plaintiff for payments to satisfy the judgment.

Defendant, L. Londell McMillan, reserves the right to supplement and/or amend these disclosures as appropriate during the course of this action.

Respectfully submitted,

L. Londell McMillan (Pro Se)
29 W. 46th St. 3rd Fl.
New York, New York 10036
646-559-8314
llm@llmpc.com

Dated: May 22, 2014

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |

Dewey & LeBoeuf LLP Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5283
New York, NY 10150-5283

**COURT USE ONLY**

| Name of Debtor: | Case Number: |
| DEWEY & LEBOEUF LLP | 12-12321 (MG) |

NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.

**Name and address where notices should be sent:**

L. Londell McMillan
635 West 42nd Street
New York, NY 10036

Telephone number:       Email:
347-820-2810       LLM@thenorthstargroup.biz

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**
_____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

FILED / RECEIVED
SEP 07 2012
EPIQ BANKRUPTCY SOLUTIONS, LLC

**Name and address where payment should be sent (if different from above):**

Telephone number:       Email:

COURT USE ONLY

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $11,725*), earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507(a)(4).

☒ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☒ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$  TBD

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**1. Amount of Claim as of Date Case Filed:** $ $750,000 - $850,000

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest charges.

**2. Basis for Claim:** Contractual Agreement; Tax Over-Reporting(s) and Filing(s);
(See instruction #2) Unreturned Capital Contribution Claim (Alleged Loan)

**3. Last four digits of any number by which creditor identifies debtor:** _____
**3a. Debtor may have scheduled account as:** _____
(See instruction #3a)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:**
☐ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:** _____
**Value of Property:** $ _____
**Annual Interest Rate** ____% ☐ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of time case was filed, included in secured claim, if any:
$ _____

Basis for perfection: _____

Amount of Secured Claim: $ _____

Amount Unsecured: $ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7 and definition of "redacted".)*
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**8. Signature: (See instruction #8)** Check the appropriate box:
☒ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)
(Attached a copy of power of attorney, if any.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: L. Londell McMillan
Title: Attorney
Company:

(Signature)       9/7/12
(Date)

Address, telephone number, and email (if different from notice address above):
_____
_____
Telephone number: _____
Email: _____

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## ___DEFINITIONS___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

**Dewey & LeBoeuf LLP Claims Processing Center**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, P.O. Box 5283**
**New York, NY 10150-5283**

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## ___INFORMATION___

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the Claims Agent's system (**http://dm.epiq11.com/Dewey**) to view your filed proof of claim by clicking on "Claims".

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

## ATTACHMENT A

### L. LONDELL McMILLAN (DEWEY & LEBOEUF LLP)

### PROOF OF CLAIM STATEMENT

### CLAIM NUMBER 12-12321

1. Paragraph #1 – Debtor filed various state and federal tax reportings inconsistent with the exact amount of income earned by Creditor; the exact amount of the penalties and/or interest owed to the governmental units is still to be determined.

2. Paragraph #2 – Please see attached documents. In addition to the employment service agreement (attached), a claim by Barclays Bank has been made, upon which such claim would present a claim by Debtor against the Creditor.

3. Paragraph #5 – Debtor filed various state and federal tax reportings inconsistent with the exact amount of income earned by Creditor; the exact amount of the penalties and/or interest owed to the governmental units is still to be determined.

## LeBoeuf, Lamb, Greene & MacRae LLP

NEW YORK
WASHINGTON, D.C.
ALBANY
BOSTON
CHICAGO
HARTFORD
HOUSTON
JACKSONVILLE
LOS ANGELES
SAN FRANCISCO

125 WEST 55TH STREET
NEW YORK, NY 10019-5389
(212) 424-8000
FACSIMILE: (212) 424-8500

E-MAIL ADDRESS: STEPHEN.DICARMINE@LLGM.COM
WRITER'S DIRECT DIAL: (212) 424-8874
WRITER'S DIRECT FAX: (212) 649-9365

LONDON
A MULTINATIONAL PARTNERSHIP
PARIS
BRUSSELS
JOHANNESBURG
(PTY) LTD.
MOSCOW
RIYADH
AFFILIATED OFFICE
ALMATY
BEIJING

April 11, 2007

Mr. L. Londell McMillan

Re: Amended Offer Letter

Dear Londell:

We are pleased to offer you the opportunity to join LeBoeuf, Lamb, Greene & MacRae LLP (the "Firm") as a Partner and Head of our Entertainment, Media, & Sports Department resident in the New York office subject to completion of our business diligence. We look forward to your joining the Firm on a mutually agreed upon date in the near future ("Start Date"). You will be joined by John Flato, Bernard Jackson, Julian Petty, Frank Salzano, and Desmond Whitaker. Your admission as Partner shall be governed by the terms set forth in the Firm's Partnership Agreement and this letter shall summarize the financial arrangements relating to your admission.

Compensation

Target Compensation is divided into two components: (i) a draw paid monthly at a rate of $300,000 annually, and (ii) an excess over draw payable from time to time as warranted by the Firm's cash flow ("Distribution"). Your Target Compensation shall be at the annual rate of $1.5 million for 2007, 2008, and 2009, assuming that you fulfill the normal expectations of a Partner by devoting your full time and attention to the practice of law and partnership activities for the Firm. You shall be paid a "signing" bonus of $200,000 payable within the first 30 days of your Start Date. Your Target Compensation amount for 2007 shall be prorated based upon the actual number of days from your Start Date through December 31, 2007.

Your 2010 Target Compensation shall be established based upon performance as determined by the Firm's Executive Committee.

Page 2

Your compensation shall be linked to the Firm's net income; that is, you shall share in the profits and contribute to the net losses of the Firm commencing with your first full year as a Partner in the Firm in accordance with Paragraph 6 of the Partnership Agreement.

Your compensation shall be reduced by the cost of any benefits you are required to or elect to receive, as described in Benefits Section of this letter.

As a Partner in the Firm, your compensation may be subject to tax in any jurisdiction in which the Firm maintains an office depending upon your individual circumstances. We advise you to consult with your accountant and set up a meeting with the Firm's Tax Manager, Christine Dyshanowitz, as soon as practicable, but no later than your first scheduled pay date, in order to finalize your tax status and complete any elections you are required to make. She can be reached in the New York office at (212) 424-8936.

Capital Contributions

As a Partner you will be required to contribute capital to the Firm. The Capital requirement is 36 percent of your Target Compensation. Your initial Capital obligation is $540,000 payable over two years commencing in 2008 and shall be deducted proportionately from your distributions. Capital funds required or due you as a result of any change in Target Compensation in years subsequent to 2007 shall be paid each year accordingly by you.

To assist you with meeting the Firm's capital contribution requirement, the Firm has negotiated an optional loan program. If you are interested in exploring this option, please contact David Rodriguez, Partner Relations Specialist, in the New York office at (212) 424-8036.

Benefits

You shall have the opportunity to participate in the LeBoeuf Benefit Program, and your coverage commences the first of the month coincident with or following your Start Date. The LeBoeuf Benefit Program consists of medical, vision, dental, and life insurance. Participation in the Firm's group variable life insurance policy is mandatory at the $2 million level and is underwritten by MassMutual. Enrollment for the LeBoeuf Benefit Program is through the Firm's benefit enrollment website, and you shall be given more detailed information upon your arrival. You shall pay for all benefits you elect, including 100% of the cost of your health insurance coverage.

The Firm has two retirement plans: The LLG&M Thrift Plan (a qualified defined contribution plan consisting of a 401(k) plan and a profit sharing plan) and the 2003 Partners Pension Plan (a defined benefit pension plan). You are eligible to participate in the Thrift Plan and make your own 401(k) contributions subject to IRS contribution limits. You can contribute pre-tax (traditional 401(k)) or post-tax (Roth 401(k)). In addition, the Firm shall make an annual profit sharing contribution on your behalf if you are actively employed by the Firm on

Page 3

December 31 of the plan year. As a Partner, your profit sharing contribution shall be recovered from your monthly draws.

The 2003 Partners Pension Plan is a defined benefits plan with a cash balance feature. The Firm makes an annual contribution on your behalf if you are actively employed by the Firm on December 31 of the plan year. As a Partner your contribution is recovered from your monthly draws and distributions throughout the year.

Since the Firm retirement plans vest over a 5-year period, at 20% per year, if your tenure as a partner is terminated for any reason prior to becoming fully vested the Firm shall pay to you an amount equal to the amount forfeited under your plans. This unvested amount will be taxable to you in the year it is paid.

If you have specific questions about the LeBoeuf Benefit Program or the Firm's retirement plans, please contact Judy Reagan, Director of Benefits, in the New York office at 212-424-8588.

We are excited that you shall be joining us as a Partner. Should you have questions concerning any of the Firm's programs or policies, feel free to contact me.

Sincerely,

Stephen DiCarmine
Executive Director

Agreed and Accepted by:

L. Londell McMillan                                    Date  4/11/07

Exhibit B

# LeBoeuf, Lamb, Greene & MacRae llp

| | | |
|---|---|---|
| NEW YORK | 125 WEST 55TH STREET | LONDON |
| WASHINGTON, D.C. | NEW YORK, NY 10019-5389 | A MULTINATIONAL PARTNERSHIP |
| ALBANY | (212) 424-8000 | PARIS |
| BOSTON | FACSIMILE: (212) 424-8500 | BRUSSELS |
| CHICAGO | | JOHANNESBURG (PTY) LTD. |
| HARTFORD | | MOSCOW |
| HOUSTON | E-MAIL ADDRESS: STEPHEN.DICARMINE@LLGM.COM | RIYADH |
| JACKSONVILLE | WRITER'S DIRECT DIAL: (212) 424-8874 | AFFILIATED OFFICE |
| LOS ANGELES | WRITER'S DIRECT FAX: (212) 649-9365 | ALMATY |
| SAN FRANCISCO | | BEIJING |

April 11, 2007

Mr. L. Londell McMillan

Re: Amended Offer Letter

Dear Londell:

> We are pleased to offer you the opportunity to join LeBoeuf, Lamb, Greene & MacRae LLP (the "Firm") as a Partner and Head of our Entertainment, Media, & Sports Department resident in the New York office subject to completion of our business diligence. We look forward to your joining the Firm on a mutually agreed upon date in the near future ("Start Date"). You will be joined by John Flato, Bernard Jackson, Julian Petty, Frank Salzano, and Desmond Whitaker. Your admission as Partner shall be governed by the terms set forth in the Firm's Partnership Agreement and this letter shall summarize the financial arrangements relating to your admission.

Compensation

> Target Compensation is divided into two components: (i) a draw paid monthly at a rate of $300,000 annually, and (ii) an excess over draw payable from time to time as warranted by the Firm's cash flow ("Distribution"). Your Target Compensation shall be at the annual rate of $1.5 million for 2007, 2008, and 2009, assuming that you fulfill the normal expectations of a Partner by devoting your full time and attention to the practice of law and partnership activities for the Firm. You shall be paid a "signing" bonus of $200,000 payable within the first 30 days of your Start Date. Your Target Compensation amount for 2007 shall be prorated based upon the actual number of days from your Start Date through December 31, 2007.

> Your 2010 Target Compensation shall be established based upon performance as determined by the Firm's Executive Committee.

Page 2

Your compensation shall be linked to the Firm's net income; that is, you shall share in the profits and contribute to the net losses of the Firm commencing with your first full year as a Partner in the Firm in accordance with Paragraph 6 of the Partnership Agreement.

Your compensation shall be reduced by the cost of any benefits you are required to or elect to receive, as described in Benefits Section of this letter.

As a Partner in the Firm, your compensation may be subject to tax in any jurisdiction in which the Firm maintains an office depending upon your individual circumstances. We advise you to consult with your accountant and set up a meeting with the Firm's Tax Manager, Christine Dyshanowitz, as soon as practicable, but no later than your first scheduled pay date, in order to finalize your tax status and complete any elections you are required to make. She can be reached in the New York office at (212) 424-8936.

Capital Contributions

As a Partner you will be required to contribute capital to the Firm. The Capital requirement is 36 percent of your Target Compensation. Your initial Capital obligation is $540,000 payable over two years commencing in 2008 and shall be deducted proportionately from your distributions. Capital funds required or due you as a result of any change in Target Compensation in years subsequent to 2007 shall be paid each year accordingly by you.

To assist you with meeting the Firm's capital contribution requirement, the Firm has negotiated an optional loan program. If you are interested in exploring this option, please contact David Rodriguez, Partner Relations Specialist, in the New York office at (212) 424-8036.

Benefits

You shall have the opportunity to participate in the LeBoeuf Benefit Program, and your coverage commences the first of the month coincident with or following your Start Date. The LeBoeuf Benefit Program consists of medical, vision, dental, and life insurance. Participation in the Firm's group variable life insurance policy is mandatory at the $2 million level and is underwritten by MassMutual. Enrollment for the LeBoeuf Benefit Program is through the Firm's benefit enrollment website, and you shall be given more detailed information upon your arrival. You shall pay for all benefits you elect, including 100% of the cost of your health insurance coverage.

The Firm has two retirement plans: The LLG&M Thrift Plan (a qualified defined contribution plan consisting of a 401(k) plan and a profit sharing plan) and the 2003 Partners Pension Plan (a defined benefit pension plan). You are eligible to participate in the Thrift Plan and make your own 401(k) contributions subject to IRS contribution limits. You can contribute pre-tax (traditional 401(k)) or post-tax (Roth 401(k)). In addition, the Firm shall make an annual profit sharing contribution on your behalf if you are actively employed by the Firm on

Page 3

December 31 of the plan year.  As a Partner, your profit sharing contribution shall be recovered from your monthly draws.

The 2003 Partners Pension Plan is a defined benefits plan with a cash balance feature.  The Firm makes an annual contribution on your behalf if you are actively employed by the Firm on December 31 of the plan year.  As a Partner your contribution is recovered from your monthly draws and distributions throughout the year.

Since the Firm retirement plans vest over a 5-year period, at 20% per year, if your tenure as a partner is terminated for any reason prior to becoming fully vested the Firm shall pay to you an amount equal to the amount forfeited under your plans.  This unvested amount will be taxable to you in the year it is paid.

If you have specific questions about the LeBoeuf Benefit Program or the Firm's retirement plans, please contact Judy Reagan, Director of Benefits, in the New York office at 212-424-8588.

We are excited that you shall be joining us as a Partner.  Should you have questions concerning any of the Firm's programs or policies, feel free to contact me.

Sincerely,

Stephen DiCarmine
Executive Director

Agreed and Accepted by:

L. Londell McMillan

4/11/07
Date

Exhibit C

**MEISTER SEELIG & FEIN LLP**
Two Grand Central Tower, 19th Floor
140 East 45th Street
New York, NY 10017
Jeffrey Schreiber
Kevin Fritz
Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

L. LONDELL MCMILLAN,

                            Plaintiff,

        -against-

BARCLAYS BANK PLC, STEVEN H. DAVIS,
STEPHEN DICARMINE, JOEL I.
SANDERS, FRANCIS J. CANELLAS, and
DOES 1 through 50, inclusive,

                        Defendants.
----------------------------------------------------------X

13 CIV 1095 (ALC)(DF)

**AMENDED COMPLAINT**

       Plaintiff L. Londell McMillan ("Plaintiff"), by his attorneys Meister Seelig & Fein LLP,

as and for his complaint against Barclays Bank PLC ("Barclays"), Steven H. Davis, Stephen

DiCarmine, Joel I. Sanders, and Francis J. Canellas (collectively the "Individual Defendants" and

together with Barclays, "Defendants"), hereby alleges as follows:

### NATURE OF THE ACTION

    1.    Plaintiff brings this action to challenge a fraudulent scheme orchestrated and

arranged by officers and directors of the now-bankrupt law firm of Dewey & LeBoeuf LLP

("Dewey & LeBoeuf") and one of its then-financial affiliates, Barclays. Barclays alleges that,

pursuant to a purported letter agreement, Barclays loaned money to Plaintiff to fund his prior

capital account at Dewey & LeBoeuf (which had already been paid). Because the purported

agreement was solely arranged by Barclays and Dewey & LeBoeuf for their own account, and

1

unsupported by consideration to Plaintiff, this action seeks the rescission of that agreement and monetary damages.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff is a natural person who resides in New York, NY and who is licensed to practice law in the State of New York and the State of Connecticut.

3.      Barclays is a public limited company incorporated in England and Wales, and is engaged in the business of banking.   Barclays, either directly or through its subsidiaries, conducts substantial business in the State of New York.

4.      Steven H. Davis is a natural person who, upon information and belief, resides in the State of New York.  At all relevant times, Mr. Davis was the Chairman of Dewey & LeBoeuf.

5.      Stephen DiCarmine is a natural person who, upon information and belief, resides in the State of New York.  At all relevant times, Mr. DiCarmine was the Executive Director of Dewey & LeBoeuf.

6.      Joel I. Sanders is a natural person who, upon information and belief, resides in the State of Florida.  At all relevant times, Mr. Sanders was the Chief Financial Officer of Dewey & LeBoeuf, worked in the law firm's office in Manhattan, and engaged in the conduct alleged herein while present in New York.

7.      Francis J. Canellas is a natural person who, upon information and belief, resides in the State of New York.  At all relevant times, Mr. Canellas was the Finance Director of Dewey & LeBoeuf.

8.    Upon information and belief, the Individual Defendants have claimed in other proceedings that they have contractual and statutory rights to be indemnified by Dewey & LeBoeuf for any amounts they are required to pay as a result of legal actions such as this one.

9.    Plaintiff does not know the true names and capacities of the defendants sued as Does 1 through 50, inclusive, and thus Plaintiff sues these defendants by fictitious names. Plaintiff will amend his pleadings to allege their true names and capacities when ascertained. Upon information and belief, Does 1 through 50, inclusive, are responsible, at least in part, for the conduct alleged herein and such conduct damaged Plaintiff.

10.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334, because the case arises in or is related to Dewey & LeBoeuf's bankruptcy.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and, alternatively, because Barclays is subject to personal jurisdiction in this judicial district.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

12.    Upon graduating from law school in 1990, Plaintiff worked as an attorney in the corporate and media department of the law firm of LeBoeuf, Lamb, Greene & MacRae LLP ("LeBoeuf Lamb"). In 1993, Plaintiff joined the law firm of Gold, Farrell & Marks (now part of Sonnenschein Nath & Rosenthal LLP) where he developed a well-known entertainment law practice in both litigation and transactional contact business. In 1996, Plaintiff founded his private boutique law practice, The McMillan Firm, which specialized in entertainment and media law.

13.    In 2007, LeBoeuf Lamb approached Plaintiff and asked him to re-join that law firm as the head of its new media, entertainment and sports division.    Plaintiff entered negotiations with LeBoeuf Lamb regarding his law practice and his need to have members of his firm join him should he decide to fold his practice into LeBoeuf Lamb.

14.    In May 2007, Plaintiff signed LeBoeuf Lamb's offer letter and agreed to re-join the law firm as a partner and head of its new media, entertainment and sports division.    Plaintiff accepted a position at LeBoeuf Lamb and agreed, in a written offer letter, to $1,500,000 in compensation for each of the next three (3) years, payable in monthly draws of $25,000 (less deductions for taxes and benefits) along with periodic distributions for the remaining amounts owed.    Plaintiff brought several members of The McMillan Firm to LeBoeuf Lamb, including another corporate partner to join the firm.

15.    Immediately, Plaintiff established a profitable and high-profile entertainment law firm practice for LeBoeuf Lamb (and later Dewey & LeBoeuf), representing some of the most world renowned entertainment, media and sports clients.

16.    In or about May 2007, LeBoeuf Lamb's Chief Financial Officer, Joel Sanders, advised Plaintiff that: (a) upon becoming a partner at the firm, Plaintiff was required to make a capital contribution to the operating capital of LeBoeuf Lamb in the amount of $540,000.00, which was 36% of his annual compensation; (b) to fund his capital contribution, Plaintiff could utilize a capital loan program arranged by LeBoeuf Lamb with one if its lenders; and (c) there was no risk to Plaintiff to utilize the capital loan program because, upon his withdrawal from LeBoeuf Lamb, the law firm would repay any amounts due under the capital loan program. Plaintiff declined to utilize the capital loan program.

4

17.    In or about October 2007, LeBoeuf Lamb merged with another large and prominent law firm, Dewey Ballantine LLP to create Dewey & LeBoeuf. As a result of the merger, Dewey & LeBoeuf became one of the largest law firms in the world. This mega-merger caused immediate headline news and certain conflict within the new firm.

18.    In a Memorandum dated March 6, 2008, Joel Sanders and the rest of Dewey & LeBoeuf's Executive Committee advised Plaintiff, and other partners, of another capital loan program, arranged by Dewey & LeBoeuf, being offered by Barclays (the "Barclays Program") as an alternative method for Plaintiff to fund capital contributions (the "Memo").

19.    The Memo began: "In order to fund the Firm's working capital needs the Executive Committee has approved a capital loan program sponsored by Barclay's Bank."

20.    The Memo included the following note on the bottom of the page: "Based upon 2007 Participation Target of $1,500.000.00, your 2007 capital obligation is $540,000.00, of which $0 has already been paid, leaving you with an unpaid capital balance of $540,000.00."

21.    The Memo further stated and explained: "There will be no financial impact to you with respect to this loan, until such time as your capital is actually due to the firm."

22.    The Memo requested that Plaintiff sign an attached application form and return it to Mr. Sanders "no later than March 12, 2008 to facilitate this process[.]" Plaintiff declined to enroll in the Barclays Program.

23.    In 2008, Dewey & LeBoeuf paid Plaintiff $25,000 every month (less deductions for taxes and benefits) and distributed to Plaintiff an additional $390,000, but failed to pay him the remaining $810,000 of his annual compensation due and owing to him. Dewey & LeBoeuf also failed to pay other high-earning partners their agreed upon annual compensation. There was

no basis to deprive Plaintiff of his compensation since he was one of the partners who generated substantial revenue for Dewey & LeBoeuf.

24.    In 2009, Dewey & LeBoeuf only paid Plaintiff a total of $540,416.67, but failed to pay him the remaining $959,583.33 of his agreed-upon annual compensation. Again, Dewey & LeBoeuf also failed to pay other high-earning partners their agreed upon annual compensation.

25.    Notwithstanding the substantial sums owed to Plaintiff, which were never received by him, Dewey & LeBoeuf reported higher earnings to state and federal authorities than the compensation and income that Plaintiff received. The over-reportings were brought to the attention of Dewey & LeBoeuf's management.

26.    On March 4, 2010, Plaintiff met with Steve DiCarmine, Dewey & LeBoeuf's Chief Operating Officer, and Jeffrey Kessler, Dewey & LeBoeuf's Global Litigation Chair and a member of the law firm's Executive Committee, and advised them of his plans to wind-down and withdraw from the firm.

27.    Dewey & LeBoeuf accepted Plaintiff's withdrawal from the law firm, yet allowed Plaintiff to operate on the premises to wind down business and legal matters.

28.    In an email sent to Plaintiff on June 22, 2010, Joel Sanders outlined the amount of compensation that Dewey & LeBoeuf deemed was owed to Plaintiff. Messrs. DiCarmine and Canellas were copied on the email. At the bottom of the email, Mr. Sanders included the following chart (emphasis added):

| Year | Amount Owed |
| --- | --- |
| 2008 | 498,750.00 |
| 2009 | 70,791.66 |
| 2010 | 254,166.65 |
| Compensation Owed Partner: | 823,708.31 |
| | |
| **Capital Owed Firm** | (540,000.00) |
| Net Amount due Partner | 283,708.31 |

0740-002 Doc# 30 v.0

6

In the email, Mr. Sanders advised Plaintiff that the amount owed by Dewey & LeBoeuf to Plaintiff had been reduced by $540,000, the amount that Plaintiff had theretofore never contributed, as the law firm required. Specifically, Mr. Sanders expressly wrote to Plaintiff: "Your capital has already been deducted and processed as it was way overdue and you never processed the loan documents." Plaintiff was advised that he would receive all such sums including his capital contribution made to the firm, which was deducted from his compensation.

29.    As of June 30, 2010, the law firm owed Plaintiff over $1,700,000 in compensation, none of which has been paid.

30.    According to Barclays' allegations (made after Dewey & LeBoeuf filed for bankruptcy on May 28, 2012), Plaintiff and Barclays entered into a letter agreement dated June 24, 2010 (the "Letter Agreement") pursuant to which Barclays agreed to provide a loan of $540,000 (the "Loan") "to be used to assist [Plaintiff] with a partnership capital subscription to Dewey & LeBoeuf LLP (the 'Firm')."

31.    Section 3 of the purported Letter Agreement provides that the Loan "will be available for drawing in a single amount" and that "any amount drawn will be credited to an account" in the name of Dewey & LeBoeuf.

32.    Plaintiff has no recollection of signing any such Letter Agreement and, given that Dewey & LeBoeuf had previously advised Plaintiff in the aforementioned June 22, 2010 email that his capital contribution was being deducted from compensation owed to him, there was no reason for Plaintiff to sign the Letter Agreement and obtain the Loan to fund his capital contribution (which was no longer owed).

33.    Plaintiff never received any funds from Barclays.

7

34.    Barclays has not presented Plaintiff with any promissory note executed by Plaintiff in connection with the Loan or any communications between Barclays and Plaintiff, despite requests to receive such information from Barclays.

35.    The Letter Agreement is a fabrication. Plaintiff had no dealings with Barclays regarding a loan and Plaintiff did not need a loan.

36.    Even assuming that Plaintiff signed the Letter Agreement, he never authorized the Individual Defendants to deliver it to Barclays. Despite such lack of authorization, the Individual Defendants apparently delivered to Barclays a document purporting to contain Plaintiff's signature.

37.    Upon information and belief, Barclays had ceased making loans available to partners of Dewey & LeBoeuf either before or shortly after Plaintiff withdrew from the firm.

38.    On May 28, 2012, Dewey & LeBoeuf filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (*In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (MG)) (the "Dewey Bankruptcy").

39.    Barclays never communicated with Plaintiff in any manner whatsoever about the Loan until after Dewey & LeBoeuf filed for bankruptcy, which was well after Plaintiff withdrew from the law firm.

40.    According to a "Claim Form" and "Particulars of Claim" mailed by Barclay's counsel to Plaintiff, on or about December 7, 2012, Barclays filed a claim in the United Kingdom's High Court of Justice against Plaintiff alleging that the Loan was in default and seeking in excess of $550,000 in damages (the "UK Proceeding").

41.    Plaintiff has not been properly served with the Claim Form or the Particulars of Claim in the UK Proceeding and has filed an Acknowledgement of Service in the UK Proceeding disputing jurisdiction, and such objection to jurisdiction does not amount to a submission to the jurisdiction.

## FIRST CLAIM FOR RELIEF
### (Declaration that the Letter Agreement is Invalid and Unenforceable)

42.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43.    Plaintiff never had any dealings with Barclays and did not enter into the Letter Agreement with Barclays.

44.    There was no meeting of the minds between Plaintiff and Barclays with respect to the terms of the Letter Agreement.

45.    Plaintiff is entitled to a judgment declaring that the Letter Agreement is invalid and unenforceable.

## SECOND CLAIM FOR RELIEF
### (Rescission of Letter Agreement for Lack of Consideration)

46.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 45 as if fully set forth herein.

47.    Section 1 of the Letter Agreement states that its "Purpose" is for the Loan to be used to fund Plaintiff's capital contribution to Dewey & LeBoeuf."

48.    Plaintiff had no need to further fund his capital account.

49.    Prior to the date of the Letter Agreement, Dewey & LeBoeuf acknowledged to Plaintiff that his $540,000 capital contribution had been paid (by a deduction from the amounts owed by the law firm to Plaintiff).

9

50.    Furthermore, even assuming that Dewey & LeBoeuf had not so acknowledged, no capital contribution was due from Plaintiff to the law firm because the amount of compensation that the law firm owed Plaintiff greatly exceeded $540,000 and his capital account was fully funded prior to the date of the purported Letter Agreement.

51.    Thus, no capital contribution from Plaintiff to the law firm was actually due.

52.    The Loan proceeds were never delivered to Plaintiff.

53.    Plaintiff did not receive any consideration in exchange for allegedly being liable for repayment of the Loan.

54.    Barclays claims that the Letter Agreement is a binding and valid agreement.

55.    Plaintiff has no adequate remedy at law other than this form of action to have his rights determined as to the matters set forth herein.

56.    Plaintiff is entitled to a judgment rescinding the Letter Agreement for lack of consideration.

### THIRD CLAIM FOR RELIEF
#### (Rescission of Letter Agreement for Mutual Mistake)

57.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 56 as if fully set forth herein.

58.    At the time that the Letter Agreement was allegedly entered into, both Plaintiff and Barclays were mistaken about the same material fact – that a capital contribution of $540,000 was due from Plaintiff to Dewey & LeBoeuf.

59.    In actuality, at the time that the Letter Agreement was allegedly entered into, no capital contribution was due from Plaintiff to Dewey & LeBoeuf.

60.    Plaintiff never received any funds directly from Barclays.

10

61.    Plaintiff has no adequate remedy at law other than this form of action to have his rights determined as to the matters set forth herein.

62.    Plaintiff is entitled to a judgment rescinding the Letter Agreement based upon mutual mistake.

## FOURTH CLAIM FOR RELIEF
### (Rescission of Letter Agreement for Fraud)

63.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

64.    According to section 10.1(j) of the Letter Agreement, an "Event of Default" includes "the event of any indebtedness of the Firm in excess of US$250,000 becoming immediately due and payable, or capable of being declared so due and payable, prior to its stated maturity, by reason of default on the part of any person...."

65.    According to the Letter Agreement, upon an Event of Default, Barclays may demand repayment of the outstanding Loan and all accrued interest.

66.    At the time that the parties allegedly entered into the Letter Agreement, Defendants knew that Dewey & LeBoeuf had already incurred indebtedness in excess of $250,000 that was immediately due and payable or was capable of being declared so due and payable (the "DL Indebtedness"). Stated differently, Defendants knew that an Event of Default existed the moment that the Letter Agreement was executed.

67.    Barclays knew of the DL Indebtedness because Barclays had a longstanding relationship with Dewey & LeBoeuf through, at a minimum, the Barclays Program for funding capital contributions.

68.     Barclays also knew of the DL Indebtedness because it ceased making loans to partners of Dewey & LeBoeuf based upon financial reasons, and Barclays failed to notify Plaintiff of the same.

69.     The Individual Defendants also knew of the DL Indebtedness because, as officers and directors of Dewey & LeBoeuf, they possessed all information relevant to the firm's financial affairs.

70.     Defendants failed to advise Plaintiff of the DL Indebtedness, despite their duties to advise Plaintiff of that material information.

71.     Barclays had a duty to disclose the DL Indebtedness to Plaintiff because Barclays made a partial disclosure, or "half-truth," in the Letter Agreement – namely that any indebtedness by Dewey & LeBoeuf in excess of $250,000 *would be* an Event of Default.  The full truth, undisclosed to Plaintiff, was that Dewey & LeBoeuf *was already* indebted more than $250,000 and that such indebtedness was due and payable or capable of being declared immediately due and payable.

72.     All of the Defendants had a duty to disclose the DL Indebtedness to Plaintiff because they possessed superior knowledge of Dewey & LeBoeuf's financial condition, not readily available to Plaintiff (such information was only available to the law firm's senior management or Executive Committee members) and because, assuming that Plaintiff did enter into the Letter Agreement, Defendants knew that Plaintiff was acting on the basis of mistaken knowledge that an Event of Default was not already existing the moment the Letter Agreement was executed.

73.     Defendants intentionally failed to disclose the DL Indebtedness to Plaintiff to induce Plaintiff to enter into the Letter Agreement (assuming it is not a fabrication).

74.    By fraudulently inducing Plaintiff to enter into the Letter Agreement, upon the immediately present Event of Default, Barclays could pursue Plaintiff for hundreds of thousands of dollars while having no obligation to fund Plaintiff's capital contribution (which Plaintiff had already paid via a deduction of amounts of compensation owed to him).

75.    Even assuming that Plaintiff signed the Letter Agreement, Plaintiff believed that Defendants' representations were full and complete and that Defendants did not omit any material information.

76.    Even assuming that Plaintiff signed the Letter Agreement, Plaintiff signed the Letter Agreement in reasonable reliance upon: (a) Barclays' representations that an Event of Default did not already exist and (b) the Individual Defendants' failure to advise Plaintiff that an Event of Default already existed.

77.    Even assuming that Plaintiff signed the Letter Agreement, Plaintiff would not have signed the Letter Agreement if he had known the truth – that an Event of Default already existed by virtue of the DL Indebtedness.

78.    Given Defendants' fraudulent conduct, Plaintiff is entitled to a judgment declaring that the Letter Agreement is rescinded.

### FIFTH CLAIM FOR RELIEF
#### (Declaration that the Loan is Not Due and Payable Until December 31, 2020)

79.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 78 as if fully set forth herein.

80.    Barclays claims that the Loan is due and payable by Plaintiff.

81.    Section 5(c) of the Letter Agreement states that, in the event of: (a) Plaintiff "ceasing to practice as a partner with the Firm" and (b) "the provisions of Article X of the Firm's Partnership Agreement preventing immediate repayment of [Plaintiff's] partnership capital, the

13

Loan shall become due and payable at the times and in such amounts as [Plaintiff's] capital account is repaid in accordance with the Firm's Partnership Agreement ... and in any event no later than the date falling 120 months after the date upon which [Plaintiff] ceases to practice as a partner with the Firm."

82.     Dewey & LeBoeuf has not repaid Plaintiff's capital account in accordance with the Firm's Partnership Agreement.

83.     Thus, even assuming that the Letter Agreement is deemed valid, the Loan is due and payable on December 31, 2020, said date being 120 months after December 31, 2010, the date upon which Plaintiff ceased to practice as a partner of the law firm.

84.     Plaintiff has no adequate remedy at law other than this form of action to have his rights determined as to the matters set forth herein.

85.     In the alternative to rescinding the Letter Agreement, the Court should enter judgment declaring that the Loan is not due and payable until December 31, 2020.

## SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty Against the Individual Defendants)

86.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 85 as if fully set forth herein.

87.     The Individual Defendants were Plaintiff's fiduciaries and owed him the highest duty of care and loyalty.

88.     By delivering Plaintiff's purported signature on the Letter Agreement to Barclays without Plaintiff's consent, and by intentionally or negligently concealing the DL Indebtedness from Plaintiff, the Individual Defendants breached their fiduciary duties.

89.     As a proximate result of the Individual Defendants' breach of fiduciary duties, Plaintiff has suffered damages in an amount to be determined at trial, plus interest.

14

## SEVENTH CLAIM FOR RELIEF
### (Fraud Against the Individual Defendants)

90.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs
1 through 89 as if fully set forth herein.

91.     At the time that the Individual Defendants delivered to Barclays, without
Plaintiff's consent, Plaintiff's purported signature of the Letter Agreement, the Individual
Defendants knew of the DL Indebtedness.

92.     The Individual Defendants failed to advise Plaintiff of the DL Indebtedness.

93.     The Individual Defendants intentionally failed to disclose the DL Indebtedness to
Plaintiff to induce Plaintiff to enter into the Letter Agreement.

94.     Plaintiff believed that the Individual Defendants' representations were full and
complete and that the Individual Defendants did not omit any material information.

95.     Because of the fiduciary relationship between Plaintiff and the Individual
Defendants, Plaintiff reasonably relied upon the Individual Defendants to fully disclose all
material information to him.

96.     Even assuming that Plaintiff signed the Letter Agreement, Plaintiff would not
have signed the Letter Agreement if he had known the truth – that an Event of Default already
existed by virtue of the DL Indebtedness.

97.     As a proximate result of the Individual Defendants' fraudulent conduct, Plaintiff
has suffered damages in an amount to be determined at trial, plus interest.

## EIGHTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

98.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs
1 through 97 as if fully set forth herein.

0740-002 Doc# 30 v.0

99.    The Individual Defendants and Plaintiff were in a special or privity-like relationship, described above, imposing a duty upon the Individual Defendants to impart correct information to Plaintiff.

100.    To the extent that the Individual Defendants' did not conceal the DL Indebtedness intentionally, they negligently advised to Plaintiff to enter into a loan agreement that, unbeknownst to Plaintiff and known to the Individual Defendants, was already in default.

101.    Given the Individual Defendants' superior knowledge of Dewey & LeBoeuf's finances and given the Individual Defendants' fiduciary duties to Plaintiff, Plaintiff reasonably relied upon advice given by them and trusted that they would not withhold any material information from him.

102.    As a proximate result of the Individual Defendants' negligent representations or omissions of material facts, Plaintiff has suffered damages in an amount to be determined at trial, plus interest.

Wherefore, Plaintiff respectfully requests that the Court enter judgment:

(a)    on the First Claim for Relief, declaring that the Letter Agreement is invalid and unenforceable;

(b)    on the Second Claim for Relief, rescinding the Letter Agreement for lack of consideration;

(c)    on the Third Claim for Relief, rescinding the Letter Agreement based upon mutual mistake;

(d)    on the Fourth Claim for Relief, declaring that the Letter Agreement is rescinded based upon fraud;

16

0740-002 Doc# 30 v.0

(e)    on the Fifth Claim for Relief, declaring that the Loan is not due and payable until December 31, 2020;

(f)    on the Sixth Claim for Relief, awarding Plaintiff damages in an amount to be determined at trial, plus interest;

(g)    on the Seventh Claim for Relief, awarding Plaintiff damages in an amount to be determined at trial, plus interest;

(h)    on the Eighth Claim for Relief, awarding Plaintiff damages in an amount to be determined at trial, plus interest;

(i)    awarding Plaintiff the costs and disbursements of the action, including attorneys' fees; and

(j)    granting Plaintiff such other and further relief as the Court deems appropriate.

0740-002 Doc# 30 v.0

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:        New York, New York        MEISTER SEELIG & FEIN LLP
              April 3, 2013

                                        ___/s/ Kevin Fritz
                                        Jeffrey Schreiber (js@msf-law.com)
                                        Kevin Fritz (kaf@msf-law.com)
                                        Two Grand Central Tower, 19th Floor
                                        140 East 45th Street
                                        New York, NY
                                        Telephone: (212) 655-3500
                                        Facsimile: (212) 655-3535
                                        Attorneys for Plaintiff

0740-002 Doc# 30 v.0

# DEWEY & LEBOEUF

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

**MEMORANDUM**

Date:   March 06, 2008

To:   McMillan, L. Londell

From:   The Executive Committee

Re:   <u>Capital Account Balance</u>

In order to fund the Firm's working capital needs the Executive Committee has approved a capital loan program sponsored by Barclay's Bank.  Barclay's has agreed to finance all partners' outstanding unpaid capital balances as of 12/31/2007 thereby satisfying all such obligations (this will not address any changes in capital attributable to 2008 partner compensation adjustements).  The firm would like to close this loan by the end of March 2008.

There will be no financial impact to you with respect to this loan, until such time as your capital is actually due to the firm.  At that time you may elect to continue to participate in the loan program or just pay your capital directly to the firm thereby satisfying your loan obligation.  This will not impact the timing of when your capital is actuall due to the firm.

Please sign the attached form and return it to Joel Sanders in the NY office no later than March 12, 2008 to facilitate this process

Further details of the loan program are available by request.

Thank you in advance for your help with this.

Note:  Based on 2007 Participation Target of $1,500,000.00, your 2007 capital obligation is $540,000.00, of which $0.00 has already been paid, leaving you an unpaid capital balance of $540,000.00.

BARCLAYS BANK PLC APPLICATION FORM                                                    PARTNER CAPITAL SUBSCRIPTION LOAN

## PLEASE COMPLETE THIS FORM IN BLOCK CAPITALS AND RETURN IT TO:

### Joel Sanders in the New York Office

| PERSONAL DETAILS | | | |
|---|---|---|---|
| Title | | Surname | McMillan |
| First name | L. Londell | | |
| Home address and zip code | 489 Hancock Street  Brooklyn NY 11233 | | |
| Home telephone | 646 701 1756 | Date occupied mm/yyyy | 5/1/2007 |
| Previous home address and zip code if less than 3 years at current address | | | |
| Date of birth | August 5, 1966 | Marital Status | |
| Passport number and driver's licence number, Dates issued and expiry dates | | Passport and driver's licence country or state of issue | |
| Town and country of birth | | Nationality | Country of residence |
| Firm name | Dewey & LeBoeuf LLP | Work telephone | 1 212 424 8000 |
| Firm address and zip code | 125 West 55th Street New York, NY 10019-5389 | | |
| Annual partnership compensation | $1,500,000.00 | Length of time at firm | 0.85 Year(s) |
| Personal bank account details | | | |
| ABA code number | 021000089 | Account number | 37033412 |
| Loan details | | | |
| Social security number | 086565119 | Amount required | $ 540,000.00 | Loan required - Amortizing or Evergreen | Evergreen |

1. I confirm that the information given is true and complete. You may store and process information obtained by you in this application and in your dealings with me on the Barclays Group computers and in any other way. I agree that you may transfer information to a Barclays Group Company or to a service provider or agent in another country, as long as you make sure that the information will receive the same levels of protection as you are required to apply to information held in the UK. You and other companies in the Group may use the information for assessment and analysis (including credit scoring, market and product analysis) and to develop and improve your services and to protect your interests.

2. **You may give information about me and how I manage any accounts with which I may be connected to the following:**

2.1. Credit reference agencies or other organisations that may use and give out information for credit assessments and to prevent fraud.

2.2. People who provide a service to you or are acting as your agents, on the understanding that they will keep the information confidential.

2.3. Anyone to whom you transfer or may transfer your rights and duties.

2.4. You may also give out information about me if you have a duty to do so or if the law allows you to do so.

3. I am aware that credit reference agencies make a record of searches and of information you give them and those records may be used to prevent fraud or by other lenders in order to make credit decisions about me and members of my household and for debt transactions.

**Please delete a) or b) as appropriate.**

b) I do not wish to receive information about any additional products and services.

| Applicant | X | | Date | |
|---|---|---|---|---|

**INTRODUCTION BY AUTHORISED "KEY OFFICIAL" OF THE FIRM**
a) I confirm that the partner named above has been known to me personally for more than ............ months;
b) I can confirm that we as a firm have undertaken identification and verification procedures, including verifying the home address. I believe the information shown above is correct. I consider the Applicant to be respectable and trustworthy.

| Introducer | X | | Date | |
|---|---|---|---|---|
| Please print name | | and position in Firm | | |

**From**: Sanders, Joel
**To**: McMillan, L. Londell
**Cc**: Rodriguez, David; Canellas, Francis J.; DiCarmine, Stephen
**Sent**: Tue Jun 22 16:23:36 2010
**Subject**: Confidential

Londell,

I have released all monies owed to you.  You will receive payment at the end of this month when the June draw is paid.  Please see your gross amounts below.  Also see the note to see how your 2009 bonus is being allocated.  You will receive the $500k in 2009 bonus distributions proportionately along with the other partners.  We have paid out 30% of the bonuses to date which is what you will receive this month.  We will process the standard deductions from your gross pay.  We have already been paying and deducting your child support payments.  Dave Rodriguez will send you a statement prior to your payment date.  If you have any issues with your bonus allocation you need to speak to Steve DiCarmine.  Your capital has already been deducted and processed as it was way overdue and you never processed the loan documents.  You are free to borrow your capital from any of our partner banks at your convenience.  Going forward I will restore you to regular payments, provided however, that you remain current with your time and billing entries.  I would suggest working closely with Lourdes and Dianne to ensure there are no further interruptions in your compensation.

| Year | Amount Owed |
|------|-------------|
| **2008** | 498,750.00 |
| **2009** | 70,791.66 |
| **2010** | 254,166.65 |
| **Compensation Owed Partner:** | **823,708.31** |
| | |
| **Capital Owed Firm** | **(540,000.00)** |
| **Net Amount due Partner** | **283,708.31** |

Please note that his 2009 compensation package of $1.5M is broken down as follows:  $300K in 2009, a $500K Bonus payable in 2010 and a $700K Bonus payable in 2011.

=================================================================================
Pursuant to U.S. Treasury Department Circular 230, unless we expressly state otherwise, any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties or (ii) promoting, marketing or recommending to another party any matter(s) addressed herein.

Dewey & LeBoeuf in London and Paris is a multinational partnership, regulated by the Solicitors Regulation Authority; SRA No. 184760.

Dewey & LeBoeuf LLP in Doha is licensed by the Qatar Financial Centre Authority, QFC License Number 00102.

This e-mail message, including attachments, is confidential, is intended only for the named recipient(s) above and may contain information that is privileged, attorney work product,

proprietary or exempt from disclosure under applicable law.
The unauthorized use, dissemination, distribution or reproduction
of this e-mail message, including attachments, is strictly
prohibited.  If you have received this message in error, or are
not an intended recipient, please immediately notify the sender
and delete this e-mail message, including attachments,
from your computer.  Thank you.
=============================================================================